# EXHIBIT LIST
## TO ADVANCEME, INC.'S OPENING CLAIM CONSTRUCTION BRIEF

| EXHIBIT | CONTENTS |
|---------|----------|
| Ex. A | '281 Patent. |
| Ex. B | '544 Patent File History, 06/03/99 Response after Final Under Rule 1.116 |
| Ex. C | '544 Patent File History, 11/10/98 Office Action |
| Ex. D | '544 Patent File History, 1/20/99 Amendment and Response |
| Ex. E | '544 Patent File History, 7/16/99 Preliminary Amendment |
| Ex. F | '544 Patent File History, 8/3/99 Office Action |
| Ex. G | '544 Patent File History, 06/07/2000 Applicant's Brief on Appeal to the Board of Patent Appeals and Interferences |
| Ex. H | '544 Patent File History, 08/10/2000 Examiner's Answer |
| Ex. I | '544 Patent File History, 10/30/02 Decision on Appeal |
| Ex. J | '544 Patent File History, 07/13/04 Notice of Allowability |
| Ex. K | '281 Patent File History, 07/12/04 Request for Extension-of-Time and Amendment |
| Ex. L | '281 Patent File History, 03/17/05 Notice of Allowability and Response to Amendment |
| Ex. M | 08/02/06 Joint Claims Construction and Prehearing Statement Pursuant to Local Patent Rule 4-3 |
| Ex. N | Microsoft Press Computer Dictionary, Third Edition 1997, p. 439. |
| Ex. O | American Heritage College Dictionary, Third Edition 1997, p. 1409 |

Dockets.Justia.com

# EXHIBIT A

to
## ADVANCEME INC.'S OPENING CLAIM CONSTRUCTION BRIEF



US006941281B1

(12) **United States Patent**
Johnson

(10) Patent No.: **US 6,941,281 B1**
(45) Date of Patent: *****Sep. 6, 2005**

(54) AUTOMATED PAYMENT

(75) Inventor: Barbara S. Johnson, Southport, CT (US)

(73) Assignee: Advanceme, Inc., Kennesaw, GA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: 09/356,711

(22) Filed: Jul. 20, 1999

**Related U.S. Application Data**

(63) Continuation of application No. 08/890,398, filed on Jul. 9, 1997.

(51) Int. Cl.⁷ .................... G06F 17/60; G06F 17/00
(52) U.S. Cl. ..................... 705/40; 705/35; 705/38; 705/39
(58) Field of Search ........................ 705/35, 38, 39, 705/40

(56) **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 4,750,119 A | 6/1988 | Cohen et al. | 364/401 |
| 4,823,264 A * | 4/1989 | Deming | 705/39 |
| RE32,985 E * | 7/1989 | Nagata et al. | 705/41 |
| 4,914,587 A | 4/1990 | Clouse | 364/408 |
| 4,941,090 A | 7/1990 | McCarthy | 364/405 |
| 5,117,355 A | 5/1992 | McCarthy | 364/405 |
| 5,202,826 A | 4/1993 | McCarthy | 364/405 |
| 5,287,268 A | 2/1994 | McCarthy | 364/405 |
| 5,383,113 A | 1/1995 | Kight et al. | 364/401 |
| 5,465,206 A | 11/1995 | Hilt et al. | 364/406 |
| 5,466,919 A | 11/1995 | Hovakimian | 235/380 |
| 5,483,445 A * | 1/1996 | Pickering | 705/40 |
| 5,504,677 A | 4/1996 | Pollin | 364/408 |
| 5,638,519 A | 6/1997 | Haluska | 395/228 |

| | | | |
|---|---|---|---|
| 5,649,117 A | 7/1997 | Landry | 395/240 |
| 5,715,298 A * | 2/1998 | Rogers | 379/91.01 |
| 5,717,989 A * | 2/1998 | Tozzoli et al. | 705/37 |
| 5,748,908 A * | 5/1998 | Yu | 705/44 |

(Continued)

**FOREIGN PATENT DOCUMENTS**

EP   0 655 716 A2   5/1995

(Continued)

**OTHER PUBLICATIONS**

"Do You Need A Card Processor?" by Hearst, Catalog Age, vol. 13, No. 6, pp. 85-86, Jun. 1996.

(Continued)

*Primary Examiner*—James W. Myhre
(74) *Attorney, Agent, or Firm*—David M. Klein; Shearman & Sterling LLP

(57) **ABSTRACT**

Systems and methods for automated loan repayment involve utilizing consumer payment authorization, clearing, and settlement systems to allow a merchant to reduce an outstanding loan amount. After a customer identifier (e.g., a credit, debit, smart, charge, payment, etc. card account number) is accepted as payment from the customer, information related to the payment is forwarded to a merchant processor. The merchant processor acquires the information related to the payment, processes that information, and forwards at least a portion of the payment to a loan repayment receiver as repayment of at least a portion of the outstanding loan amount owed by the merchant. The loan repayment receiver receives the portion of the payment forwarded by the merchant processor and applies that portion to the outstanding loan amount owed by the merchant to reduce that outstanding loan amount.

**19 Claims, 5 Drawing Sheets**



ADV0000132

**US 6,941,281 B1**

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,757,917 A | * | 5/1998 | Rose et al. | 705/79 |
| 5,704,221 A | | 8/1998 | Egendorf | 705/40 |
| 5,832,460 A | | 11/1998 | Bednar et al. | 705/27 |
| 5,832,464 A | | 11/1998 | Houvener et al. | 705/45 |
| 5,842,185 A | | 11/1998 | Chancey et al. | 705/40 |
| 5,850,217 A | | 12/1998 | Cole | 345/326 |
| 5,890,137 A | | 3/1999 | Koreeda | 705/26 |
| 6,070,153 A | * | 5/2000 | Simpson | 705/36 |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 725 376 A2 | 6/1996 |
| JP | 63270669 | 11/1988 |
| WO | WO 92/06438 | 4/1992 |
| WO | WO 97/14124 | 4/1997 |

## OTHER PUBLICATIONS

"Making The Banks Sweat", by Higgins, Credit Card Management, vol. 6 No. 1, pp. 46-52, Apr. 1993.

"Citicorp's Merchant Sale Casts a Shadow Over Bank Acquirers Bankers Refuse to Believe Their Acquiring Businesses Are Doomed", Credit Card News, vol. 5, No. 5, pp. 1-7, Jul. 15, 1992.

"USA: Determined Banks Still Dominate Processing of Card Receipts", by Gullo, American Banker, p. 17, Apr. 22, 1991.

"HP Keeps Cards Close to Chest with Acquisition of Verifone", Card News, p. 6, Apr. 28, 1997.

* cited by examiner

ADV0000133



FIG. 1A

ADV0000134

U.S. Patent     *Sep. 6, 2005     Sheet 2 of 5     US 6,941,281 B1



FIG. 1B

ADV0000135



FIG. 2

ADV0000136



FIG. 3A

ADV0000137



FIG. 3B

ADV0000138

US 6,941,281 B1

1

## AUTOMATED PAYMENT

### RELATED APPLICATIONS

This application is a continuation of U.S. Ser. No. 08/890, 398, filed Jul. 9, 1997.

### TECHNICAL FIELD

This invention relates to systems and processes for automated repayment of a loan by a merchant borrower via fees levied through an entity that processes payment transactions for the merchant.

### BACKGROUND INFORMATION

Card (e.g., credit, debit, charge, smart, etc.) transactions generally involve at least merchants, merchant processors, issuers, and cardholders. Such transactions include authorization, clearing, and settlement processes, and may include the use of a system such as the VisaNet or Cirrus system to authorize, clear, and settle the card payment.

Loan repayment generally is performed by a borrower sending periodic payments directly to the lender by post or by electronic funds transfer through the banking system.

### SUMMARY OF THE INVENTION

It is an object of the invention to provide an automated loan repayment system and process based on fees levied on payment transactions such as those involving unique identifying account numbers (e.g., credit, debit, charge, payment, smart, etc. card numbers).

The invention utilizes a merchant processor in the loan repayment process. The merchant processor may be, for example, a third party entity (i.e., an entity other than the borrower or the lender), the same entity as the lender, or an entity affiliated in some way with the lender. As an example, with some credit cards, the merchant processor can be a third party. As another example, with some cards such as the American Express charge card, the merchant processor can be the same as (or at least closely affiliated with) the lender. In general, a "merchant processor" is any entity that acquires merchant transactions such as a bank or other financial institution, or an organization dedicated to acquiring and processing merchant transactions. Acquiring merchant transactions generally means receiving payment information from a merchant or on behalf of a merchant, obtaining authorization for the payment from the card issuer, sending that authorization to the merchant, and then completing the transaction by paying the merchant, submitting the payment, and getting paid by the issuer. For this service, the merchant processor typically levies a fee on the merchant that is a percentage of the amount of the payment transaction. In general, the payment information forwarded to the merchant processor relates to a customer identifier submitted to the merchant as payment for some good(s) and/or service(s), and that identifier can be the account number associated with, for example, a debit card, a smart card, a credit card (e.g., a Visa or MasterCard card), a charge card (e.g., an American Express card), etc.

