# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ADVANCEME, INC.,** | § | |
| **Plaintiff,** | § | **CIVIL CASE NO. 6:05-cv-424 (LED)** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| **RAPIDPAY LLC, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL LLC, and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| **Defendants.** | § | |
| | § | |

## ADVANCEME, INC.'S OPPOSITION TO MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................3

    A.    Defendants Submit Preliminary Invalidity Contentions That Purposefully
           Omit the Litle Prior Art ......................................................................................3

    B.    Weeks After the Preliminary Invalidity Contentions Are Due, the
           Defendants Purport to Serve "Amended" Contentions Without Seeking
           Leave of Court ......................................................................................................5

    C.    After Extensive Discovery Is Underway, the Defendants Suddenly Purport
           to Serve Yet Another Set of "Amended" Contentions .........................................6

    D.    AdvanceMe Informs the Defendants That Their Amendments Are
           Unauthorized ........................................................................................................7

    E.    AdvanceMe's Efforts to Finally Cease the Defendants' "Shifting Sands"
           Approach to Their Invalidity Contentions Is Unsuccessful....................................8

III.  ARGUMENT.......................................................................................................9

    A.    Standards Governing This Motion .......................................................................9

    B.    Defendants' Lack of Diligence and Repeated Violation of the Court's
           Patent Rules Compel Denial of the Motion........................................................10

           1.    The Defendants and Their Counsel Knew of the Alleged Litle Prior
                 Art In June Yet Consciously Chose to Omit That Art In Their
                 Preliminary Invalidity Contentions .........................................................10

           2.    The Defendants' Motion Does Not Even Attempt to Explain Their
                 Lack of Diligence With Respect to Other Prior Art ................................13

    C.    The Defendants' Failure to Attach Their Proposed Amendments Requires
           Denial of the Motion...........................................................................................14

    D.    The Defendants' Motion Fails to Satisfy the Factors Delineated By This
           Court ...................................................................................................................15

    E.    In the Event This Motion Is Granted, This Should Be the Last Amendment
           That the Defendants Are Permitted to Serve In This Case...................................17

IV.   CONCLUSION ...................................................................................................18

## TABLE OF AUTHORITIES

Page

### CASES

Alt v. Medtronic, Inc., 2006 WL 278868 (E.D. Tex. 2006)............................................................12

S & W Enters., L.L.C. v. Southtrust Bank of Alabama, NA, 315 F.3d 533, 535
    (5th Cir. 2003) ..............................................................................................................9, 10

STMicroelectronics, Inc. v. Motorola, Inc. 307 F.Supp.2d 845, 849
    (E.D. Tex. 2004).............................................................................................9, 10, 12, 13, 15

Plaintiff AdvanceMe, Inc. ("AdvanceMe") hereby opposes the Motion for Leave to Amend Preliminary Invalidity Contentions and, in support thereof, would respectfully show the Court as follows:

## I.  **PRELIMINARY STATEMENT**

The Defendants' motion should be denied. The alleged prior art that the Defendants now seek to add *was known to the Defendants weeks before they served their Preliminary Invalidity Contentions*. When the Defendants served their contentions, however, this information was completely omitted. Further, after the Preliminary Invalidity Contentions were served, the Defendants waited for *months* to file a motion to amend, during which time the parties conducted extensive discovery, traveled across the country to take depositions, and otherwise prepared for mediation and claim construction. The Defendants' lack of diligence, both before and after their Preliminary Invalidity Contentions were served, compels the denial of this motion.

The Defendants' motion also suffers from another fatal flaw – the Defendants have not submitted to the Court the content of the proposed amendments that they seek leave to add. AdvanceMe is at a loss as to how this Court can adequately evaluate a motion for leave to amend, when the proposed amendments have not even been disclosed. It was the Defendants' burden to disclose their proposed amendments to the Court, and specifically explain why they have acted diligently with respect to each of them. The Defendants have not even attempted to carry this burden.

