**EXHIBIT G**

**TO AFFIDAVIT OF MICHAEL N. EDELMAN IN
SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADVANCEME, INC., <br><br> Plaintiff <br><br> v. <br><br> AMERIMERCHANT LLC, <br><br> Defendant. | CASE NO. 6:06-CV-082 LED |

**DEFENDANT'S P.R. 3-3 PRELIMINARY INVALIDITY CONTENTIONS**

Pursuant to Patent Rules ("P.R.") 3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas, Defendant AmeriMerchant LLC ("AmeriMerchant") submits the following preliminary invalidity contentions and accompanying document production.

These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281 Patent). Defendant submits, however, that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to the means-plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-19, relating to means-plus-function claim elements, provide only conclusory accusations of Accused Instrumentalities and do not identify structure with specificity. *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1. Further, Defendant submits that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to Claims 8 and 17, in that AdvanceMe's Contentions do not identify any ability of the Accused Instrumentalities

to "accumulate payments until a predetermined amount is reached."  *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.

Defendant has based these Preliminary Invalidity Contentions in part on AdvanceMe's proffered claim interpretations, as best understood by Defendant.  Defendant does not accept AdvanceMe's proffered claim interpretation, and Defendant's application of AdvanceMe's claim interpretations for purposes of these Preliminary Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions or a waiver of Defendant's right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendant with reasonably specific Preliminary Infringement Contentions, the Court has not yet ruled on claim construction, and discovery and fact investigations are ongoing, Defendant reserves the right to supplement these Preliminary Invalidity Contentions.

1.    **PRIOR ART – 35 U.S.C. § 102(B)**

Attached as Exhibits 1-6 are claim charts respectively indicating how prior art items 1-6 anticipate every limitation of at least certain of Claims 1-19 of the '281 Patent, based on Defendant's present understanding of how AdvanceMe is construing those claims.  To the extent any limitation is deemed not to be exactly met by an item of prior art, Defendant submits that the difference would have been obvious to one skilled in the art at the time of the alleged invention in view of the state of the art and knowledge of those skilled in the art, and that the item of prior art therefore renders the claims invalid for obviousness.  As evidenced at the deposition of the inventor, Barbara Johnson, and based on her testimony, prior art items 1-6 individually and collectively anticipate or render obvious all of Claims 1-19 of the '281 Patent.

| | Publication Title | Item offered for sale or publicly used or known |
|---|---|---|
| 1. | Clever Ideas – LeCard dining program documents<br><br>(1992-1996) | Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system and method of automated payment wherein LeCard would advance a sum of money or an amount of advertising to restaurants in exchange for the restaurant providing food and beverage credit for LeCard cardholders. The restaurant's contractual obligation to repay the credit amount would be reduced as customers used LeCard to pay for food and beverages. Diners Club, the merchant processor, would acquire, authorize and settle the LeCard transaction and would electronically forward some portion of the payment to LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly used the method and system as claimed in the '281 patent, and LeCard's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 1.[1] |
| 2. | SEC Form 10-K for Transmedia Network, Inc.<br><br>(December 29, 1995) | Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia card that utilized a system and method of automated payment wherein Transmedia advanced a sum of money to a restaurant or other merchant, via a purchase at a discount of "Rights-to-Receive" (*i.e.*, the right to receive goods and services). After acquiring, authorizing and settling the transaction, Transmedia would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the restaurant's (or other merchant's) contractual obligation to Transmedia. Transmedia thus publicly used the method and system as claimed in the '281 patent, and Transmedia's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 2.[2] |
| 3. | First USA Merchant Services, Inc. Merchant Credit Card | First USA Merchant Services, Inc. ("First USA") offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as |

---

[1] Clever Ideas-LeCard anticipates Claims 1, 5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims 2-4 and 11-13. *See* Exhibit 1.

[2] Transmedia anticipates Claims 1, 5-10 and 14-19. Transmedia renders obvious Claims 2-4 and 11-13. *See* Exhibit 2.

| | | |
|---|---|---|
| | Agreement<br><br>(July 1, 1993) | claimed in the '281 patent. First USA, the merchant processor, would acquire, authorize and settle the transaction. First USA would withhold or otherwise electronically forward some portion of the payment to a computerized payment receivers as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 3.[3] |
| 4. | Bank of America Merchant Services Card Processing Service Agreement Terms and Conditions<br><br>(November 1994 (Reprinted August 1995)) | Bank of America NT&SA offered to provide credit card processing services to merchants which incorporated a system and method of automated payment as claimed in the '281 patent. Bank of America, the merchant processor, would acquire, authorize and settle the transaction. Bank of America would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[4] |
| 5. | Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corportation and First USA Merchant Services, Inc.)<br><br>(June 1995) | Electronic Data Systems Corporation ("EDS"), as agent for First USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant. EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant. EDS, as agent for First USA, thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where |

---

[3] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. *See* Exhibit 3.
[4] Bank of America anticipates Claims 1-2, 6-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. *See* Exhibit 4.

|   |   | specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[5] |
|---|---|---|
| 6. | Litle & Co. | Litle & Co. ("Litle") utilized a system and method of automated payment wherein Litle would advance a sum of money or an amount of postage costs to catalog or other companies. Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from Litle's advance of cash or postage costs. Litle thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[6] |

Defendant's investigation of these products and services is ongoing, and Defendant reserves the right to supplement these contentions to include additional details regarding these products and services as discovery in this case continues.