The invention relates to systems and processes for automated repayment of a loan made by a lender to a merchant. The systems and processes of the invention utilize consumer payment transactions with the merchant to allow the merchant to reduce the outstanding loan amount. Typically, a percentage of a consumer's payment to the merchant (e.g.,

2

by credit card) is used to pay down the merchant's outstanding loan. In one embodiment of the present invention, a merchant that has borrowed a loan amount from the lender accepts a customer-identifying account number (e.g., a credit, charge, payment, or debit card number) as payment from the customer and information related to the payment is forwarded to a merchant processor. Acceptance of this type of payment from the customer can be done, for example, at a merchant location (e.g., a retail establishment), over the telephone, or electronically via, for example, the World Wide Web by the merchant or on behalf of the merchant. The merchant processor then acquires the information related to the payment transaction, processes that information, and forwards at least a portion of the transaction amount to the lender as repayment of at least a portion of the outstanding loan amount owed by the merchant. The loan payments alternatively may be accumulated until a predetermined amount is reached, and then at least a portion of the accumulated payments is forwarded to the lender (or its designee). In another embodiment, the merchant processor may periodically forward at least a portion of the payment to the lender or designee. For example, the merchant processor may forward payment amounts every month, or based on an amount such as after each one thousand dollars ($1000) worth of transactions. The lender or designee (e.g., a bank or other lending institution, or an entity collecting payments on behalf of the lender) receives the portion of the payment forwarded by the merchant processor and applies that amount to the outstanding loan amount owed by the merchant to reduce that outstanding loan amount.

A system according to the invention automates repayment of a loan made by a lender to a merchant by utilizing payment transactions (e.g., credit, debit, charge, payment, smart, etc. card transactions) with the merchant. The system includes means for accepting a customer-identifying account number as payment from the customer and for forwarding information related to the payment to a merchant processor. In one embodiment, the merchant may use equipment provided by VeriFone Inc. of Redwood City, Calif., such as an electronic card swipe machine, to facilitate card transactions by customers. The merchant processor includes means for receiving the information related to the payment and means for forwarding a loan payment to the lender.

The invention thus automates the loan repayment process, and provides an easy and efficient mechanism by which merchants that accept customer-identifying account numbers (e.g., credit cards) as payment for good(s) and/or service(s) can repay loans. The borrowing merchants use one or more already-familiar payment transaction processing systems to make the payments required by the lender or the loan collecting entity. The invention makes loan repayment and collection simple and efficient for both the borrower and the lender.

The foregoing and other objects, aspects, features, and advantages of the invention will become more apparent from the following drawings, description, and claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

In the drawings, like reference characters generally refer to the same parts throughout the different views. Also, the drawings are not necessarily to scale, emphasis instead generally being placed upon illustrating the principles of the invention.

FIGS. 1A and 1B are schematic illustrations of a payment transaction from authorization (FIG. 1A) to settlement (FIG. 1B).

ADV0000139

US 6,941,281 B1

**3**

FIG. 2 is a block diagram of a merchant processor making payment to both a merchant and a lender, in accordance with the invention.

FIG. 3A is a diagram of a merchant processor system according to the invention.

FIG. 3B is a diagram of a merchant location.

## DESCRIPTION

Referring to FIGS. 1A and 1B, a purchase transaction (e.g., a credit card transaction) generally begins with a cardholder 10 providing a customer identifier (typically, a unique identifying account number such as that on a credit card such as a Visa or MasterCard card, a debit card, a smart card, a charge card such as an American Express card, etc.) to a merchant 20, as indicated by an arrow 12, for payment of goods and/or services purchased by the customer. The merchant can be any business that accepts some form of payment for the goods and/or services provided to customers by the business. The cardholder 10 might present the card to the merchant 20 in person, or the cardholder 10 might provide the card number to the merchant over the telephone or electronically by computer (e.g., via the World Wide Web, WWW). Also, the cardholder 10 might provide the card number to an entity acting on behalf of the merchant such as a WWW provider that sets up and maintains the merchant's Web page(s). However the customer identifier (e.g., card number) gets to the merchant or the merchant's agent, authorization must be obtained before the payment can be accepted and the purchase transaction completed.

Authorization, as shown in FIG. 1A, involves an authorization request going to a merchant processor 30, as indicated by an arrow 22. The request generally gets to the merchant processor 30 electronically by, for example, transmission through the telephone system and/or some other network (e.g., the Internet and/or an intranet). The merchant processor 30 (also known as an acquirer because it acquires merchant transactions) then routes the authorization request to a card issuer 50 via a network 40, as indicated by arrows 32 and 42. In some embodiments, the merchant processor 30 (30a in FIGS. 2 and 3A) is the bank of the merchant 20, and the card issuer 50 is the cardholder's bank. The routing generally is performed electronically in a manner mentioned above (i.e., via one or more public and/or private networks). The network 40 may be, for example, the VisaNet system. Other examples of the network 40 include debit card processing network systems (e.g., Cirrus), the American Express card network, and the Discover (Novus) card network. It may be possible to bypass the network 40 and send the authorization request directly from the merchant processor 30 to the card issuer 50. In some instances, the card issuer 50 also performs the function of acquiring merchant transactions (American Express is an example). Also, the merchant processor 30 and the card issuer 50 can be merged, and the authorization request will then go only to the merchant processor 30 which itself then can approve or disapprove the request because the merchant processor 30 and the card issuer 50 are now the same entity. In the case where the network 40 is used and the card issuer 50 and the merchant processor 30 are separate (organizationally and/or physically) entities, the card issuer 50 receives the authorization request via the network 40 and either approves or disapproves the request. An example of when the card issuer 50 may disapprove the authorization request is when the cardholder 10 has reached the maximum limit on the card or if the card number has been fraudulently obtained. Assuming the request is approved, the card issuer 50 sends

**4**

approval of the authorization to the merchant processor 30 via the network 40, as indicated by arrows 44 and 34. The merchant processor 30 then passes on the authorization approval to the merchant, as indicated by an arrow 24. With the approval, the second part of the card transaction can now occur. This return path (i.e., arrows 44, 34, and 24) also can be accomplished by electronic transmission through one or more private and/or public network systems. In general, all of the arrows in FIGS. 1A, 1B, and 2 represent electronic transmissions, except possibly for arrows 12, 22, 26, 52, and 54 which may involve other types of transmission such as physical delivery (e.g., a card handed over by the cardholder/customer 10) or post (e.g., a bill sent to the cardholder 10 via the U.S. Postal Service or other carrier) or by telephone.

Referring to FIG. 1B, to complete the purchase transaction, the dollar amount of the customer's purchase is forwarded to the merchant processor 30 by the merchant 20, as indicated by an arrow 26. The merchant processor 30 pays the merchant 20 some amount less than the amount submitted to the merchant processor 30. The merchant processor 30 typically charges a fee, often referred to as a discount rate, for processing the purchase transaction. For example, the customer's purchase may have been $100, and with a discount rate of 1.9%, the merchant 20 is paid $98.10 (i.e., $100 less the 1.9% discount rate) by the merchant processor 30. The merchant processor 30 submits the entire amount of the customer's purchase to the card issuer 50 via the network 40, as indicated by arrows 36 and 46. Again, the network 40 may be eliminated, and the merchant processor and card issuer functions may be contained in one entity. In the case where the network 40 is included and the merchant processor and card issuer functions are separate, the card issuer 50, via the network 40, pays the merchant processor 30 some amount less than the amount submitted to the card issuer 50 by the merchant processor 30, as indicated by arrows 48 and 38. This reduced amount reflects another fee levied on the transaction by the card issuer 50, often referred to as an interchange fee. The interchange fee is often part of the discount rate. The merchant processor 30 then in turn pays the merchant 20 (e.g., by forwarding payment to a bank having an account maintained by the merchant 20) some amount less than the customer's original purchase amount, as indicated by an arrow 28. For example, with an original customer purchase of $100, and with an interchange fee of 1.4%, the merchant processor 30 is paid $98.60 (i.e., $100 less the 1.4% interchange fee) by the card issuer 50. This amount is further reduced by the merchant processor's fee. Thus, in this $100 original customer purchase example, the merchant 20 is paid $98.10 by the merchant processor 30, the merchant processor 30 makes $0.50, and the card issuer makes $1.40. Stated another way, the merchant 20 pays 1.9% for the ability to offer customers the convenience of paying by card, and that 1.9% fee or surcharge is allocated to the merchant processor 30 (0.5%) and the card issuer (1.4%) for providing the merchant 20 with that ability.

The card issuer 50 bills the customer or cardholder 10 for the full amount of the original purchase (e.g., $100), and the cardholder 10 is responsible for paying that amount, plus any interest and other fees, in full or in installment payments. Also, when the network 40 is used, both the merchant processor 30 and the card issuer 50 generally pay a fee to the provider of the network 40. For example, in the case of VisaNet, the merchant processor might pay $0.0059 to Visa-Net as a card service fee, and the card issuer 50 might pay VisaNet $0.059 as a card service and transaction fee. These payments by the merchant processor 30 and the card issuer

ADV0000140

US 6,941,281 B1

5

50 to the provider of the network 40 reduce the amount made off of the surcharge (e.g., 1.9%) imposed on the merchant 20.