Unfortunately, the Defendants have acted as if their invalidity contentions are something that can be changed at their whim, and which can be regularly "updated" whenever they take a deposition or conduct further analysis of a prior art reference. This is *not* the approach permitted by this Court's Patent Rules. Under the Patent Rules, a "shifting sands" approach to invalidity

contentions is impermissible; rather, the Defendants were required to provide complete contentions early in the case so that the parties could conduct discovery thereon. Yet, not only have the Defendants brought the instant motion to amend based on information they knew months ago, they have also threatened to bring *another* motion to amend their invalidity contentions after the instant one is decided!

AdvanceMe needs finality in this process. Under the Patent Rules, AdvanceMe was entitled to know in the beginning of July the scope of the Defendant's invalidity contentions. Yet, even though the parties are only a few months before trial, the Defendants are still attempting to revamp large portions of their contentions. At some point, enough must be enough. Accordingly, to the extent that the Defendants are permitted any amendment of their Preliminary Invalidity Contentions pursuant to this motion, this should be the *last* amendment permitted to the Defendants in this case.

## II.     FACTUAL BACKGROUND

### A.     Defendants Submit Preliminary Invalidity Contentions That Purposefully Omit the Litle Prior Art.

On February 27, 2006, AdvanceMe filed its Amended Complaint naming Defendants Merchant Money Tree, Inc., Reach Financial, LLC, and First Funds, LLC (collectively referred to herein as the "Defendants"). Docket Entry ("D.E.") 23. On the same date, AdvanceMe also filed a new complaint for patent infringement against another defendant, AmeriMerchant. Though the instant action and the AmeriMerchant action have not been consolidated, the Defendants and AmeriMerchant have used the same counsel, Vinson & Elkins, and have signed a joint defense agreement. *Compare* Docket for Civil Case Number 6:05-CV-00424 (LED-JDL) and Docket for Civil Case Number 6:06-CV-00082 (LED-JDL).

After the Amended Complaint against the Defendants was filed, the Defendants immediately conducted efforts to locate relevant prior art. Indeed, the documentation submitted by the Defendants indicates that the Defendants' search began at least as early as March 3, 2006, six days after the Amended Complaint was filed. Gray Declaration, Exh. B (facsimile dated March 3, 2006 concerning alleged prior art, which was re-faxed in June). Under the Court's Docket Control Order, the Defendants had several months – until July 7, 2006 – to disclose their Preliminary Invalidity Contentions. D.E. 21.

At least as early as April of 2006, the Defendants began communications with an individual named Tim Litle, concerning an alleged prior art process by a company called Litle & Co. that involved postage financing. On April 26, 2006, contact information was exchanged between Mr. Litle and Mr. Goldin, the CEO of AmeriMerchant. Declaration of Michael Edelman ("Edelman Decl."), Exh. A. On April 27, 2006, Mr. Goldin forwarded an article from Forbes magazine he had located concerning a customer of Litle & Co. called Exposures, which allegedly references the postage financing program. Id., Exh. B.

On June 19, 2006, almost a month before the deadline for Preliminary Invalidity Contentions, Mr. Goldin was forwarded further documentation relating to the Litle postage financing system, including a Promissory Note for Postage Advances, a Security Agreement, a Demand Promissory Note for Postage Advances, and a Subordination Agreement. Edelman Decl., Exh. C. This documentation was apparently forwarded by Paymentech, the company that had acquired Litle & Co. in 1995.

On June 20, 2006, Mr. Goldin contacted Mr. Litle and attached a "copy of the schedule/security agreement of the postage financing agreement w/ Exposures." Edelman Decl., Exh. D. The email further stated that "[t]he patent attorneys think it's enough to "start" and we

-3-

may ask for testimony from you, etc. that further details how the program worked if needed."
Id. As this email indicates, three weeks *before* the July 7, 2006 deadline for the Defendants to
submit their Preliminary Invalidity Contentions, the Defendants had already received
information about the Litle program, and their "patent attorneys" had already analyzed the
documents and considered asking for testimony from Mr. Litle about them.