---

[5] EDS anticipates Claims 1-2, 6-11 and 15-19. EDS renders obvious Claims 3-5 and 12-14. *See* Exhibit 5.

[6] Litle & Co. anticipates Claims 1-2, 6-11 and 15-19. Litle & Co. renders obvious Claims 3-5 and 12-14. *See* Exhibit 6.

2.    INVENTORSHIP – 35 U.S.C. § 102(f)

The '281 patent is invalid because the alleged inventor did not herself invent the subject

matter sought to be patented.  As evidenced during the deposition of the alleged inventor,

Barbara Johnson, she lacks knowledge of card processing and familiarity with, or knowledge of,

the meaning of many, if not all, features of the '281 patent.

| Name of person from whom the invention or any part was derived | Circumstances |
| --- | --- |
| Gary Johnson | Gary Johnson is the husband of the inventor.  On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention.  Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson.  On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson. |
| Les Falk and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc. | On information and belief, Les Falk is the former CEO of the assignee of the '281 patent.  On information and belief, the invention or some part of the invention was derived from Les Falk and/or other employees of the assignee (which underwent multiple name changes). |
| Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.  On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP. |
| David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.  On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP. |

Defendant's investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendant reserves the right to supplement these contentions to include additional details regarding these individuals and circumstances as discovery in this case continues.

3.    **P.R. 3-4 DOCUMENT PRODUCTION**

Simultaneously with service of Defendant's Preliminary Invalidity Contentions, Defendant is producing a copy of each item of prior art identified pursuant to P.R. 3-3(a) which does not appear in the file history of the patent-in-suit. Defendant's search for documents is ongoing, and Defendant reserves the right to supplement its document production as additional relevant, non-privileged documents in its possession, custody or control are identified.

Dated: July 20, 2006

Respectfully submitted,

By: _____

Willem G. Schuurman
Texas State Bar No. 17855200
Joseph D. Gray
Texas State Bar No. 24045970
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400 –
Fax: (512) 236-3476

- and -

Hilary L. Preston
VINSON & ELKINS L.L.P.
666 Fifth Avenue – 26th Floor
New York, New York 10103
Phone: (212) 237-0000
Fax: (212) 237-0100

- and -

Douglas McSwane
Texas State Bar No. 13861300
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

*ATTORNEYS FOR DEFENDANT*
*AMERIMERCHANT LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served upon all counsel of record on this the 20th day of July, 2006 as indicated:

*Via Electronic Mail and U.S. Mail*
Ronald S. Lemieux
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703

**EXHIBIT 6**
**Little & CO**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| 1. A method for automated payment, comprising: | Litle & Co. ("Litle") utilized a method for automated payments as repayment of obligations owed by merchants arising out of Litle's advance of cash or postage costs to merchants. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article"); *See* Promissory Note for Postage Advances between Exposures, Inc. and Litle & Co., dated June 22, 1990 ("Promissory Note"). | |
| at a merchant, | The merchant, either directly or via its agent. | |
| accepting a customer identifier as payment from the customer, | accepted credit cards as a customer identifier from customers for payment. *See* Forbes Article (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). | |
| and electronically forwarding information related to the payment to a computerized merchant processor; | The merchant, either directly or via its agent, forwarded information related to payment electronically to Litle, the computerized merchant processor. *See also* Forbes Article (referring to Litle as the "credit card processor"). | |
| at the computerized merchant processor, acquiring the information related to the payment from the merchant, authorizing and settling the payment, and forwarding at least a portion of the payment to a computerized payment receiver as payment of at least a portion | Litle acted as the computerized merchant processor, *see* Forbes Article (referring to Litle as the "credit card processor"), and language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. "Litle agreed to finance [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing that a portion of the payment from credit card companies was forwarded as payment on Exposures' obligation to Litle, as a computerized payment receiver, for financing postage costs, with the remainder, the discounted credit card receivables, being forwarded to | |

Exhibit 6 – Page 1

## Little & CO
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| of an obligation made by the merchant; | Exposures). | |
| | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that a portion of payments ("Net Proceeds") are forwarded to Little, as a computerized payment receiver, in satisfaction of the obligation that arose when Little advance postage costs ("Principal Amount of Advance") to merchant). | |
| and at the computerized payment receiver, receiving the portion of the payment forwarded by the computerized merchant payment processor and applying that portion to the outstanding obligation made by the merchant to reduce such obligation. | "Little agreed to finance his [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing that a portion of the payment from credit card companies was diverted by the merchant processor as payment on Exposures' obligation to Little for financing postage costs).<br><br>"In consideration of Little & Co. making advances for the account of [Exposures] to postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that portion of payments ("Net Proceeds") are received by Little as repayment of obligation that arose when Little advanced postage costs ("Principal Amount of Advance") to merchant). | |
| 2. The method of claim 1 wherein the accepting step comprises accepting a credit | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes | |

Exhibit 6 – Page 2

**Little & CO**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| 3. The method of claim 1 wherein the accepting step comprises accepting a debit card number as the customer identifier. | Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment).<br><br>It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards.<br><br>The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to. Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). | |
| 4. The method of claim 1 wherein the accepting step comprises accepting a smart card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including smart cards.<br><br>The merchant, Exposures, Inc., accepted credit cards from customers | |

Exhibit 6 – Page 3

Little & CO
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| 5. The method of claim 1 wherein the accepting step comprises accepting a charge card number as the customer identifier. | for payment. See M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures) "credit card processor" and "credit card receivables", showing that credit cards were received as payment).<br><br>It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply mechanisms and methods in use for one type of customer identifier to another type of customer identifier, e.g. for charge cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including charge cards.<br><br>The merchant, Exposures, Inc., accepted credit cards from customers for payment. See M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures) "credit card processor" and "credit card receivables", showing that credit cards were received as payment). | |
| 6. The method of claim 1 wherein the accepting step comprises accepting the customer identifier at a merchant location. | On information and belief, customer identifiers were accepted at a the location of a merchant or merchant's agent. | |
| 7. The method of claim 1 wherein the accepting step comprises accepting electronically the customer identifier. | On information and belief, customer identifiers were accepted electronically. | |
| | On information and belief, customer identifiers were received | |

Exhibit 6 – Page 4

**Little & Co**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| accepting the customer identifier. | | |
| 8. The method of claim 1 wherein the steps performed at the merchant processor further comprise accumulating the payments until a predetermined amount is reached and then forwarding at least a portion of the accumulated payments to the payment receiver. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that payments were forwarded on a periodic basis).[1] | |
| 9. The method of claim 1 wherein the steps performed at the merchant processor periodically comprise forwarding at least a portion of the payment to the payment receiver. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that payments were forwarded on a periodic basis). | |
| 10. A system for automated payment of an obligation made by a merchant, comprising: | Little utilizes a system for automated payments to Little as repayment of obligations owed by merchants either for postage or cash advances. *See* Promissory Note and Forbes Article. | |
| | The merchant, Exposures, Inc., | |
| means for accepting a customer | accepted credit cards from customers for payment and means for | |

---

[1] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions") but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a pre-determined amount, the Little method anticipates this claim.

## Little & CO
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| identifier as payment from the customer and | accepting a customer identifier as payment existed, including, on information and belief, a merchant terminal or point-of-sale device. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment). | |
| for electronically forwarding information related to the payment to a computerized merchant processor, | "Litle agreed to finance [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing implicitly that means exist in the Litle system for electronically forwarding a portion of the payment from credit card companies to Litle, including, on information and belief, a computer running appropriate software). | |
| wherein the merchant associated with the payment has an outstanding obligation to a third party; | "In consideration of Litle & Co. making advances for the account of [Exposures] to postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10% . . . ." *See* Promissory Note (showing obligation from the merchant to Litle). | |
| and at the computerized merchant processor, means for receiving information related to the payment from the merchant, means for authorizing and settling the payment, and means for forwarding a portion of the payment to the | "Litle agreed to finance his [Exposures'] postage by discounting his [Exposures'] credit card receivables." *See* Forbes Article (showing implicitly that means exist in the Litle system for Litle, as the merchant processor, to receive the payment information, including, on information and belief, a computer running appropriate software). The language of the patent makes clear that merchant processors acquire payment information and authorize and settle the payment. On information and belief, the means for performing this function is a computer running appropriate software. "In consideration of Litle & Co. making advances for the account of | |

Exhibit 6 – Page 6

**Little & CO**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| third party to reduce the obligation. | [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means exist for forwarding a portion of payments ("Net Proceeds") to Litle as repayment of obligation that arose when Litle advanced postage costs ("Principal Amount of Advance") to merchant, including, on information and belief, a computer running appropriate software). | |
| 11. The system of claim 10 wherein the accepting means comprises means for accepting a credit card number as the customer identifier. | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Peuschne, "People thought I was nuts", FORBES, June 8, 1992, v.149, n.12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). | |
| 12. The system of claim 10 wherein the accepting means comprises means for accepting a debit card number as the customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, *e.g.* for debit cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including debit cards. Debit card numbers may be accepted, for example, using the merchant's terminal or computer input. | |
| | The merchant, Exposures, Inc., accepted credit cards from customers | |

Exhibit 6 – Page 7

**Little & CO**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|--------|------------------------------|-----------------------------------------------|
| | for payment. See M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). | |
| 13. The system of claim 10 wherein the accepting means comprises means for accepting a smart card number as the another type of customer identifier. | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, e.g. for smart cards as well as credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated, to make the method or system work in the same way for any customer identifier, including smart cards. Smart card numbers may be accepted, for example, using the merchant's terminal or computer input.