Having described the environment in which the invention operates with reference to FIGS. 1A and 1B, the automated loan repayment system and process according to the invention will now be described with reference to FIGS. 2, 3A, and 3B.

Referring to FIG. 2, a lender 60 makes a loan to the merchant 20, as indicated by an arrow 62. The merchant 20 then is required to pay back the full loan amount plus interest, and possibly fees. Currently, the merchant 20 typically pays the outstanding loan back in periodic installments (e.g., equal monthly payments over five years). The merchant 20 may make these payments to the lender 60 or to some other loan repayment receiver. In FIG. 2, the loan repayment receiver is identified as the lender 60. In accordance with the invention, a purchase transaction occurs as indicated in FIG. 1B except that the final step where the merchant processor pays the merchant is altered. That is, the payment indicated by the arrow 28 is altered. The invention involves a merchant processor 300 designed to pay a portion of what would normally go to the merchant 20 to the lender 60 as repayment of at least a portion of the merchant's outstanding loan amount, as indicated by an arrow 29. The lender 60 then receives that portion of the payment forwarded by the merchant processor 300 and applies it to the merchant's outstanding loan amount to reduce that outstanding loan amount. The merchant processor 300 thus pays the merchant 20 some amount less than what the merchant 20 would receive in the arrangement of FIG. 1B, as indicated by an arrow 27 in FIG. 2. For example, carrying on with the example introduced above with reference to FIGS. 1A and 1B, instead of paying $98.10 to the merchant 20 on a $100 original card purchase, the merchant processor 300 might send $88.10 to the merchant 20 and the other $10.00 to the lender 60.

In accordance with the invention, there can be a number of variations on how and when the merchant processor 300 pays the lender 60. For example, the merchant processor 300 can accumulate the payments received from the card issuer 50 (via arrows 48 and 38) until a predetermined dollar amount is reached, and then the merchant processor 300 can forward at least a portion of the accumulated payments to the lender 60. Also, as another example, the merchant processor 300 can periodically forward payment to the lender 60, such as upon every other payment received from the card issuer 50.

Referring to FIG. 3A, the merchant processor 300 according to the invention typically includes at least a processor 302, memory 304, an input/output (I/O) device 306, a merchant accounts database 308, and a bus 310 or other means for allowing these components to communicate. The I/O module 306 allows the merchant processor 300 to communicate electronically with the other components (e.g., the merchant 20, the network 40, the card issuer 50, and the lender 60) in the card transaction processing system shown in the drawings. The processor 302 and the memory 304 cooperate with each other and with the other components of the merchant processor 300 to perform all of the functionality described herein. In one embodiment, the merchant processor 300 executes appropriate software to perform all of the functionality described herein. In an alternative embodiment, some or all of the functionality described herein can be accomplished with dedicated electronics hardwired to perform the described functions. The merchant accounts database 308 can include information identifying

6

all merchants 20 with which the merchant processor 300 is authorized to do business (e.g., at least a plurality of unique merchant code numbers), and it also can include information about which lender 60 is associated with each authorized merchant 20 and how (e.g., dollar amounts and frequency) payments are to be made to the lenders 60 by the merchant processor 300. The merchant processor 300 according to the invention can be an appropriately programmed computer such as a mainframe, minicomputer, PC, or Macintosh computer, or it can include a plurality of such computers cooperating to perform the functionality described herein. Similarly, the other components of the card transaction system (e.g., the merchant 20, the network 40, the card issuer 50, and the lender 60) according to the invention typically include one or more appropriately programmed computers for implementing the functionality described herein.

Referring to FIG. 3B, the merchant 20 typically includes at least one computer unit 312, such as a microprocessor and associated peripherals, that communicates over a bus 314 with a consumer data input device 316, a transaction data input device 318, memory 320, and an input/output (I/O) device 322. The consumer data input device 316 is located at the point-of-sale to a consumer of merchandise or services from the merchant. The device 316 can include a keyboard for use to enter a consumer's account number/identifier, or alternatively it can include a magnetic card reader for reading a magnetic stripe on a plastic card inserted into the reader. With such a magnetic stripe card, the stripe is encoded with the identifier (e.g., the customer's Visa credit card account number). When such a plastic card is used, the device 316 also may include a keyboard for entry of a personal identification number (PIN) for verifying against a code stored in or on the card. The transaction data input device 318 also is located at the point-of-sale, and it typically includes a keyboard or the like for use by, for example, a sales clerk to enter the dollar amount of the merchandise or service purchased by the customer and possibly other related information. The device 318 could include a cash register. In some embodiments, the devices 316 and 318 can share a single keyboard. The consumer and transaction data entered through the devices 316 and 318 may be temporarily stored in the memory 320. The memory 320 also may include merchant data along with software to direct operation of the computer 312. The merchant data typically will include at least a merchant code number to identify the merchant, and merchant data also may include information indicating the time or location of the sale and/or the sales clerk involved in the purchase transaction, for example. The merchant 20 may have more than one point-of-sale locations and each such location can be equipped with consumer and transaction data input devices 316 and 318. Similarly, memory 320 and I/O devices 322 can be replicated at each point-of-sale location at the merchant 20. In one embodiment, only the devices 316 and 318 are replicated at the merchant 20 such that only one computer 312 is needed by each single merchant location. Verifone Inc. of Redwood City, Calif., for example, provides such merchant-location equipment.

Referring now to both FIG. 3A and FIG. 3B, the merchant processor 300 and the merchant 20 can communicate through the I/O devices 306 and 322. These devices 306 and 322 can be modems, for example.

While only one merchant 20 and one lender 60 are shown in the drawings, it should be understood that in general a plurality of merchants 20 will interact with the merchant processor 300, and the merchant processor 300 could inter-

US 6,941,281 B1

7

act with one or more lenders 60, in accordance with the invention. The different merchants 20 generally will have varying outstanding loan amounts owed to one or more of the various lenders 60. The invention has been shown and described with reference to one merchant 20 and one lender 60 for simplicity and ease of understanding. Also, as stated previously, the merchant processor 300 and the card issuer 50 can be separate entities (as is generally the case with Visa card processing) or the same entity, or at least affiliated entities, (as is generally the case with American Express card processing).

Variations, modifications, and other implementations of what is described herein will occur to those of ordinary skill in the art without departing from the spirit and the scope of the invention as claimed. Accordingly, the invention is to be defined not by the preceding illustrative description but instead by the spirit and scope of the following claims.

What is claimed is:

1. A method for automated payment, comprising:

at a merchant, accepting a customer identifier as payment from the customer and electronically forwarding information related to the payment to a computerized merchant processor;

at the computerized merchant processor, acquiring the information related to the payment from the merchant, authorizing and settling the payment, and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant; and

at the computerized payment receiver, receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding obligation made by the merchant to reduce such obligation.

2. The method of claim 1 wherein the accepting step comprises accepting a credit card number as the customer identifier.

3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier.

4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier.

5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier.

6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location.

7. The method of claim 1 wherein the accepting step comprises electronically accepting the customer identifier.

8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the

8

payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver.

9. The method of claim 1 wherein the steps performed at the merchant processor comprise periodically forwarding at least a portion of the payment to the payment receiver.

10. A system for automated payment of an obligation made by a merchant, comprising:

at a merchant, means for accepting a customer identifier as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor, wherein the merchant associated with the payment has an outstanding obligation to a third party; and

at the computerized merchant processor, means for receiving the information related to the payment from the merchant, means for authorizing and settling the payment, and

means for forwarding a portion of the payment to the third party to reduce the obligation.

11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier.

12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier.

13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card number as the customer identifier.

14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the customer identifier.

15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location.

16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier.

17. The system of claim 10 wherein the means at the merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party.

18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for periodically forwarding at least a portion of the payment to the third party.

19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation.

* * * * *

# EXHIBIT B

to

## ADVANCEME INC.'S OPENING CLAIM CONSTRUCTION BRIEF



PATENT
Attorney Docket No. JHN-001 (4750/2)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT: Johnson

SERIAL NO.: 08/890,398    GROUP NO.:

FILING DATE: July 9, 1997    EXAMINER: James W. Myhre

TITLE: Automated Loan Repayment

RECEIVED
JUN 0 9 1999
Group 2700

### RESPONSE AFTER FINAL UNDER RULE 1.116

In response to the final Office Action mailed from the Patent Office on February 16, 1999, please consider the remarks that follow.

#### Telephonic Interview

On May 4, 1999, applicant's representatives, Robert Tosti and Michael Giannetta, spoke with Examiner Myhre over the telephone about the final Office Action. During the interview, we generally discussed the issues and positions set forth below.

#### Claim Rejections

Claims 1-6, 8-15, and 17-19 are rejected under 35 U.S.C. Section 103(a) over U.S. Patent No. 4,750,199 to Cohen (hereinafter "Cohen").

Claims 7 and 16 are rejected under 35 U.S.C. 103(a) over Cohen in view of U.S. Patent No. 5,465,206 to Hilt et al. (hereinafter "Hilt").