On June 27, 2006, the Defendants continued their discussions with Mr. Litle concerning
the alleged prior art. On that date, Mr. Litle informed Mr. Goldin of yet more details concerning
this alleged prior art. Edelman Decl., Exh. E. Mr. Goldin responded that Mr. Litle's testimony
will help "put the pieces of the puzzle together," and further talked about the need to do
"automatic disclosures" for the Court. Id. The email further stated that "[t]he patent attorney's
know about your willingness to testify and I will keep you posted well ahead in advance of the
progress of what's going on." Id.

As the above indicates, long *before* the time that the Defendants were required to serve
their Preliminary Invalidity Contentions on July 7, 2006, the Defendants had received extensive
information about the alleged Litle prior art. The Defendants had received documents about this
alleged prior art, reviewed those documents, communicated with Mr. Litle about the documents,
and specifically discussed with Mr. Litle the fact that this alleged prior art might be disclosed.

On July 7, 2006, the Defendants served their Preliminary Invalidity Contentions.
Edelman Decl., Exh. F. Even though the Defendants had spent *weeks* communicating with Mr.
Litle, the Defendants' contentions did not make *any* mention of the Litle prior art. Rather, the
Defendants' contentions disclosed four *other* pieces of prior art, and alleged that those pieces of
prior art "anticipated" the inventions in the '281 Patent. Clearly, the Defendants' counsel had

reviewed the alleged Litle prior art, and made the correct determination that this prior art was so different from the patented inventions that it was not worth citing.

**B.    Weeks After the Preliminary Invalidity Contentions Are Due, the Defendants Purport to Serve "Amended" Contentions Without Seeking Leave of Court.**

After the Defendants' July 7, 2006 contentions were served, AmeriMerchant served its Preliminary Invalidity Contentions. Edelman Decl., Exh. G. AmeriMerchant's contentions included some bare-bones allegations concerning the alleged Litle prior art, as well as another piece of alleged prior art (relating to a company called EDS) that the Defendants had also omitted.

Evidently, the Defendants reviewed the AmeriMerchant contentions and decided they wanted to "redo" their contentions so that they would match AmeriMerchant's. On July 21, 2006, the Defendants purported to serve a document entitled "Amended Invalidity Contentions." Edelman Decl., Exh. H. These amended contentions contained a series of drastic changes from the Preliminary Invalidity Contentions, including the inclusion of two brand-new charts relating to the EDS and Litle prior art. Id., Exhs. I (redlined version showing the changes from the Preliminary Invalidity Contentions to the "amended" contentions), J (Exhibit 5 to Amended Preliminary Invalidity Contentions), and K (Exhibit 6 to Amended Preliminary Invalidity Contentions). Aware, however, that they had no good excuse for their tardiness in including this prior art, the Defendants did *not* attempt (as specifically required by the Patent Rules) to seek leave of court to amend their contentions. Rather, in blatant violation of the Patent Rules, the Defendants served the "Amended" contentions without seeking leave of court.

**C.    After Extensive Discovery Is Underway, the Defendants Suddenly Purport to Serve Yet Another Set of "Amended" Contentions.**

In July and August of 2006, the parties conducted extensive discovery to prepare for trial in this case. For instance, the Defendants noticed the deposition of named inventor Barbara

Johnson in New York, and therefore AdvanceMe was forced to incur substantial costs and expenses to defend that deposition. The parties also propounded extensive document requests, engaged in a huge amount of meet and confer, propounded interrogatories, and engaged in meet and confer over claim construction. Throughout this entire process, the Defendants never once brought a motion for leave to amend their Preliminary Invalidity Contentions.

On August 30, 2006, the Defendants purported to serve yet *another* set of "amended" contentions. This set was called the Defendants' "Second Amended" contentions. Edelman Decl., Exh. L. Yet again, however, the Defendants did *not* bring a motion to amend their invalidity contentions as required by Court order, and therefore these purported amendments were without any force or effect. Further, the attempted "amendments" in this set of contentions were even more extensive than the attempted amendments made in the Defendants' previous unauthorized contentions. In essence, these amendments attempted to completely rewrite the disclosures concerning the alleged Litle prior art. Id., Exh. M.