The merchant, Exposures, Inc., accepted credit cards from customers for payment. See 54, Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer, or other point of sale device). | |
| 14. The system of claim 10 wherein the accepting means comprises means for accepting a charge card number as the | It would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of Plaintiff's asserted claims to apply systems and means in use for one type of customer identifier to another type of customer identifier, e.g. for charge cards as well as | |

Little & CO
INVALIDITY CLAIM CHART
UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| customer identifier. | credit cards. And the statements by the alleged inventor and by the examiner, and the language of the patent itself makes clear that a person of ordinary skill in the art would be motivated to make the method or system work in the same way for any customer identifier, including charge cards. Charge card numbers may be accepted, for example, using the merchant's terminal or computer input. | |
| | The merchant, Exposures, Inc., accepted credit cards from customers for payment. *See* M. Kripalani, T. Pouschine, "People thought I was nuts", FORBES, June 8, 1992, v.149, n12, p120(2) (hereafter "Forbes Article") (referring to Exposures' "credit card processor" and "credit card receivables", showing that credit cards were received as payment and that means for accepting a credit card exist, including, on information and belief, a terminal, computer or other point of sale device). | |
| 15. The system of claim 10 wherein the accepting means comprises means for accepting the customer identifier at a merchant location. | On information and belief, means for accepting customer identifiers exist at a location of a merchant or merchant's agent, including, on information and belief, a terminal, computer or other point of sale device. | |
| 16. The system of claim 10 wherein the accepting means comprises means for electronically accepting the customer identifier. | On information and belief, means for accepting customer identifiers electronically exist, including, on information and belief, a terminal, computer or other electronic point of sale device. | |
| 17. The system of claim 10 wherein the means at the | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay | |

Exhibit 6 – Page 9

# Little & CO
## INVALIDITY CLAIM CHART
## UNITED STATES PATENT NO. 6,941,281

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| merchant processor further comprise means for accumulating the payments until a predetermined amount is reached and means for forwarding at least a portion of the accumulated payments to the third party. | on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for periodically forwarding payments exist in the Little system, including, on information and belief, a computer running appropriate software).[2] | |
| 18. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for periodically forwarding at least a portion of the payment to the third party. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for periodically forwarding payments exist in the Little system, including, on information and belief, a computer running appropriate software). | |
| 19. The system of claim 10 wherein the forwarding means at the merchant processor comprises means for forwarding to the third party an amount that is a percentage of the obligation. | "In consideration of Little & Co. making advances for the account of [Exposures] to Postmaster, Atlanta, GA, [Exposures] agrees to pay on demand the Principal Amount of Advance plus accrued interest at 10%. . . . Notwithstanding that such amounts are otherwise payable on demand, [Exposures] agrees that . . . Daily Repayments shall be deducted from daily NET PROCEEDS." *See* Promissory Note (showing that means for forwarding an amount that is a percentage | |

---

[2] At this pre-claim construction stage of the action, Defendant takes no position as to the appropriateness of the claim construction applied in AdvanceMe's Preliminary Infringement Contentions for Defendants ("Infringement Contentions") but note that under the approach in the Infringement Contentions, which equates periodic forwarding with accumulation to a pre-determined amount, the Little system anticipates this claim.

Exhibit 6 – Page 10

Exhibit 6 – Page 11

**Little & CO**
**INVALIDITY CLAIM CHART**
**UNITED STATES PATENT NO. 6,941,281**

| CLAIMS | PRIOR PUBLICATION REFERENCES | ARGUMENTS & EVIDENCE CONTRADICTING ASSERTION |
|---|---|---|
| | of the obligation exist in the Little system, including, on information and belief, a computer running appropriate software). | |

## EXHIBIT H

### TO AFFIDAVIT OF MICHAEL N. EDELMAN IN SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADVANCEME, INC., <br><br> Plaintiff <br><br> v. <br><br> RAPIDPAY LLC, BUSINESS CAPITAL CORPORATION, FIRST FUNDS LLC, MERCHANT MONEY TREE, INC., REACH FINANCIAL LLC, and FAST TRANSACT, INC. dba SIMPLE CASH, <br><br> Defendants | CASE NO. 6:05-CV-424 LED |

## DEFENDANTS' AMENDED P.R. 3-3 PRELIMINARY INVALIDITY CONTENTIONS

Pursuant to the Court's Amended Docket Control Order and Patent Rules ("P.R.") 3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas, Defendants First Funds LLC, Merchant Money Tree, Inc., and Reach Financial LLC ("Defendants") submit the following amended preliminary invalidity contentions and accompanying document production.

These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281 Patent). Defendants submit, however, that AdvanceMe has not fully complied with its obligation to submit specific Preliminary Infringement Contentions relating to the means-plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-19, relating to means-plus-function claim elements, provide only conclusory accusations of Accused Instrumentalities and do not identify structure with specificity. *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1. Further, Defendants submit that AdvanceMe has not fully complied with

its obligation to submit specific Preliminary Infringement Contentions relating to Claims 8 and 17, in that AdvanceMe's Contentions do not identify any ability of the Accused Instrumentalities to "accumulate payments until a predetermined amount is reached." *See* AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.

Defendants have based these Preliminary Invalidity Contentions in part on AdvanceMe's proffered claim interpretations, as best understood by Defendants. Defendants do not accept AdvanceMe's proffered claim interpretation, and Defendants' application of AdvanceMe's claim interpretations for purposes of these Preliminary Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions or a waiver of Defendants' right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendants with reasonably specific Preliminary Infringement Contentions, the Court has not yet ruled on claim construction, and discovery and fact investigations are ongoing, Defendants reserve the right to supplement these Preliminary Invalidity Contentions.