ADV0001034

Applicant: Johnson
Serial No.: 08/890,398
Page 2 of 6

## Pending Claims

Originally-filed claims 1-19 are pending in this application, with claims 1 and 10 being the only pending independent claims.

The pending independent claims relate to automated loan repayment which utilizes a "merchant processor" to forward at least a portion of a customer's payment (such as a Visa credit card payment) to a loan repayment receiver as repayment of at least a portion of an outstanding loan that the merchant has with a lender. As recited in the independent claims, the customer makes the payment by using a "customer identifier," which could be, for example, a Visa or MasterCard credit card (see dependent claims 2 and 11, and/or page 5 of the originally-filed application, for example).

A "merchant processor" according to the invention is described with some particularity in the originally-filed application, and this description/definition should be used when interpreting and evaluating the claims. As indicated on pages 1-2 of the originally-filed application, a merchant processor generally is any entity dedicated to acquiring and processing merchant transactions. In acquiring and processing a merchant transaction, the merchant processor generally receives card payment information from a merchant or on behalf of a merchant, obtains authorization for the card payment from the card issuer, sends that authorization to the merchant, and then completes the transaction by paying the merchant, submitting the payment, and getting paid by the issuer. For this service, the merchant processor typically levies a fee on the merchant, and the fee typically is a percentage of the amount of the card payment transaction, such that the merchant receives from the merchant processor some amount less than the actual face-value of the amount the customer paid to the merchant with the card. The invention relates to modifying the existing merchant processor system that is now used by merchants to authorize and settle card payment transactions. In accordance with the invention, the modification of the existing merchant processor system allows the merchant processor to make payment to both a merchant _and_ a lender (or other loan

ADV0001035

Applicant: Johnson
Serial No.: 08/890,398
Page 3 of 6

repayment receiver), whereas previously the merchant processor simply paid the merchant.

The invention thus generally relates to utilizing the existing "merchant processor" system, but modifying it according to the invention such that the "merchant processor" now "pay[s] a portion of what would normally go to the merchant 20 to the lender 60 [or other loan repayment receiver] as repayment of at least a portion of the merchant's outstanding loan amount, as indicated by arrow 29 [in FIG. 2]" (pages 7 and 8 of the originally-filed application). "The lender 60 [or other loan repayment receiver] then receives that portion of the payment forwarded by the merchant processor 300 and applies it to the merchant's outstanding loan amount to reduce that outstanding loan amount. The merchant processor 300 thus pays the merchant 20 some amount less than what the merchant 20 would receive in the" conventional situation where the merchant processor operates in the traditional manner depicted in, and described in relation to, FIGS. 1A and 1B (page 8 of the originally-filed application). "For example, carrying on with the example introduced above with reference to FIGS. 1A and 1B, instead of paying $98.10 to the merchant 20 on a $100 original card purchase, the merchant processor 300 might send $88.10 to the merchant 20 and the other $10.00 to the lender 60 [or other loan repayment receiver]" (page 8 of the originally-filed application).

The claimed invention thus involves modifying the existing "merchant processor" system to allow repayment of a loan by a merchant via the processing by the modified "merchant processor" system of customers' card payments. Cash payments by customers are not part of the claimed invention as they do not involve a "customer identifier" and they do not get authorized and settled via a merchant processor. Only "customer identifier" payments from customers are part of the claimed invention, and these can include, for example, credit card, debit card, smart card, and charge card payments, according to the invention.

ADV0001036

Applicant: Johnson
Serial No.: 08/890,398
Page 4 of 6

## Cohen

In sharp contrast to the invention recited in the pending independent claims and described above, Cohen describes a rebate system, whereby subscriber-purchasers receive a rebate for purchasing goods and services through a closed network of vendors. Cohen says nothing at all about utilizing a merchant processor to forward at least a portion of a customer's payment (such as a Visa credit card payment) to a loan repayment receiver as repayment of at least a portion of an outstanding loan that the merchant has with a lender. At most, Cohen describes using a merchant processor in the conventional manner to authorize and settle card payment transactions. Nowhere does Cohen even hint at modifying the merchant processor system to allow even a portion of what would normally go to the merchant to instead go to some other entity. Cohen certainly does not teach or suggest anything about loan repayment by a merchant via card payment transactions processed by a merchant processor.

With regard to Cohen's description of using a merchant processor in the conventional manner to authorize and settle card payment transactions, applicant submits that Cohen at best merely alludes to traditional use of a merchant processor to facilitate card purchase transactions. Cohen seems to indicate that a subscriber-purchaser can pay for a product with a credit card, and that any such card purchase must first be cleared so that the funds are then available to pass on and be used in the rebate system. (See Cohen at column 3, line 65 and column 4, lines 26-27.) This, however, is nothing more than a conventional use of a merchant processor, and virtually all of Cohen is focused on describing the rebate system which has absolutely nothing to do with a merchant processor. In sharp contrast to Cohen, the claimed invention is directed to using a merchant processor in a new and modified way.

The system described in Cohen is a purchasing system with a rebate feature. Cohen describes a marketing program designed to reward customers with rebates to motivate subscriber-purchasers to patronize the shops of vendors associated with the marketing program to the exclusion of other vendors' shops (column 4, lines 7-10 of

Applicant: Johnson
Serial No.: 08/890,398
Page 5 of 6

Cohen). According to Cohen, vendors join a pool of vendors that offer goods and services at wholesale prices to the operator of the marketing program (column 4, lines 1-4). Subscriber-purchasers have access to the goods and services of the vendors in the pool and can order those goods and services at retail prices through a purchasing center (column 3, lines 40-44). A price differential exists between the wholesale price the operator of the marketing program paid for the goods and services and the retail price offered to the subscriber-purchasers for the goods and services (column 4, lines 4-6), and this differential covers all of the operator's fees as well as the rebates for the subscriber-purchasers. The rebate is sent to an insurance company that maintains individual annuity accounts for each of the subscriber-purchasers (column 4, lines 17-29). The rebate is paid to the subscriber-purchaser via the annuity account 20 years into the future (column 3, lines 22-26).

Again, although the Cohen system allows subscriber-purchasers to purchase goods with credit cards, Cohen does not describe the use of a merchant processor to direct the "rebate" to the insurance company or to direct any extra amount anywhere. Cohen thus is very different from the invention recited in pending independent claims 1 and 10.

<u>Cohen and Hilt</u>

Hilt describes a system for electronically paying bills by the customer entering customer information "manually, via paper, at an ATM, or via a PC, telephone keypad, screen telephone or personal digital assistant" (column 11, lines 51-54 of Hilt). Hilt describes how a credit card number gets into the system electronically. Hilt does not, however, have anything to do with the subject matter of pending independent claims 1 and 10. Hilt adds nothing to Cohen that would have made applicant's invention unpatentable, and applicant thus submits that all pending claims are patentable over Cohen and Hilt, whether taken alone or in combination.

Applicant: Johnson
Serial No.: 08/890,398
Page 6 of 6

<u>Information Disclosure Statements</u>

On March 3, 1998, an Information Disclosure Statement (IDS) was filed with the Patent Office. A copy of the initialed 1449 forms sent with this IDS was returned with the first Office Action (Paper Number 3) on November 10, 1998. On October 29, 1998, a Supplemental IDS was filed with the Patent Office. Applicant requests return of an initialed copy of the 1449 form sent with this Supplemental IDS.

<u>Conclusion</u>

In view of the foregoing, applicant respectfully requests reconsideration, withdrawal of all rejections, and allowance of all pending claims in due course.

Respectfully submitted,

Date: June 3 , 1999
Reg. No. 35,393

Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

Robert J. Tosti
Attorney for Applicant
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA  02110

TOST/782269-1

ADV0001039

AF/ATM 2765$

PATENT
Attorney Docket No. JHN-001 (4750/2)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| APPLICANT(S): | Johnson | | |
| SERIAL NO.: | 08/890,398 | GROUP NO.: | |
| FILING DATE: | July 9, 1997 | EXAMINER: | James W. Myhre |
| TITLE: | Automated Loan Repayment | | |

---

**_CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8_**

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to the Assistant Commissioner for Patents, Box AF, Washington, DC 20231 on this 3th day of June 1999.

Marianne Wetzonis

---

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

**RECEIVED**
JUN 0 9 1999
Group 2700

Submitted herewith is/are:

Amendment and Response (6 pages.);
Transmittal Form (1 pg.);
Extension-of Time Request (1 page);
Fee Transmittal Form (1 page);
Check for $55.00 (one month extension); and
Return receipt postcard dated June 3, 1999.

TOST/4750/2802015

**FEE TRANSMITTAL**

Note: Effective October 1, 1997,
Patent fees are subject to annual revision.

JUN 07 1999

| | Complete if Known |
|---|---|
| Application Serial Number | 08/890,398 |
| Filing Date | July 9, 1997 |
| First Named Inventor | Johnson |
| Group Art Unit | 2765 |
| Examiner Name | James W. Myhre |
| Attorney Docket No. | JHN-D01 (4750/2) |

RECEIVED
JUN 0 9 1999
Group 2700

## METHOD OF PAYMENT

1. ☒ Payment Enclosed:
   ☒ Check ☐ Money Order ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below to Deposit Account No. 20-0531.
   ☐ Required Fee (copy of this sheet enclosed).
   ☒ Additional fee required under 37 CFR 1.16 and 1.17.
   ☒ Overpayment Credit.