Clearly, the further attempt by the Defendants to "amend" their contentions without leave of court threatened to throw the discovery process into chaos. Indeed, between the time that the "Amended" contentions were served and the "Second Amended" Contentions were served, the parties had engaged in even more discovery and trial preparation, and AdvanceMe had heavily relied upon the Defendants' Preliminary Invalidity Contentions to prepare its case. Accordingly, AdvanceMe was left with no choice but to inform the Defendants that their "amendments" were unauthorized and impermissible.

### D.  AdvanceMe Informs the Defendants That Their Amendments Are Unauthorized.

On September 1, 2006, AdvanceMe sent a letter to the Defendants informing them that the further amendments in the instant case and the AmeriMerchant case were impermissible and

unauthorized. Edelman Decl., Exh. N. AdvanceMe assumed that would be the end of the matter.

However, a few days later, the parties attended the deposition of Mr. Litle in Lowell, Massachusetts. During a break in this deposition, the Defendants' counsel suddenly raised, for the very first time, the prospect that they would file a motion for leave to amend their Preliminary Invalidity Contentions to add the new information in their "Second Amended" contentions. Edelman Decl., ¶17. AdvanceMe responded that it had very good arguments as to why none of those amendments would be permitted (because they were based on information that the Defendants had known for months and yet failed to seek Court approval). Id. AdvanceMe further indicated that, if it were to consider agreeing to any of these amendments, it could not do so unless it could receive a commitment by the Defendants that their attempts to amend their contentions would be at an end, so that their "shifting sands" approach to invalidity contentions could not continue. Id. The Defendants' response to this point was to reveal that they anticipated bringing a *second* motion to amend their invalidity contentions at some undetermined future date, based on information they may learn in the Litle deposition. Edelman Decl., ¶17. In other words, even if AdvanceMe decided to overlook the Defendants' repeated violation of the Court rules and agree that the "Second Amended" contentions were permissible, the Defendants would still be filing *another* motion for leave to amend containing even *more* proposed amendments.

During the deposition of Mr. Litle, the Defendants' counsel introduced as an exhibit a chart relating to their "new" contentions concerning the Litle prior art – even though those contentions had never been approved by the Court and had only recently been served by the Defendants. Edelman Decl., ¶18. The Defendants then proceeded to ask a series of questions of

Mr. Litle concerning these contentions. Id. This placed AdvanceMe in an impossible situation.

Since AdvanceMe had just received the contentions and they were not even part of the case,

AdvanceMe had not received the opportunity to conduct investigation on the unauthorized

"amendments," and therefore could not conduct its own questioning of Mr. Litle on these new

contentions.

### E.    AdvanceMe's Efforts to Finally Cease the Defendants' "Shifting Sands" Approach to Their Invalidity Contentions Is Unsuccessful.

After the Litle deposition, the parties met and conferred further on the prospect of a motion

to amend the Defendants' Preliminary Invalidity Contentions. During the meet and confer,

AdvanceMe explored the possibility of stipulating to one or more of the Defendants'

unauthorized amendments, if it would mean that the Defendants' attempt to "amend" their

contentions would finally come to an end. Id. The Defendants refused, however, to agree to this

condition. Id. Indeed, the Defendants again repeated that, even if the upcoming motion to

amend was granted, they intended to bring yet *another* motion to amend in the future. Id. In

response, AdvanceMe's counsel suggested that, at minimum, the Defendants should place all

their sought-after amendments in a single document, rather than burdening the parties with

multiple motions. Id. The Defendants refused to agree to this suggestion, and instead stated that

they were not yet "ready" to make a decision as to whether to file another motion for leave. Id.

On September 13, 2006, the Defendants filed the instant motion. D.E. 101. In the motion,

the Defendants failed to submit *any* of their proposed amendments to the Court, nor did they

submit a redlined version showing the changes they proposed to make from the Preliminary

Invalidity Contentions. Id. Nor did the Defendants mention that they had threatened to file

another motion for leave to amend, even if the Court was to grant this one. Id. Shortly after the

instant motion was filed, the Defendants sent a letter to AdvanceMe saying that it had now

decided to add yet *more* amendments, and asked AdvanceMe to stipulate to a brand-new set of amended contentions. Edelman Decl., Exh. O.