1.    **PRIOR ART – 35 U.S.C. § 102(B)**

Attached as Exhibits 1-6 are claim charts respectively indicating how prior art items 1-6 anticipate every limitation of at least certain of Claims 1-19 of the '281 Patent, based on Defendants' present understanding of how AdvanceMe is construing those claims. To the extent any limitation is deemed not to be exactly met by an item of prior art, Defendants submit that the difference would have been obvious to one skilled in the art at the time of the alleged invention in view of the state of the art and knowledge of those skilled in the art, and that the item of prior art therefore renders the claims invalid for obviousness. As evidenced at the deposition of the

inventor, Barbara Johnson, and based on her testimony, prior art items 1-6 individually and collectively anticipate or render obvious all of Claims 1-19 of the '281 Patent.

| | Publication Title | Item offered for sale or publicly used or known |
|---|---|---|
| 1. | Clever Ideas – LeCard dining program documents (1992-1996) | Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system and method of automated payment wherein LeCard would advance a sum of money or an amount of advertising to restaurants in exchange for the restaurant providing food and beverage credit for LeCard cardholders. The restaurant's contractual obligation to repay the credit amount would be reduced as customers used LeCard to pay for food and beverages. Diners Club, the merchant processor, would acquire, authorize and settle the LeCard transaction and would electronically forward some portion of the payment to LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly used the method and system as claimed in the '281 patent, and LeCard's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 1.[1] |
| 2. | SEC Form 10-K for Transmedia Network, Inc. (December 29, 1995) | Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia card that utilized a system and method of automated payment wherein Transmedia advanced a sum of money to a restaurant or other merchant, via a purchase at a discount of "Rights-to-Receive" (i.e., the right to receive goods and services). After acquiring, authorizing and settling the transaction, Transmedia would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the restaurant's (or other merchant's) contractual obligation to Transmedia. Transmedia thus publicly used the method and system as claimed in the '281 patent, and Transmedia's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 2.[2] |

[1] Clever Ideas-LeCard anticipates Claims 1, 5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims 2-4 and 11-13. See Exhibit 1.
[2] Transmedia anticipates Claims 1, 5-10 and 14-19. Transmedia renders obvious Claims 2-4 and 11-13. See Exhibit 2.

| 3. | First USA Merchant Services, Inc. Merchant Credit Card Agreement

(July 1, 1993) | First USA Merchant Services, Inc. ("First USA") offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. First USA, the merchant processor, would acquire, authorize and settle the transaction. First USA would withhold or otherwise electronically forward some portion of the payment to a computerized payment receivers as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 3.[3] |
| --- | --- | --- |
| 4. | Bank of America Merchant Services Card Processing Service Agreement Terms and Conditions

(November 1994 (Reprinted August 1995)) | Bank of America NT&SA offered to provide credit card processing services to merchants which incorporated a system and method of automated payment as claimed in the '281 patent. Bank of America, the merchant processor, would acquire, authorize and settle the transaction. Bank of America would withhold or otherwise electronically forward some portion of the payment to a computerized payment receiver as payment of at least a portion of an obligation made by the merchant. First USA thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[4] |
| 5. | Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corportation and First USA Merchant Services, Inc.)

(June 1995) | Electronic Data Systems Corporation ("EDS"), as agent for First USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant. EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant. EDS, as agent for First USA, thus publicly used the method and system as claimed in the '281 patent, and First USA's system and method were |

---

[3] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. *See* Exhibit 3.

[4] Bank of America anticipates Claims 1-2, 6-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. *See* Exhibit 4.

| | | |
|---|---|---|
| | | described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[5] |
| 6. | Litle & Co. (1990-1992) | Litle & Co. ("Litle") utilized a system and method of automated payment wherein Litle would advance a sum of money or an amount of postage costs to catalog or other companies. Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from Litle's advance of cash or postage costs. Litle thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[6] |

Defendants' investigation of these products and services is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these products and services as discovery in this case continues.

2.    INVENTORSHIP – 35 U.S.C. § 102(f)

The '281 patent is invalid because the alleged inventor did not herself invent the subject matter sought to be patented. As evidenced during the deposition of the alleged inventor, Barbara Johnson, she lacks knowledge of card processing and familiarity with, or knowledge of, the meaning of many, if not all, features of the '281 patent.

---

[5] EDS anticipates Claims 1-2, 6-11 and 15-19. EDS renders obvious Claims 3-5 and 12-14. *See* Exhibit 5.
[6] Litle & Co. anticipates Claims 1-2, 6-11 and 15-19. Litle & Co. renders obvious Claims 3-5 and 12-14. *See* Exhibit 6.

| Name of person from whom the invention or any part was derived | Circumstances |
|---|---|
| Gary Johnson | Gary Johnson is the husband of the inventor. On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention. Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson. On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson. |
| Les Falk and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc. | On information and belief, Les Falk is the former CEO of the assignee of the '281 patent. On information and belief, the invention or some part of the invention was derived from Les Falk and/or other employees of the assignee (which underwent multiple name changes). |
| Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP. |
| David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. | Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP. |

Defendants' investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these individuals and circumstances as discovery in this case continues.