## FEE CALCULATION

### 1. FILING FEE

| Large Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 760 | Utility filing fee | |
| 310 | Design filing fee | |
| 150 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | - 20 = | | x $ 18.00 = | |
| Independent Claims | - 3 = | | x $ 78.00 = | |

☐ Multiple Dependent Claim(s), if any    $260.00 =

TOTAL:
SMALL ENTITY DISCOUNT:
SUBTOTAL (1)    ($)

### 2. AMENDMENT CLAIM FEES

| | Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|---|
| Total | - | - | | x $ 18.00 = | |
| Indep. | - | - | | x $ 78.00 = | |

☐ First Presentation of Multiple Dep. Claim    + $260.00 =

TOTAL:    ($)
SMALL ENTITY DISCOUNT:    ($)
SUBTOTAL (2)    ($)

### 3. ADDITIONAL FEES

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or | |
| 130 | 130 | Non-English specification | |
| 2,520 | 2,520 | For filing a request for reexamination | |
| 110 | 55 | Extension for reply within first month | $55.00 |
| 380 | 190 | Extension for reply within second month | |
| 870 | 435 | Extension for reply within third month | |
| 1,360 | 680 | Extension for reply within fourth month | |
| 1,850 | 925 | Extension for reply within fifth month | |
| 300 | 150 | Notice of Appeal | |
| 300 | 150 | Filing a brief in support of an appeal | |
| 260 | 130 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 50 | 50 | Petitions related to provisional applications | |
| 240 | 240 | Submission of Information Disclosure Statement (37 CFR 1.97(c)) | |
| 130 | 130 | Submission of Information Disclosure Statement (37 CFR 1.97(d)) | |
| 760 | 380 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 760 | 380 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| | | Other (Specify) | |

SUBTOTAL (3)    ($) 35.00

SUBTOTAL (1)
SUBTOTAL (2)
SUBTOTAL (3)    55.00

TOTAL    ($)    55.00

## CORRESPONDENCE ADDRESS

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

## SIGNATURE BLOCK

Respectfully submitted,

Date: June 3, 1999
Reg. No.: 35,393
Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

Robert J. Tosti
Attorney for the Applicants
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

TOSTI/4750/2.802016

ADV0001041

| | |
|---|---|
| | Application Serial Number | 08/890,398 |
| | Filing Date | July 9, 1997 |
| TRANSMITTAL FORM | First Named Inventor | Johnson |
| | Group Art Unit | 2765 |
| | Examiner Name | James W. Myhre |
| | Attorney Docket No. | JHN-001 (4750/2) |

## ENCLOSURES (check all that apply)

☒ Fee Transmittal Form

  ☒ Check Attached
  ☐ Copy of Fee Transmittal Form

☒ Amendment/Response

  ☒ After Final
  ☐ Affidavits/declaration(s)
  ☐ Letter to Official Draftsperson including Drawings [Total Sheets ___]

☒ Extension of Time Request

☐ Information Disclosure Statement
☐ Form PTO-1449
☐ Copies of IDS Citations
☐ Certified Copy of Priority Document(s)
☐ Response to Missing Parts/ Incomplete Application

☐ Copy of Notice to File Missing Parts of Application (PTO-1553)

☐ Formal Drawing(s)

☐ Petition Routing Slip (PTO/SB/69) and Accompanying Petition to Convert to a Provisional Application

☐ Power of Attorney (Revocation of Prior Powers)

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ Request for Refund

☐ After Allowance Communication to Group

☐ Appeal Communication to Board of Patent Appeals and Interferences

☐ Appeal Communication to Group (Appeal Notice, Brief, Reply Brief)

☐ Status Letter

☒ Return Receipt Postcard

☒ Certificate of First Class Mailing under 37 C.F.R. 1.8

☐ Additional Enclosure(s) (please identify below)

### RECEIVED
### JUN 0 9 1999
### Group 2700

---

**CORRESPONDENCE ADDRESS**

Direct all correspondence to:  Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

**SIGNATURE BLOCK**

Date: June 3, 1999
Reg. No. 35,393
Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

Respectfully submitted,

Robert J. Tosti
Attorney for Applicant(s)
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

TOSTI4750/2.802014

ADV0001042

# EXHIBIT C

to

## ADVANCEME INC.'S OPENING CLAIM
## CONSTRUCTION BRIEF

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/890,398 | 07/09/97 | JOHNSON | |

LMD2/1110

| EXAMINER |
|---|
| MY HUYNH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2765 | 3 |

PATENT ADMINISTRATOR
TESTA HURWITZ & THIBEAULT
HIGH STREET TOWER
125 HIGH STREET
BOSTON MA 02110

DATE MAILED: 11/10/98

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

| *Office Action Summary* | Application No. 08/890,398 | Applicant(s) Johnson |
|---|---|---|
| | Examiner James Myhre | Group Art Unit 2765 |

☒ Responsive to communication(s) filed on *Jul 9, 1997*

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-19* _____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-19* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☒ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___2___

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---

U.S. Patent and Trademark Office
PTO-326 (Rev. 9-95)                    Office Action Summary                    Part of Paper No. ___3___

ADV0001005

Serial Number: 08/890,398                                                    Page 2

Art Unit: 2765

## DETAILED ACTION

### *Specification*

1.    The disclosure is objected to because of the following informalities:

      a.  On Page 5, line 21, "processor 30, 300 is the" should be "processor 30 is the".

      b.  On Page 6, line 19, "arrow 26" should be "arrows 48 and 38".

Appropriate correction is required.

### *Claim Rejections - 35 USC § 101*

2.    35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

3.    Claims 1-19 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.

Claims 1-9 have no practical application in the technological arts. The claims recite a series of steps and are considered for the purpose of analysis under 35 U.S.C. 101 as reciting a series of steps, but do not recite any connection to the technological arts. Claims 10-19 recite a system on which the steps of Claims 1-9 are run and are thus considered for the purpose of analysis under U.S.C. 101 as reciting a series of steps, but do not recite any connection to the technological arts. The claims do not define the terms "merchant processor" or "loan repayment

ADV0001006

Serial Number: 08/890,398                                                    Page 3

Art Unit: 2765

receiver" as being electronic or computerized components; nor do they define "automated loan repayment" as taking place on a computer system. Processor and payment receiver are well known within the art as titles for employees which handle loan and/or payment processing. The claims would be deemed statutory if they recited a connection to the technological arts, such as "automatic computerized loan repayment", "a merchant's computer processor", and "a computerized loan repayment receiver".

### *Claim Rejections - 35 USC § 103*

4.       The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5.       Claims 1-6, 8-15, and 17-19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Cohen (4,750,119).

         Claims 1 and 10:  Cohen discloses a system and method for purchase and transaction processing, comprising:

                 a. Accepting a customer identification and forwarding payment information to a merchant (vendor) processor (col 3, lines 58-61; col 5, Table I; and col 7, lines 50-51);

Serial Number: 08/890,398

Art Unit: 2765

    b. Forwarding a portion of the payment to a loan repayment receiver (Cohen forwards a portion of the payment to a "future benefit guarantor" or "an insurance company" (col 3, lines 4-9 and 31-38, and col 4, lines 17-21). See Official Notice below); and

    c. Receiving and applying the portion of the payment to reduce the loan amount (Cohen increases the future benefit by the portion of payment received (col 4, lines 21-24). See Official Notice below).

    Official Notice is taken that it is old and well known within the finance art that automatic deductions can be made to pay outstanding debts, such as loans, mortgages, insurance, etc. Numerous automatic deductions are also made from transactions to cover sales taxes, credit card transaction charges, etc. Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made that the portion of the transaction that Cohen was transferring to the insurance company could be transferred to a loan company, a bank, a mortgage company, or any other account which the vendor desired. Whether these payments were applied to decrease a loan amount, make a mortgage payment, or increase an account balance would obviously depend entirely on the destination of the transfer. One would have been motivated to transfer a portion of the transaction to a loan repayment receiver in view of Cohen disclosure of transferring the portion to an insurance company and in view of the widespread use of automatic payments for paying mortgages (which are one type of loan).

    Claims 2- 5 and 11-14: Cohen discloses a system and method for automated loan repayment as discussed in Claims 1 and 10 above, and further discloses accepting a credit card

ADV0001008

Serial Number: 08/890,398                                        Page 5

Art Unit: 2765

number as the customer identification (col 5, Table II), but does not disclose the card being a debit card, a smart card, or a charge card. Official Notice is taken these are old and well known within the business art as types of "credit" cards by which consumers pay for goods and services in place of using cash. Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to use any one of these cards when using the transaction system of Cohen. One would have been motivated to allow the system to use any one or more of these types of cards in order to increase the customer's payment options and in view of the widespread use of these cards in transactions.

Claims 6 and 15: Cohen discloses a system and method for automated loan repayment as discussed in Claims 1 and 10 above, and further discloses accepting the customer identifier at the merchant's location (col 3, lines 40-57 and col 7, lines 50-51).