## III.    ARGUMENT.

### A.    Standards Governing This Motion.

A party seeking to amend its patent contentions must show "good cause," i.e., the same standard that applies to amend a court's scheduling order. FRCP 16(b); STMicroelectronics, Inc. v. Motorola, Inc., 307 F.Supp.2d 845, 849 (E.D. Tex. 2004) This good cause standard *"requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."* Id. at 850, quoting S & W Enters., L.L.C. v. Southtrust Bank of Alabama, NA, 315 F.3d 533, 535 (5th Cir. 2003) (emphasis added). Further, a party seeking to modify or update their contentions must act *immediately* after it discovers that its disclosure is incomplete or inaccurate. STMicroelectronics, 307 F.Supp.2d at 850.

There are four elements trial courts have been directed to consider when determining whether to allow a modification: (1) the explanation for the failure to meet the deadline, (2) the importance of the thing that would be excluded, (3) potential prejudice in allowing that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice. STMicroelectronics, 307 F.Supp.2d at 850. Under element one, a party's failure to meet a deadline due to mere inadvertence "is tantamount to no explanation at all." S & W Enters., 315 F.3d at 536.

///

///

///

///

///

**B.    Defendants' Lack of Diligence and Repeated Violation of the Court's Patent Rules Compel Denial of the Motion.**

      **1.    The Defendants and Their Counsel Knew of the Alleged Litle Prior Art In June Yet Consciously Chose to Omit That Art In Their Preliminary Invalidity Contentions.**

In order for a party to amend its patent contentions under the Patent Rules, it must first carry its burden of demonstrating that it acted with *diligence*. To meet their burden, the Defendants were required to show that "the deadlines cannot reasonably met despite the diligence of the party needing the extension." S & W Enters., L.L.C., 315 F.3d at 535. If this demonstration is not made, the inquiry as at an end. STMicroelectronics, 307 F.Supp.2d at 851 (denying motion to amend due to failure to carry burden of showing diligence, before even reaching issue of prejudice).

Here, the evidence conclusively reflects that the Defendants did *not* act diligently. AdvanceMe has presented clear and convincing evidence, reflected in the Defendants' own emails, that the Defendants and their counsel were fully aware of the Litle prior art weeks *before* their Preliminary Invalidity Contentions were ever served, yet chose *not* to include it. For instance, the evidence reveals that:

- The Defendants knew *weeks* before their Preliminary Invalidity Contentions were due about the existence of the Litle postage finance program. Edelman Decl., Exh. B.

- The Defendants knew *weeks* before their Preliminary Invalidity Contentions were due about the Forbes article mentioning the postage financing program, as well as the names of the individuals involved in the program on behalf of customer Exposures. Edelman Decl., Exhs. B and C.

- The Defendants knew weeks before their Preliminary Invalidity Contentions were due of the documentation relating to the program, including a Promissory Note for Postage Advances, a Security Agreement, a Demand Promissory Note for Postage Advances, and a Subordination Agreement. Edelman Decl., Exh. C.

- The Defendants' counsel knew of the alleged Litle prior art weeks before the Preliminary Invalidity Contentions were due, and already analyzed this art. Edelman Decl., Exhs. D and E.

-10-

This evidence clearly establishes that the Defendants already knew about and had analyzed the Litle prior art weeks before the Preliminary Invalidity Contentions were due. Defendants have no excuse for failing to include this alleged prior art in their original Preliminary Invalidity Contentions.

The Defendants' motion makes a clever attempt to avoid this gaping problem. Rather than focusing the Court on the documentation they had received weeks *before* the Preliminary Invalidity Contentions were served, the Defendants instead only focus on a few additional documents they received immediately *after* the service of the contentions. Gray Decl., Exhs. C and D. The Defendants fail to disclose to the Court, however, that these "additional" documents they received were essentially identical to the documents they already had.