6

3.    **P.R. 3-4 DOCUMENT PRODUCTION**

Defendants produced prior art items 1-4 on July 7, 2006 with service of their Preliminary Invalidity Contentions.    Simultaneously with service of Defendants' Amended Preliminary Invalidity Contentions, Defendants are producing a copy of each additional item of prior art identified pursuant to P.R. 3-3(a) which does not appear in the file history of the patent-in-suit. At the present time, Defendants have made every effort to produce all relevant, non-privileged documents in their possession, custody or control that may evidence the information required under P.R. 3-4(a). All such documents were produced on June 26, 2006 with Defendants' initial production of documents pursuant to the Court's Amended Docket Control Order and Local Rule CV-26. Defendants' search for documents is ongoing, and Defendants reserve the right to supplement its document production as additional relevant, non-privileged documents in their possession, custody or control are identified.

Dated: July 21, 2006

Respectfully submitted,

By: _____

Willem G. Schuurman
Texas State Bar No. 17855200
Joseph D. Gray
Texas State Bar No. 24045970
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400 –
Fax: (512) 236-3476

- and -

Hilary L. Preston
VINSON & ELKINS L.L.P.
666 Fifth Avenue – 26th Floor
New York, New York 10103
Phone: (212) 237-0000
Fax: (212) 237-0100

- and -

Douglas McSwane
Texas State Bar No. 13861300
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

*ATTORNEYS FOR DEFENDANTS*
*FIRST FUNDS LLC, MERCHANT*
*MONEY TREE, INC. AND REACH*
*FINANCIAL LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served upon all counsel of record on this the 21st day of July, 2006 as indicated:

*Via Electronic Mail and U.S. Mail*
Ronald S. Lemieux
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Five Palo Alto Square, Sixth Floor
Palo Alto, CA 94306-2155
ronlemieux@paulhastings.com

Otis Carroll
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
fedserv@icklaw.com

*Via U.S. Mail*
Stephanie Nimberg, President
Lawrence Morrison, General Counsel
17 Battery Place Suite 1330
New York, New York 10004

9

## EXHIBIT I

**TO AFFIDAVIT OF MICHAEL N. EDELMAN IN
SUPPORT OF ADVANCEME, INC.'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

IN THE UNITED STATES DISTRICT

COURT FOR
THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION


ADVANCEME, INC.,

Plaintiff

v.

RAPIDPAY LLC, BUSINESS CAPITAL CORPORATION, FIRST FUNDS LLC,

MERCHANT MONEY TREE, INC., REACH FINANCIAL LLC, and FAST

TRANSACT, INC.  dba SIMPLE CASH,  Defendants  CASE NO. 6:05-CV-424 LED

DEFENDANTS' AMENDED P.R. 3-3 PRELIMINARY INVALIDITY

CONTENTIONS

    Pursuant to the Court's Amended Docket Control Order and Patent Rules ("P.R.")

3-3 and 3-4 of the Rules of Practice for Patent Cases before the Eastern District of Texas,

Defendants First Funds LLC, Merchant Money Tree, Inc., and Reach Financial LLC

("Defendants") submit the following , amended preliminary invalidity contentions and

accompanying document production.

    These contentions pertain to Claims 1-19 of U.S. Patent No. 6,941,281 (the '281

Patent).  Defendants submit, however, that AdvanceMe has not fully complied with its

obligation to submit specific Preliminary Infringement Contentions relating to the means-

plus-function claims of the '281 patent, in that AdvanceMe's Contentions for Claims 10-

19, relating to means-plus-function claim elements, provide only conclusory accusations

of Accused Instrumentalities and do not identify structure with specificity.   See

AdvanceMe's Preliminary Infringement Contentions; P.R. 3-1.  Further, Defendants

submit that AdvanceMe has not fully complied with its obligation to submit specific

Preliminary Infringement Contentions relating to Claims 8 and 17, in that AdvanceMe's

Contentions do not identify any ability of the Accused Instrumentalities to "accumulate

payments until a predetermined amount is reached."  See AdvanceMe's Preliminary

Infringement Contentions; P.R. 3-1.

Defendants have based these Preliminary Invalidity Contentions in part on

AdvanceMe's proffered claim interpretations, as best understood by Defendants.

Defendants do not accept AdvanceMe's proffered claim interpretation, and Defendants'

application of AdvanceMe's claim interpretations for purposes of these Preliminary

Invalidity Contentions shall not be deemed an acceptance of AdvanceMe's constructions

or a waiver of Defendants' right to proffer alternative constructions.

Because AdvanceMe has not yet provided Defendants with reasonably specific

Preliminary Infringement Contentions, the Court has not yet ruled on claim construction,

and  discovery and fact investigations are ongoing, Defendants reserve the right to

supplement these Preliminary Invalidity  ~~Contentions.~~

1.     PRIOR ART - 35 U.S.C.  § 102(B)

Attached as Exhibits 1-46 are claim charts respectively indicating how prior art

items 1-46 anticipate every limitation of at least certain of Claims 1-19 of the '281

Patent, based on Defendants' present understanding of how AdvanceMe is construing

those claims.  To the extent any limitation is deemed not to be exactly met by an item of

prior art, Defendants submit that the difference would have been obvious to one skilled in

the art at the time of the alleged invention in view of the state of the art and knowledge of

those skilled in the art, and that the item of prior art therefore renders the claims invalid

for obviousness.  As evidenced at the deposition of the inventor, Barbara Johnson, and

based on her testimony, prior art items 1-6 individually and collectively anticipate or

render obvious all of Claims 1-19 of the '281 Patent.