Claims 8-9 and 17-18: Cohen discloses a system and method for automated loan repayment as discussed in Claims 1 and 10 above, and further discloses accumulating the payments, then periodically (daily) forwarding them to the loan processor (insurance company)(col 4, lines 21-24).

Claim 19: Cohen discloses a system and method for automated loan repayment as discussed in Claim 10 above, and further discloses forwarding a percentage of the payment (col 7, lines 25-41).

ADV0001009

Serial Number: 08/890,398                                    Page 6

Art Unit: 2765

6.      Claims 7 and 16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Cohen

(4,750,119) in view of Hilt et al (5,465,206).

        Claims 7 and 16:  Cohen discloses a system and method for automated loan repayment as

discussed in Claims 1 and 10 above, but does not explicitly disclose electronically accepting the

customer identifier.  Hilt discloses a similar system and method for electronically paying bills by

the customer entering the information "manually, via paper, at an ATM, or via a PC, telephone

keypad, screen telephone or personal digital assistant" (col 11, lines 51-54).  Therefore, it would

have been obvious to one having ordinary skill in the art at the time the invention was made to

enter the customer identifier electronically using any one of the methods discussed by Hilt.  One

would have been motivated to do so by Cohen's disclosure of the customer placing the order over

a telephone (col 3, lines 42-44) and the widespread use of card readers in retail establishments to

facilitate rapid and error-free entry of the customer's identifier.

*Conclusion*

7.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

        Deming (4,823,264), Nagata (Re. 32,985), Kight (5,383,113), Hovakimian (5,466,919),

Pickering (5,483,445), Rogers (5,715,298), Tozzoli (5,717,989), Yu (5,748,908), Rose

(5,757,917), and Egendorf (5,794,221) pertain to electronic systems for completing transactions

and transferring funds between the participants, with Kight disclosing automatic payment of loans.

Serial Number: 08/890,398                                      Page 7

Art Unit: 2765

    Any inquiry concerning this communication or earlier communications from the examiner should be directed to Exr. James W. Myhre whose telephone number is (703) 308-7843. The examiner can normally be reached on weekdays from 7:30 a.m. to 4:00 p.m.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Allen R. MacDonald, can be reached on (703) 305-9708. The fax phone number for this Group is (703) 305-3988.

    Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the Group receptionist whose telephone number is (703) 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.

JWM
11/03/98

ERIC W. STAMBER
PRIMARY EXAMINER
ART UNIT 2765

*Notice of References Cited*

| Application No. | Applicant(s) | | |
|---|---|---|---|
| 08/890,398 | Johnson-, | | |
| Examiner | | Group Art Unit | |
| James Myhre | | 2765 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 4,750,119 | 06/07/88 | Cohen et al | 705 | 14 |
| B | 4,823,264 | 04/18/89 | Deming | 705 | 38 |
| C | RE. 32,985 | 07/11/89 | Nagata et al | 705 | 41 |
| D | 5,383,113 | 01/17/95 | Kight et al | 705 | 40 |
| E | 5,465,206 | 11/07/95 | Hilt et al | 705 | 40 |
| F | 5,466,919 | 11/14/95 | Hovakimian | 705 | 17 |
| G | 5,483,445 | 01/09/96 | Pickering | 705 | 40 |
| H | 5,715,298 | 02/03/98 | Rogers | 379 | 91.01 |
| I | 5,717,989 | 02/10/98 | Tozzoli et al | 705 | 37 |
| J | 5,748,908 | 05/05/98 | Yu | 705 | 44 |
| K | 5,757,917 | 05/26/98 | Rose et al | 380 | 25 |
| L | 5,794,221 | 08/11/98 | Egendorf | 705 | 40 |
| M | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

## NON-PATENT DOCUMENTS

| | DOCUMENT (including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

ADV0001012

# EXHIBIT D

to

## ADVANCEME INC.'S OPENING CLAIM CONSTRUCTION BRIEF





PATENT
Attorney Docket No. IHN-001 (4750/2)

RECEIVED
JAN 27 1999
Group 2700

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(S):    Johnson
SERIAL NO.:      08/890,398         GROUP NO.:    2765
FILING DATE:     July 9, 1997       EXAMINER:     James W. Myhre
TITLE:           Automated Loan Repayment

Assistant Commissioner for Patents
Washington, D.C. 20231

### AMENDMENT AND RESPONSE

In response to the Office Action mailed from the Patent Office on November 10, 1998, please amend this application as indicated below and consider the remarks that follow.

### In the Specification:

On page 5 at line 21, please change "the merchant processor 30, 300 is the" to — the merchant processor 30 (300 in FIGS. 2 and 3A) is the—.

On page 6 at line 18, please change "card issuer 50" to —merchant 20—.

### In the Claims:

Please amend claims 1 and 10 as follows:

1. (Amended) A method for automated loan repayment, comprising:
accepting a customer identifier as payment from the customer and electronically forwarding information related to the payment to a computerized merchant processor;
at the computerized merchant processor, acquiring the information related to the payment and forwarding at least a portion of the payment to a computerized





ADV0001019

Applicant: Johnson
Serial No.: 08/890,398
Page 2 of 4

loan repayment receiver as repayment of at least a portion of an outstanding
loan amount owed by the merchant; and

at the computerized loan repayment receiver, receiving the portion of the
payment forwarded by the computerized merchant processor and applying that
portion to the outstanding loan amount owed by the merchant to reduce that
outstanding loan amount.

10. (Amended) A system for automated loan repayment, comprising:

means for accepting a customer identifier as payment from the customer and for
electronically forwarding information related to the payment to a
computerized merchant processor, wherein a merchant associated with the
payment has an outstanding loan to a lender; and

at the computerized merchant processor, means for receiving the information
related to the payment and means for forwarding to the lender a loan payment
associated with the payment.

## REMARKS

Applicant hereby amends claims 1 and 10, leaving claims 1-19 pending in this
application with amended claims 1 and 10 being the only independent claims.

The specification has been amended to address the informalities identified in the
Office Action. Applicant submits that the specification as amended is free of
informalities, and that all amendments are fully supported by the originally-filed
application.

Applicant submits that amended claims 1 and 10 address the 35 U.S.C. Section
101 concerns raised in the Office Action. All changes to the claims are fully supported
by the originally-filed application at, for example, pages 8 and 9.

Claims 1-6, 8-15, and 17-19 are rejected under 35 U.S.C. Section 103(a) over U.S.
Patent No. 4,750,199 to Cohen (hereinafter "Cohen").

ADV0001020

Applicant: Johnson
Serial No.: 08/890,398
Page 3 of 4

Cohen describes a purchasing system with a rebate feature, namely the bundling of a purchase of a good or service with an annuity. The annuity is payable to a purchaser, and it comes due on the twentieth anniversary of the close of the merchant's fiscal year in which the purchaser made the purchase (column 1, lines 45-48). The rebate annuity of Cohen comes into existence after the purchaser agrees to make his purchase (column 2, lines 1-8). Cohen teaches that the annuity is ultimately purchased through the intermediation of an independent escrow agent after a series of transfers of financial data and calculations take place (column 1, lines 40-59). Cohen thus involves a system in which the purchaser of goods or services becomes the beneficiary of an annuity.

In sharp contrast to Cohen, the present invention describes repayment of a loan owed by a merchant. Cohen does not teach or suggest anything about loan repayment by a merchant. Amended claim 1 recites, in part, "outstanding loan amount owed by the merchant." Amended claim 10 recites, in part, "a merchant ... has an outstanding loan to a lender."

The loan recited in the amended claims differs from the annuity in Cohen. For example, the claims recite an "outstanding" loan, whereas the annuity of Cohen only comes into existence after the purchase. The existence of the loan in the present invention is independent of and unrelated to the consummation of any particular purchase, while the existence of the annuity in Cohen depends entirely on the consummation of the purchase. Also, in the present invention, the automated repayment of a loan amount is for the benefit of the merchant. The purchaser gains no additional benefit from the present invention. In contrast, the primary financial beneficiary in Cohen is the purchaser who gains the right to receive an annuity, while the vendor has no direct financial interest in the annuity.

Even if the annuity of Cohen is replaced with an outstanding loan, as suggested in the Office Action, the "modified" Cohen would not result in applicant's claimed invention, because the loan repayment would still be for the benefit of the purchaser. Cohen describes at column 1, lines 53-59 and at column 2, lines 29-35 that the purchaser, and not the vendor, supplies the funds used to pay for the annuity, and is the beneficiary of the annuity. Applicant's claims recite a loan repayment on behalf of and for the benefit of the merchant, and not on behalf of nor for the benefit of the purchaser.

ADV0001021

Applicant: Johnson
Serial No.: 08/890,398
Page 4 of 4

    Claims 7 and 16 are rejected under 35 U.S.C. Section 103(a) over Cohen in view of U.S. Patent No. 5,465,206 to Hilt et al., (hereinafter "Hilt").