For instance, weeks before the Preliminary Invalidity Contentions were served, the Defendants had received a Promissory Note for Postage Advances, two Security Agreements, a Demand Promissory Note for Promissory Note for Postage Advances, and a Subordination Agreement, all relating to Litle & Co. and its customer Exposures. Edelman Decl., Exh. C. The "additional" documentation that the Defendants received a week after July 7, 2006 consisted of largely the *same* documents, including a Security Agreement and a Demand Promissory Note for Postage Advances. The only significant difference was that the name of the customer had changed from Exposures to Museum Publications of America. Gray Decl., Exh. C. The Defendants do not explain how the change of a customer name could possibly matter. The truth is that the Defendants knew all they needed to know before the July 7, 2006 deadline on whether to include the Litle prior art; they deliberately chose not to include that art and now must be bound by that decision.

In their motion, the Defendants argue that "[t]he materials supporting the Litle & Co. Prior Art were obtained after several months of diligent investigation and effort by Defendants," and that "[r]elevant documents and information had to be unearthed from the archives of Litle & Co.'s successor company . . . " Motion, p. 5. What the Defendants fail to acknowledge, however, is that these materials had *already* been "unearthed" weeks *before* the Preliminary Invalidity Contentions were served, and had already been reviewed and digested by the Defendants' counsel. If in fact the Defendants truly believed this material was relevant to the patented inventions, it is impossible for the Defendants to seriously argue that they acted "diligently" by omitting it from their Preliminary Invalidity Contentions. STMicroelectronics, 307 F.Supp.2d at 852 (stating that good cause could be shown based upon new information during discovery which, "despite all possible diligence, *was not available when the Disclosures were originally due*") (emphasis added).

This is the polar opposite of the situation presented in Alt v. Medtronic, Inc., 2006 WL 278868 (E.D.Tex. 2006), a case relied upon by the Defendants in their motion. In that case, the court granted leave to amend invalidity contentions because the defendant had found prior art *after* their Preliminary Invalidity Contentions had been served. Id. at *3. Further, the court found that the plaintiff's own discovery responses had hindered the defendant's ability to locate this prior art in the first place. Id. Here, however, the Litle prior art was fully known to the Defendants' counsel *weeks before* their Preliminary Invalidity Contentions were due, and yet the Defendants still omitted this information from their contentions. AdvanceMe has not located any precedent, from this or any other court, that would permit an amendment under such circumstances.

-12-

Further, even if the Defendants lack of diligence *before* their Preliminary Invalidity Contentions were served could be excused, their lack of diligence *after* the service of those contentions were served could not. The Defendants allege that they obtained "complete" copies of the supporting documentation in "late July." Motion, p. 6. If this is true, then why did the Defendants wait for *an additional two months* to file the instant motion, during which time the parties were engaged in intense discovery and claim construction activities? The law is clear that a party seeking to modify or update their contentions in a patent case must act *immediately* after it discovers that its disclosure is incomplete or inaccurate. STMicroelectronics, 307 F.Supp.2d at 850.

Rather than squarely acknowledge that this motion is months too late, the most the Defendants acknowledge is that "[u]nfortunately, Defendants did not seek an order of the Court allowing these amendments . . ." Motion, p. 4. The Defendants' failure to follow this Court's Patent Rules is not simply "unfortunate," but threatens to cause significant prejudice to the prosecution of this case. Under this Court's precedents, the failure of the Defendants to act diligently is the death knell for the relief that they seek.

## 2.    The Defendants' Motion Does Not Even Attempt to Explain Their Lack of Diligence With Respect to Other Prior Art.

The Defendants' motion proceeds as if their only proposed amendment concerns the alleged Litle prior art. Since the Defendants do not attach the proposed amendments to their motion, it may be that the Defendants' requested relief is limited to this art. However, the Defendants' "Amended" contentions did not merely contain new contentions relating to the Litle prior art, but also contained amendments on *other* prior art (the EDS prior art) and new allegations concerning an inventorship defense under Section 102(f). Edelman Decl., Exhs. I, J, and K. The Defendants' motion does not even *attempt* to explain their lack of diligence with

-13-

respect to these new issues. Indeed, the Defendants do not state when they learned of this new information, or the cause for any delay between when they learned of it and the bringing of the instant motion. Accordingly, to the extent the Defendants' motion seeks to add any new information in addition to the Litle prior art, the motion clearly fails.