Publication Title

Item offered for sale or publicly used or known

1.    Clever Ideas - LeCard dining program documents  (1992-1996)

Clever Ideas - LeCard, Inc. offered a product known as LeCard that utilized a system

and method of automated payment wherein LeCard would advance a sum of money or

an amount of advertising to restaurants in exchange for the restaurant providing food

and beverage credit for LeCard cardholders. The restaurant's contractual obligation to

repay the credit amount would be reduced as customers used LeCard to pay for food and

beverages. Diners Club, the merchant processor, would acquire, authorize and settle

the LeCard transaction and would electronically forward some portion of the payment to

LeCard in satisfaction of the restaurant's obligation to LeCard. LeCard thus publicly

used the method and system as claimed in the '281 patent, and LeCard's method and

system were described in a printed publication, more than one year prior to the date of

the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior

art. A chart identifying where specifically in this item of prior art each element of each

asserted claim is found is attached hereto as Exhibit 1.[1]

2.      SEC Form 10-K for Transmedia Network, Inc.    (December 29, 1995)

Transmedia Network Inc. ("Transmedia") offered a product known as the Transmedia
card that utilized a system and method of automated payment wherein Transmedia
advanced a sum of money to a restaurant or other merchant, via a purchase at a discount
of "Rights-to-Receive" (i.e., the right to receive goods and services). After acquiring,
authorizing and settling the transaction, Transmedia would withhold or otherwise
electronically forward some portion of the payment to a computerized payment receiver
in satisfaction of the restaurant's (or other merchant's) contractual obligation to
Transmedia. Transmedia thus publicly used the method and system as claimed in the
'281 patent, and Transmedia' s method and system were described in a printed
publication, more than one year prior to the date of the application for a patent in the
United States and constitutes 35 U.S.C. § ~~102~~102(b) prior art. A chart identifying
where specifically in this item of prior art each element of each asserted claim is found
is attached hereto as Exhibit 2.[2]

3.      First USA Merchant Services, Inc. Merchant Credit Card Agreement (July 1,
1993)

      First USA Merchant Services, Inc. ("First USA") offered to provide credit card

---

[1] Clever Ideas- LeCard anticipates Claims 1,5-10 and 14-19. Clever Ideas-LeCard renders obvious Claims
2-4 and 11-13. See Exhibit 1

[2] ~~Transmedea~~Transmedia anticipates Claims 1,5-10 and 14-19. Transmedia renders obvious Claims 2-4
and 11-13. See Exhibit 2.

processing services to merchants that incorporated a system and method of automated

payment as claimed in the '281 patent. First USA, the merchant processor, would

acquire, authorize and settle the transaction. First USA would withhold or otherwise

electronically forward some portion of the payment to a computerized payment receivers

as payment of at least a portion of an obligation made by the merchant. First USA thus

publicly used the method and system as claimed in the '281 patent, and First USA's

system and method were described in a printed publication, more than one year prior to

the date of the application for a patent in the United States and constitutes 35 U.S.C. §

102(b) prior art. A chart identifying where specifically in this item of prior art each

element of each asserted claim is found is attached hereto as Exhibit 3.[3]

4.    Bank of America Merchant Services Card Processing Service Agreement Terms

and Conditions (November 1994 (Reprinted August 1995))

Bank of America NT &SA offered to provide credit card processing services to

merchants which incorporated a system and method of automated payment as claimed in

the '281 patent. Bank of America, the merchant processor, would acquire, authorize and

settle the transaction. Bank of America would withhold or otherwise electronically

forward some portion of the payment to a computerized payment receiver as payment of

at least a portion of an obligation made by the merchant. First USA thus publicly used

the method and system as claimed in the '281 patent, and First USA's system and

method were described in a printed publication, more than one year prior to the date of

---

[3] First USA anticipates Claims 1-2, 6-11 and 15-19. First USA renders obvious Claims 3-5 and 12-14. See Exhibit 3.

the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 4.[4]

5. Credit Card Processing Agreement; Reserve Account Agreement (among Reno Air, Inc., Electronic Data Systems Corporation and First USA Merchant Services, Inc.)

Electronic Data Systems Corporation ("EDS"), as agent for First Processing USA Merchant Services, Inc. ("First USA"), offered to provide credit card processing services to merchants that incorporated a system and method of automated payment as claimed in the '281 patent. EDS, the merchant processor, would receive payment information from the merchant and provide the merchant with the payment amount less processing fees and other obligations of the merchant. EDS would electronically forward some portion of the payment to a computerized payment receiver as payment of some portion of an obligation made by the merchant. EDS, as agent for First USA, thus publicly used the method and system as claimed (June 1995) in the '281 patent, and First USA's system and method were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 5.[5]

---

[4] Bank of America anticipates Claims 1-2, 56-11 and 15-19. Bank of America renders obvious Claims 3-5 and 12-14. See Exhibit 4.

[5] EDS anticipates Claims 1-2,6-11 and 15-19. EDS renders obvious Claims 3-5 and 12-14. See Exhibit 5.