    Hilt describes an electronic bill payment system. Hilt describes reducing or eliminating "exception items." At column 1, lines 51-59, Hilt indicates that an "exception item is a payment which, for some reason, cannot be processed according to the highly automated procedures put in place by the biller to quickly process remittances. Exception items include checks received without payment coupons, payment coupons received without checks, checks for amounts different than the amounts shown on the corresponding coupons, multiple payment coupons received in an envelope with a single check." Hilt fails to supply what is absent from Cohen, and thus any combination of Cohen and Hilt cannot and does not teach or suggest Applicant's claimed subject matter. Hilt does not teach or suggest anything about loan repayment by a merchant via a computerized merchant processor.

## CONCLUSION

    In view of the foregoing, applicant respectfully requests reconsideration, withdrawal of all rejections and objections, and allowance of all pending claims in due course.

    Respectfully submitted,

Date: January 20, 1999
Reg. No. 35,393

Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

5743BM4750/2.A705638-1

Robert J. Tosti
Attorney for Applicant
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, Massachusetts 02110

ADV0001022

GAU2715



PATENT
Attorney Docket No. JHN-001 (4750/2)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
JAN 27 1999
Group 2700

| | | | |
|---|---|---|---|
| APPLICANT(S): | Johnson | | |
| SERIAL NO.: | 08/890,398 | GROUP NO.: | 2765 |
| FILING DATE: | July 9, 1997 | EXAMINER: | James W. Myhre |
| TITLE: | Automated Loan Repayment | | |

---

*CERTIFICATE OF FIRST CLASS MAILING UNDER 37 C.F.R. 1.8*

I hereby certify that this correspondence, and any document(s) referred to as enclosed herein, is/are being deposited with the United States Postal Service as first class mail, postage prepaid, in an envelope addressed to the Assistant Commissioner for Patents, Washington, DC 20231 on this 20th day of January, 1999.

Kerri M. Guglietta

---

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Submitted herewith is/are:

Amendment and Response (4 pgs.);
Transmittal Form (1 pg.); and
a mailroom postcard.

574JBM47502A717432-1

## TRANSMITTAL FORM

| | |
|---|---|
| Application Serial Number | 08/890,398 |
| Filing Date | July 9, 1997 |
| First Named Inventor | Johnson |
| Group Art Unit | 2765 |
| Examiner Name | James W. Myhre |
| Attorney Docket No. | JHN-001 (4750/2) |

RECEIVED

JAN 27 1999

Group 2700

### ENCLOSURES (check all that apply)

☐ Fee Transmittal Form
    ☐ Check Attached
    ☐ Copy of Fee Transmittal Form
☒ Amendment/Response
    ☐ After Final
    ☐ Affidavits/declaration(s)
    ☐ Letter to Official Draftsperson
    including Drawings
    [Total Sheets _____]
☐ Extension of Time Request
☐ Information Disclosure Statement Form PTO-1449
☐ Copies of IDS Citations
☐ Certified Copy of Priority Document(s)
☐ Response to Missing Parts/Incomplete Application

☐ Copy of Notice to File Missing Parts of Application (FTO-1553)
☐ Formal Drawing(s)
☐ Petition Routing Slip (PTO/SB/69) and Accompanying Petition to Convert to a Provisional Application
☐ Power of Attorney (Revocation of Prior Powers)
☐ Terminal Disclaimer
☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application
☐ Small Entity Statement
☐ Request for Refund
☐ After Allowance Communication to Group

☐ Appeal Communication to Board of Patent Appeals and Interferences
☐ Appeal Communication to Group (Appeal Notice, Brief, Reply Brief)
☐ Status Letter
☒ Return Receipt Postcard
☒ Certificate of First Class Mailing under 37 C.F.R. 1.8
☐ Additional Enclosure(s) (please identify below)

### CORRESPONDENCE ADDRESS

Direct all correspondence to: Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

### SIGNATURE BLOCK

Respectfully submitted,

_Robert J. Tosti_

Date: January 20, 1999
Reg. No. 35,393
Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

Robert J. Tosti
Attorney for Applicant(s)
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

570JBM4750/2A717422-1

ADV0001024

# EXHIBIT E

## to
## ADVANCEME INC.'S OPENING CLAIM
## CONSTRUCTION BRIEF



EXPRESS MAIL ... L NO. EM406008989US

#12/B

PATENT
Attorney Docket No. JHN-001 (4750/2)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT:    Johnson

SERIAL NO.:    08/890,398    GROUP NO.:    2767

FILING DATE:    July 9, 1997    EXAMINER:    James W. Myhre

TITLE:    Automated Loan Repayment

Assistant Commissioner for Patents
Box CPA
Washington, D.C. 20231

RECEIVED
JUL 21 1999
TC 2700 MAIL ROOM

## PRELIMINARY AMENDMENT

This Preliminary Amendment is submitted to the Patent Office in response to an Advisory Action mailed from the Patent Office on July 8, 1999, and in response to a final Office Action mailed from the Patent Office on February 4, 1999, and this Preliminary Amendment is submitted together with a Continuing Prosecution Application (CPA) Request. Before examining the CPA, please amend this application as indicated below and consider the remarks that follow.

In the claims:

Please amend claims 1 and 10, as follows.

1. (Twice Amended) A method for automated loan repayment, comprising:

at a merchant, accepting a customer identifier as payment from the customer and electronically forwarding information related to the payment to a computerized merchant processor;

Applicant: Johnson
Serial No.: 08/890,398
Page 2 of 5

*B1 cont*

at the computerized merchant processor, acquiring the information related to the payment from the merchant, authorizing and settling the payment, and forwarding at least a portion of the payment to a computerized loan repayment receiver as repayment of at least a portion of an outstanding loan amount owed by the merchant; and

at the computerized loan repayment receiver, receiving the portion of the payment forwarded by the computerized merchant processor and applying that portion to the outstanding loan amount owed by the merchant to reduce that outstanding loan amount.

*B3*

10. (Twice Amended) A system for automated loan repayment, comprising:

at a merchant, means for accepting a customer identifier as payment from the customer and for electronically forwarding information related to the payment to a computerized merchant processor, wherein the [a] merchant associated with the payment has an outstanding loan to a lender; and

at the computerized merchant processor, means for receiving the information related to the payment from the merchant, means for authorizing and settling the payment, and means for forwarding to the lender a loan payment associated with the payment.

## REMARKS

### Claim Rejections

Claims 1-6, 8-15, and 17-19 were rejected in the final Office Action under 35 U.S.C. Section 103(a) over U.S. Patent No. 4,750,199 to Cohen (hereinafter "Cohen").

Also, claims 7 and 16 were rejected in the final Office Action under 35 U.S.C. 103(a) over Cohen in view of U.S. Patent No. 5,465,206 to Hilt et al. (hereinafter "Hilt").

ADV0001052

Applicant: Johnson
Serial No.: 09/890,393
Page 3 of 5

The Advisory Action indicates that these rejections are maintained and that the Examiner's view is "that Cohen's 'purchasing center' and Applicant's 'merchant processor' are substantially equivalent in that both receive payment requests, then transfer a portion to the vendor & a payment to a third party."

Applicant respectfully submits that the Examiner has not properly construed the claims pending upon submission of the response to the final Office Action (i.e., once-amended independent claims 1 and 10, and originally-filed dependent claims 2-9 and 11-19), but in the interest of moving to allowance as soon as possible Applicant hereby further amends the two independent claims (i.e., claims 1 and 10) in an effort to differentiate even more clearly over Cohen with the actual claim language.

## Pending Claims, Cohen, and Hilt

Twice-amended independent claims 1 and 10 and originally-filed dependent claims 2-9 and 11-19 are now pending in this application, with twice-amended claims 1 and 10 being the only pending independent claims.

Cohen's "purchasing center" is not, and cannot possibly be construed to be, the same as or substantially equivalent to the recited "merchant processor" for a number of reasons.

Cohen alludes to the fact that a purchaser/customer can contact the purchasing center and pay for a product with a credit card and that any such card purchase must first be cleared to allow the funds to be available for sending to an escrow agent (col. 3, lines 46, 60, and 63-68; col. 4, lines 17-21; and col. 4, lines 24-29), and thus it is clear from Cohen that the purchasing center is an entity completely separate from the entity that authorizes and settles card payment transactions. Applicant's "merchant processor" is defined in the application and recited in the claims as a modified version of an entity that authorizes and settles card payment transactions, and thus it is very clearly a different and separate entity from the purchasing center of Cohen. The two simply are not the same or

ADV0001053

Applicant: Johnson
Serial No.: 08/890,398
Page 4 of 5

substantially equivalent in any way. The application describes a merchant processor as an entity "dedicated to acquiring and processing merchant transactions...[by receiving card] payment information from a merchant or on behalf of a merchant, obtaining authorization for the payment..., sending that authorization to the merchant, and then completing the transaction..." (pages 1-2). Cohen's purchasing center does not receive payment information from a merchant, but instead receives it directly from a purchaser/customer (col. 3, lines 63-64). In sharp contrast to Cohen, applicant's claims recite that the merchant processor acquires the payment information from the merchant, and that the merchant processor authorizes and settles the payment.

Cohen's purchasing center is a centralized or decentralized location (col. 3, lines 47-57) where a plurality of vendors make goods and services available (col. 3, lines 2-3), and it is where purchasers/customers place orders and communicate the preferred method of paying for those orders (col. 3, lines 58-61). Applicant's claimed merchant processor does not, and in no way be construed to, either list goods/services of a plurality of vendors or accept orders for those listed goods/services from purchasers/customers. Instead, applicant's claimed merchant processor acquires payment information, and authorizes and settles the payment.