### C.    The Defendants' Failure to Attach Their Proposed Amendments Requires Denial of the Motion.

The Defendants' motion must also fail for another threshold reason – the Defendants have failed to submit their proposed amendments to the Court. Rather, the Defendants just vaguely state that they seek amendments relating to new prior art, but never identify precisely what amendments they are talking about. This omission is a very serious matter. It was the Defendants' burden to attach their proposed amendments to their motion, explain to the Court where the amended contentions differ from the Preliminary Invalidity Contentions, and specifically address why the "new" information could not with reasonable diligence have been included in the Preliminary Invalidity Contentions. The Defendants' failure to do any of this dooms their motion.

Presumably, the reason that the Defendants failed to attach their proposed amendments to their motion is because, if they had done so, it would have instantly revealed the startling nature of those amendments. For instance, the Defendants' "Second Amended" contentions contain dozens of changes from the "Preliminary" Invalidity Contentions and the first "Amended" Contentions, including a complete rewrite of the contentions discussing the Litle prior art. Edelman Decl., Exh. M. The Defendants' motion does not even attempt to address these new contentions, or explain why those contentions could not have been asserted earlier.

-14-

**D.    The Defendants' Motion Fails to Satisfy the Factors Delineated By This Court.**

Each of the four factors recited in STMicroelectronics for determining whether to allow a modification to Defendants' invalidity contentions weighs heavily in favor of denying Defendants' motion.

The first factor is the "explanation for the failure to meet the deadline." STMicroelectronics, 307 F.Supp. at 851. As explained at length above, the Defendants have provided no explanation whatsoever for their failure to meet the deadline with respect to the EDS prior art and the new inventorship allegations. Therefore, any amendments pertaining to these two matters could not be granted. Further, the Defendants' attempt to address their lack of diligence with respect to the Litle prior art falls apart on close inspection. Accordingly, this factor weighs overwhelmingly in favor of denial of this motion.

The second factor is the importance of the material that would be excluded. Once again, the Defendants fail to offer *any* arguments relating on this factor other than in relation to the alleged Litle prior art. With respect to the Litle prior art, the Defendants contend that it would somehow anticipate the patent claims. Yet, the Defendants fail to attach or cite *any evidence* to demonstrate this is so, but rather rely only on lawyer's argument. Further, the Defendants overlook that they are making precisely the same anticipation argument with respect to four other prior art references, each of which were timely disclosed in the Defendants' Preliminary Invalidity Arguments. Accordingly, denial of this motion would not deprive the Defendants of the ability to file a summary judgment motion on anticipation grounds.

The third factor is the prejudice to AdvanceMe if the Court permits the amendments. Somehow, the Defendants make the contention that permitting a rewrite of the Defendants' invalidity contentions at this late date would not prejudice AdvanceMe. This is clearly incorrect.

-15-

For the last several months, AdvanceMe has prepared discovery requests, responded to discovery, conducted depositions, and prepared for claims construction on the assumption that the Defendants' Preliminary Invalidity Contentions would govern the Defendants' invalidity arguments in this case. It would cause immense prejudice to AdvanceMe to be required to do much of this work over again, simply because the Defendants did not act with diligence.

The deposition of Mr. Litle is a perfect example of the extreme prejudice that the Defendants' belated amendments would inflict on AdvanceMe. At the time that AdvanceMe attended that deposition, AdvanceMe had not received an opportunity to even review the Defendants' "Second Amended" contentions, much less be prepared to conduct deposition questioning on them. Accordingly, if the Defendants' motion was granted, AdvanceMe will have to re-depose Mr. Litle.

This prejudice is just the tip of the iceberg. The "Second Amended" contentions served by the Defendants contain dozens of new contentions that were not previously contained in the Preliminary Invalidity Contentions. To address these new issues, AdvanceMe would have revamp its discovery efforts, and would have to propound new interrogatories, new requests for admission, and new requests for production. In essence, as a result of the Defendants' delay, AdvanceMe would be punished by having to start the cycle of discovery all over again.