6.    Litle & Co. (1990-1992)

Litle & Co. ("Litle") utilized a system and method of automated payment wherein Litle would advance a sum of money or an amount of postage costs to catalog or other companies. Litle, the merchant processor, would acquire, authorize and settle the transaction and would electronically forward some portion of the payment to a computerized payment receiver in satisfaction of the company's obligation that arose from Litle's advance of cash or postage costs. Litle thus publicly used the method and system as claimed in the '281 patent, and Litle's method and system were described in a printed publication, more than one year prior to the date of the application for a patent in the United States and constitutes 35 U.S.C. § 102(b) prior art. A chart identifying where specifically in this item of prior art each element of each asserted claim is found is attached hereto as Exhibit 6.[6]

Defendants' investigation of these products and services is ongoing, and Defendants reserve the right to supplement these contentions to include additional details regarding these products and services as discovery in this case continues.

2.    INVENTORSHIP - 35 U.S.C. § 102(f)

The '281 patent is invalid because the alleged inventor did not herself invent the subject matter sought to be patented. As evidenced during the deposition of the alleged inventor, Barbara Johnson, she lacks knowledge of card processing and familiarity with,

---

[6] Litle & Co. anticipates Claims 1-2,6-11 and 15-19. Litle & Co. renders obvious Claims 3-5 and 12-14. See Exhibit 6.

or knowledge of, the meaning of many, if not all, features of the '281 patent.

Name of person from whom the invention or any part was derived

Circumstances

Gary Johnson

Gary Johnson is the husband of the inventor. On information and belief, he was knowledgeable of the card processing industry at the time of the alleged inventor's invention. Barbara Johnson testified that she did not directly correspond with the prosecuting attorneys, but instead indirectly corresponded with the prosecuting attorneys through Gary Johnson. On knowledge and belief, the invention or some part of the invention was derived from Gary Johnson.

Les Falk and/or other employees of Media Works Funding Corporation, Countrywide Business Alliance, Inc. and/or AdvanceMe, Inc.

On information and belief, Les Falk is the former CEO of the assignee of the '281 patent. On information and belief, the invention or some part of the invention was derived from Les Falk and/or other employees of the assignee (which underwent multiple name changes).

Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.

Attorneys from Testa, Hurwitz & Thiebeault LLP were involved in the

prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from Paula Campbell, Robert Tosti, John Forcier and/or other attorneys of the law firm Testa, Hurwitz & Thiebeault LLP.

David Klein and/or other attorneys of the law firm Shearman & Sterling LLP involved in the prosecution of the U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544.

Attorneys from Shearman & Sterling LLP were involved in the prosecution of U.S. Patent No. 6,941,281 and/or U.S. Patent No. 6,826,544. On information and belief, the invention or some part of the invention was derived from David Klein and/or other attorneys of the law firm Shearman & Sterling LLP.

Defendants' investigation of these individuals and the circumstances surrounding their contribution to the alleged invention is ongoing, and Defendants reserve the right to supplement these contentions to include additional details[2] regarding these individuals and circumstances as discovery in this case continues.

3.    P .R.  3-_4 DOCUMENT PRODUCTION

Defendants produced prior art items 1-4 on July 7, 2006 with service of their Preliminary Invalidity Contentions. Simultaneously with service of Defendants' Amended Preliminary Invalidity Contentions, Defendants are producing a copy of each additional item of prior art identified pursuant to P.R. 3-3(a) which does not appear in the file history of the patent-in-suit. At the present time, Defendants have made every effort to produce all relevant, non-privileged documents in their possession, custody or control

that may evidence the information required under P.R. 3-4(a). All such documents were produced on June 26, 2006 with Defendants' initial production of documents pursuant to the Court's Amended Docket Control Order and Local Rule CV-26. Defendants' search for documents is ongoing, and Defendants reserve the right to supplement its document production as additional relevant, non-privileged documents in their possession, custody or control are identified.

~~NO DATE~~

Dated: July 21, 2006

Respectfully submitted,

By:

Willem G. Schuurman
Texas State Bar No. 17855200
Joseph D. Gray
Texas State Bar No. 24045970
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Phone: (512) 542-8400
Fax: (512) 236-3476

-and-

Hilary L. Preston
VINSON & ELKINS L.L.P.
666 Fifth Avenue - 26th Floor
New York, New York 10103
Phone: (212) 237-0000
Fax: (212) 237-0100

–and -

Douglas McSwane
Texas State Bar No. 13861300
POTTER MINTON, P.C.
110 North College

500 Plaza Tower
Tyler, Texas 75702
Phone: (903) 597-8311
Fax: (903) 593-0846

ATTORNEYS FOR DEFENDANTS FIRST FUNDS LLC, MERCHANT MONEY
TREE, INC. AND REACH FINANCIAL LLC

LEGAL_US_W # 54337986.1

Document comparison done by Workshare Professional on Tuesday, September 05, 2006 9:02:11 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://_WS-SF/LEGAL_USW/54337986/1 |
| Document 2 | interwovenSite://_WS-SF/LEGAL_USW/54337470/1 |
| Rendering set | ph standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 47 |
| Deletions | 27 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 74 |