Cohen's purchasing center could possibly use the claimed merchant processor for "verifying the order and the receipt of funds" (col. 3, line 65), or Cohen's purchasing center could just use the conventional card payment processing system that is now in place (as is alluded to in Cohen), but it is clear that the purchasing system is not the same as or in any way equivalent or similar to the claimed merchant processor. It is clear from Cohen that the purchasing center incurs "credit card transaction fees" (col. 4, lines 26-27), and thus it simply cannot be the case that the purchasing center is the same as or in any way equivalent or similar to the claimed merchant processor (or even the conventional card payment processing system that is now in place) because, if the purchasing center were the same/similar, the purchasing center would not incur such fees as it is the use of a merchant processor that results in such fees. Cohen's purchasing

Applicant: Johnson
Serial No.: 08/890,398
Page 5 of 5

center is clearly described as an entity that incurs transaction fees for card transactions, and this means it is using a separate entity to authorize and settle card payments, and thus the purchasing center absolutely cannot be the same as or equivalent to the claimed merchant processor which, in part, authorizes and settles card payments.

Hilt adds nothing to Cohen that would have made applicant's invention unpatentable, and applicant thus submits that all pending claims are patentable over Cohen and Hilt, whether taken alone or in combination.

<u>Conclusion</u>

In view of the foregoing, applicant respectfully requests reconsideration, withdrawal of all rejections, and allowance of all pending claims in due course.

Respectfully submitted,

Date: July 16, 1999
Reg. No. 35,393

Robert J. Tosti
Attorney for Applicant
Testa, Hurwitz, & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA  02110

Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

TOSTI47750/2 – A824703-1

ADV0001055

**EXPRESS MAIL L.    EL No. EM406008989US**

| | Complete if Known |
|---|---|
| Application Serial Number | 08/890,398 |
| Filing Date | July 9, 1997 |
| First Named Inventor | Johnson |
| Group Art Unit | 2767 |
| Examiner Name | James W. Myhre |
| Attorney Docket No. | JHN-001 (4750/2) |

**FEE TRANSMITTAL**

*Note: Effective October 1, 1997.*
*Patent fees are subject to annual revision.*

### METHOD OF PAYMENT

1. ☒ Payment Enclosed:
   ☒ Check ☐ Money Order ☐ Other

2. ☒ The Commissioner is hereby authorized to credit or charge any fee indicated below to Deposit Account No. 20-0531.
   ☐ Required Fees (copy of this sheet enclosed).
   ☒ Additional fee required under 37 CFR 1.16 and 1.17.
   ☒ Overpayment Credit

### FEE CALCULATION

**1. FILING FEE**

**Large Entity**

| Fee ($) | Fee Description | Fee Paid |
|---|---|---|
| 760 | Utility filing fee | 760.00 |
| 310 | Design filing fee | |
| 150 | Provisional filing fee | |

| | Number Filed | Number Extra | Rate | Amount |
|---|---|---|---|---|
| Total Claims | 19 | - 20 = 0 | x $ 18.00 = | 0 |
| Independent Claims | 2 | - 3 = 0 | x $ 78.00 = | 0 |
| ☐ Multiple Dependent Claim(s), if any | | | $260.00 = | 0 |

| | |
|---|---|
| TOTAL: | 760.00 |
| SMALL ENTITY DISCOUNT: | 380.00 |
| SUBTOTAL (1) ($) | 380.00 |

**2. AMENDMENT CLAIM FEES**

| Claims Remaining After Amend. | Highest No. Previously Paid For | Present Extra | Rate | Fee Paid |
|---|---|---|---|---|
| Total | - | = | x $ 18.00 = | |
| Indep. | - | = | x $ 78.00 = | |
| ☐ First Presentation of Multiple Dep. Claim | | | + $260.00 = | |

| | |
|---|---|
| TOTAL: | ($) |
| SMALL ENTITY DISCOUNT: | ($) |
| SUBTOTAL (2) ($) | ($) |

### FEE CALCULATION (continued)

**3. ADDITIONAL FEES**

| Large Entity Fee ($) | Small Entity Fee ($) | Fee Description | Fee Paid |
|---|---|---|---|
| 130 | 65 | Surcharge - late filing fee or oath | |
| 50 | 25 | Surcharge - late provisional filing fee or | |
| 130 | 130 | Non-English specification. | |
| 2,520 | 2,520 | For filing a request for reexamination | |
| 110 | 55 | Extension for reply within first month | |
| 380 | 190 | Extension for reply within second month | |
| 870 | 435 | Extension for reply within third month | |
| 1,260 | 680 | Extension for reply within fourth month | |
| 1,650 | 925 | Extension for reply within fifth month | |
| 300 | 150 | Notice of Appeal | |
| 300 | 150 | Filing a brief in support of an appeal | |
| 260 | 130 | Request for oral hearing | |
| 130 | 130 | Petitions to the Commissioner | |
| 50 | 50 | Petitions related to provisional applications | |
| 240 | 240 | Submission of Information Disclosure Statement (37 CFR 1.97(c)) | |
| 130 | 130 | Submission of Information Disclosure Statement (37 CFR 1.97(d)) | |
| 760 | 380 | Filing a submission after final rejection (37 CFR 1.129(a)) | |
| 760 | 380 | For each additional invention to be examined (37 CFR 1.129(b)) | |
| | | Other (Specify) | |

| | |
|---|---|
| SUBTOTAL (3) ($) | |

| | |
|---|---|
| SUBTOTAL (1) | 380.00 |
| SUBTOTAL (2) | 0 |
| SUBTOTAL (3) | 0 |

| | |
|---|---|
| TOTAL ($) | 380.00 |

### CORRESPONDENCE ADDRESS

Direct all correspondence to:
Patent Administrator
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110
Tel. No.: (617) 248-7000
Fax No.: (617) 248-7100

TOSTI4750/2.R25501

### SIGNATURE BLOCK

Respectfully submitted,

Date: July 16, 1999
Reg. No.: 35,393
Tel. No.: (617) 248-7374
Fax No.: (617) 248-7100

Robert J. Tosti
Attorney for the Applicant
Testa, Hurwitz & Thibeault, LLP
High Street Tower
125 High Street
Boston, MA 02110

ADV0001056

Express Mail Label # EM406008989 US

| | |
|---|---|
| Application Serial Number | 08/890,398 |
| Filing Date | July 9, 1997 |
| First Named Inventor | Johnson |
| Group Art Unit | 2767 |
| Examiner Name | James W. Myhre |
| Attorney Docket No. | JHN-001 (4750/2) |

TRANSMITTAL FORM

*(DIPE — JUL 16 1999 — PATENT & TRADEMARK stamp)*

## ENCLOSURES (check all that apply)

☒ Fee Transmittal Form

  ☒ Check Attached Copy of Fee Transmittal Form

☐ Amendment/Response

  ☐ After Final
  ☐ Affidavit/declaration(s)
  ☐ Letter to Official Draftsperson Including Drawings [Total Sheets _____]

☒ Copy of Extension of Time Request

☐ Information Disclosure Statement Form PTO-1449
☐ Copies of IDS Citations
☐ Certified Copy of Priority Document(s)

☐ Response to Missing Parts/Incomplete Application

---

☐ Copy of Notice to File Missing Parts of Application (PTO-1553)

☐ Formal Drawing(s)

☐ Petition Routing Slip (PTO/SB/69) and Accompanying Petition to Convert to a Provisional Application

☐ Power of Attorney (Revocation of Prior Powers)

☐ Terminal Disclaimer

☐ Executed Declaration and Power of Attorney for Utility or Design Patent Application

☐ Small Entity Statement

☐ Request for Refund

☐ After Allowance Communication to Group

---

☐ Appeal Communication to Board of Patent Appeals and Interferences

☐ Appeal Communication to Group (Appeal Notice, Brief, Reply Brief)

☐ Status Letter

☒ Return Receipt Postcard

☐ Certificate of First Class Mailing under 37 C.F.R. 1.8

☒ Additional Enclosure(s) (please identify below)
Preliminary Amendment (5 pages)
Continued Prosecution Application (CPA)
Request Transmittal (2 pages)

*TC 2700 MAIL ROOM*
*JUL 21 1999*
*RECEIVED*

---

| CORRESPONDENCE ADDRESS | SIGNATURE BLOCK |
|---|---|
| Direct all correspondence to: Patent Administrator<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA 02110<br>Tel. No.: (617) 248-7000<br>Fax No.: (617) 248-7100<br><br>TOST/4750/2.825496 | Respectfully submitted,<br><br>*(signature)*<br>Robert J. Tosti<br>Date: July 16, 1999<br>Reg. No. 35,393<br>Tel. No.: (617) 248-7374<br>Fax No.: (617) 248-7100<br>Attorney for Applicant(s)<br>Testa, Hurwitz & Thibeault, LLP<br>High Street Tower<br>125 High Street<br>Boston, MA 02110 |

ADV0001057