The fourth factor is the availability of a continuance to cure the prejudice to AdvanceMe. The Defendants blithely contend that any prejudice could be "resolved by a continuance of the pre-trial deadlines." Motion, p. 8. This statement seriously underestimates the damage that would be caused by the Defendants' proposed amendments. Currently, the claim construction hearing is set for October 19, 2006, the deposition of other third parties have begun to be scheduled for October, the 30(b)(6) depositions of the Defendants are scheduled to take place in

October, and the parties are finishing their efforts to complete written discovery. If the Defendants are permitted to completely revamp their invalidity contentions, all of the planning for this discovery would have to be modified. It would be one thing if such a massive shift occurred as a result of brand-new prior art that the Defendants recently located, but quite another for it to occur as a result of prior art that the Defendants were aware of *before* they served their Preliminary Invalidity Contentions.

E.    **In the Event This Motion Is Granted, This Should Be the Last Amendment That the Defendants Are Permitted to Serve In This Case.**

As this opposition reveals, the manner in which the Defendants have proceeded with their contentions has been completely inappropriate. The Defendants' "shifting sands" approach to their invalidity contentions threatens to make a mockery of this Court's Patent Rules. Indeed, the Defendants have threatened to bring *another* such motion immediately after the resolution of this one. This is simply unacceptable, as it is critical for AdvanceMe to receive *finality* in this process so that it can finish its preparation for trial. Accordingly, if the Court was to decide to grant this motion, it should only be under condition that this be the *last* set of amended contentions that the Defendants are permitted to serve in this case.

Further, to the extent any portion of this motion is granted, it will clearly require AdvanceMe to conduct follow-up discovery based upon the new contentions that were not contained in the Preliminary Invalidity Contentions. Accordingly, AdvanceMe should be permitted to re-take the deposition of Tim Litle on the new material, without any questioning permitted by the Defendants on this material (since the Defendants already engaged in such questioning anyway). Further, the Defendants should be required to reimburse AdvanceMe the costs of having to travel to Lowell, Massachusetts to take this deposition over again, as well as

any other costs that AdvanceMe would be forced to incur as a result of the Defendants' new amendments.

## IV.    **CONCLUSION**

For all the reasons stated above, the Defendants' motion should be denied.

Date: September 25, 2006              Respectfully submitted,

By: _____ /s/ Michael N. Edelman _____
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Michael N. Edelman
(CA Bar No. 180948) (Admitted Pro Hac Vice)
Ronald S. Lemieux
(CA Bar No. 120822) (Admitted Pro Hac Vice)
Vidya R. Bhakar
(CA Bar No. 220210) (Admitted Pro Hac Vice)
Robert C. Matz
(CA Bar No. 217822) (Admitted Pro Hac Vice)
Five Palo Alto Square, Sixth Floor
Palo Alto, CA  94306-2155
Telephone: (650) 320-1800    Telecopier: (650) 320-1900
Email:  medelman@paulhastings.com

IRELAND, CARROLL & KELLEY, P.C.
Otis W. Carroll, Attorney-in-Charge
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
6101 South Broadway, Suite 500
Tyler, TX  75703
Telephone:  903-561-1600
Facsimile:  903-581-1071
Email:  fedserv@icklaw.com
ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADVANCEME, INC., | § | CIVIL CASE NO. 6:05-cv-424 (LED) |
| **Plaintiff,** | § | |
| v. | § | |
| | § | |
| | § | |
| RAPIDPAY LLC, FIRST FUNDS LLC, | § | |
| MERCHANT MONEY TREE, INC., | § | |
| REACH FINANCIAL, LLC, and | § | |
| FAST TRANSACT, INC. d/b/a | § | |
| SIMPLE CASH, | § | |
| **Defendants.** | § | |
| | § | |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system per Local Rule CV-5(a)(3) on this the 25th day of September, 2006. Any other counsel of record will be served by first class mail on this same date.

_____/s/ Michael N. Edelman_____
Michael N. Edelman

-19-