# EXHIBIT H

Page 1

```
 1

 2              UNITED STATES DISTRICT COURT

 3                EASTERN DISTRICT OF TEXAS

 4                    TYLER DIVISION

 5

 6    ADVANCEME, INC.,            )
                  Plaintiff,      )
 7                                )
              vs.                 )   No. 6:05-cv-00424
 8                                )
      RAPIDPAY LLC,               )
 9                Defendant.      )
      --------------------------- )   ------------------
10    ADVANCEME, INC.,            )
                  Plaintiff,      )
11                                )
              vs.                 )   No. 6:06-cv-00082
12                                )
      AMERIMERCHANT, LLC,         )
13                Defendant.      )
      --------------------------- )

14

15

16

17                    June 28, 2006

18                     9:06 a.m.

19

20        Deposition of BARBARA S. JOHNSON, held

21    at the offices of Vinson & Elkins, 666 Fifth

22    Avenue, New York, New York, before Laurie A.

23    Collins, a Registered Professional Reporter

24    and Notary Public of the State of New York.

25
```

1                       Johnson

2       A.      Yes.

3       Q.      Were you aware of that amendment made

4    in July '04 before today?

5               MR. LEMIEUX:  Objection.

6       A.      Am I aware of that amendment?  I -- I

7    didn't know what form it was in.  I was aware of

8    this change in language.  So I just don't know

9    exactly -- I didn't know it was an amendment -- I

10   didn't specifically know where it -- in what form

11   it was in, is the best way.

12      Q.      Are you saying you knew in July of 2004

13   that the language was being changed, or when did

14   you know?

15      A.      I'm not specifically sure when I knew,

16   but I'm aware of it.  Sorry.

17      Q.      Whose idea was it to change the

18   language?

19      A.      I believe it was the attorney's.

20      Q.      Who was --

21      A.      Again, I'm actually guessing.

22      Q.      But it wasn't your idea?

23      A.      No, no.

24      Q.      So you understand from this paragraph

25   common to pages 5 and 6 that applicant has

Page 124

1                    Johnson

2    replaced the term "loan" in the claims with the

3    more generic term "obligation."  So you understand

4    that "obligation" is a generic term that

5    encompasses loan as a species?

6         A.    Yes.

7         Q.    Is that your understanding?

8         A.    Yes.

9         Q.    It goes on to say, Since many

10   obligations for payment that may use a system at

11   present are not necessarily loans.

12              Then it goes on to say, For example, if

13   a merchant assigns its receivables to a third

14   party, these could be collected by the third party

15   using the system of the invention.  As such the

16   term "lender" has been replaced by third party."

17              Do you see that?

18        A.    Yes.

19        Q.    So is it your understanding that "third

20   party" is a generic term that encompasses

21   "lender"?

22        A.    Yes.

23        Q.    Do you have any basis for -- do you

24   know -- do you have any knowledge as to why these

25   claims were changed in 2004?

Page 125

1              Johnson

2     A.    If I can go back a little bit.  I think
3  I used the word "loan" very often in the early
4  days of the concept, and I used that word I think
5  loosely, meaning obligation, leaning loan, just --
6  I used it as a nontechnical term.
7           And I think over time there -- the
8  advice from our legal people was that it needed
9  more of a -- more of a description, more of a
10 definition.
11    Q.    So this arose in 2004?
12          MR. LEMIEUX:  Objection.
13    A.    But I'm not positive on the date but...
14    Q.    Your original application was filed in
15 1997.  This is seven years later.
16    A.    So I think as the -- I don't
17 specifically know why this time was chosen to
18 change it or when the first concept of coming to
19 change the words or alter them was, but I was on
20 some level aware of a discussion about "loan" and
21 "obligation."
22    Q.    At what time were you aware of that
23 discussion?
24    A.    I really don't know.  I assume prior to
25 this, but I don't know.

Page 126

1                    Johnson

2       Q.    Who was that discussion with?

3       A.    It was with my husband coming from the
4   legal -- from the attorneys.

5       Q.    And who were the attorneys in 2004?

6       A.    I don't -- I don't know.

7       Q.    Did you know any of them?

8       A.    No, not permanently.  At this point the
9   company was handling...

10      Q.    So apart from Tosti that you
11  mentioned -- I think -- was it Tosti?

12      A.    Yeah.

13      Q.    Did you ever meet any other attorneys
14  or talk to any other attorneys?

15      A.    No.

16      Q.    In fact, you didn't talk to Tosti
17  either; you said you just spoke to Paula Campbell?

18      A.    Yeah.

19      Q.    You didn't meet or talk to any of the
20  attorneys handling the application --

21      A.    No.

22      Q.    -- after you spoke to Paula Campbell?

23      A.    No, personally, no.

24      Q.    This document, if you turn to page 6,
25  it's signed by David Klein.  Did you ever know

1
2     A F T E R N O O N   S E S S I O N
3          (Time noted: 1:20 p.m.)
4          THE VIDEOGRAPHER: We're now going on
5     the record approximately 1:20 p.m.
6  B A R B A R A   S.   J O H N S O N,
7     resumed and testified further as follows:
8  EXAMINATION CONTINUED BY
9  MR. SCHUURMAN:
10     Q.   Mrs. Johnson, in your '281 patent,
11  there are no examples other than examples of loans
12  and lenders; is that correct?
13          MR. LEMIEUX: Objection.
14     A.   I'm not totally aware of all that's
15  included in here.
16     Q.   Are you aware of any reference in your
17  patent to anything like an obligation or like an
18  obligation to a third party?
19          MR. LEMIEUX: Objection.
20     A.   I'm not totally aware of what's written
21  throughout this whole document.
22     Q.   So do you know --
23          MR. LEMIEUX: Other than claim
24     language, you're asking her?
25     Q.   You don't know?

1                     Johnson

2            MR. LEMIEUX:  Objection.

3       Q.    Is that what you're saying?

4       A.    I'm saying -- yes, I'm saying I don't
5   know where in the document.

6       Q.    Coming back to Column 1, we ended with
7   this just before the break, and you -- did you
8   think about it at lunchtime?

9       A.    While I'm not totally comfortable using
10  the language in the document, since it is prepared
11  by an attorney and I'm not that familiar with all
12  the language, I think the simple question you're
13  asking me out of all of that, if I'm correct, is
14  that could the processor be separate entities,
15  could they be the same or separate entities.  Is
16  that what you're asking me?

17      Q.    No, my question is in Column 1 your
18  patent says the merchant processor and the lender
19  can be the same.

20      A.    So I guess what I'm saying is I -- that
21  is part of the patent claim.

22      Q.    Okay.  So my follow-up question was can
23  the merchant processor and the third party be the
24  same.

25      A.    I think that's all part of what's in

```
 1                    Johnson
 2   the patent, yes.
 3        Q.   I'm sorry?
 4        A.   I think, yes, that's all part of what's
 5   in the patent.
 6        Q.   What is your basis for saying that's
 7   what's in the patent?
 8        A.   I think -- it's language from the
 9   patent that you're reading to me, so yes.
10        Q.   No, I'm not reading language from the
11   patent.  Can you look at Column 1?
12             MR. LEMIEUX:  Yes, you were.
13        Q.   Can you look at Column 1 of your '281
14   patent?
15        A.   Yes.
16        Q.   I'm referring you to Column 1, lines 35
17   through 42.
18             MR. LEMIEUX:  But we're not reading
19        language from the patent, which was the
20        premise of your question.
21        Q.   Can you read that to yourself.
22             (Pause.)
23        Q.   Okay.  You've read that.
24        A.   Uh-huh.
25        Q.   The patent says the merchant processor
```

Page 148

1          Johnson
2  may be the same entity as the lender.  Do you see
3  that?
4      A.    Yes.
5      Q.    So my question is can the merchant
6  processor be the same entity as the third party as
7  well.
8      A.    Say it one more time for me.
9      Q.    Can you substitute "third party" for
10 "lender" in that passage?
11         MR. LEMIEUX:  Objection.
12     A.    I don't know what the ramifications of
13 substituting that word would be from a legal
14 standpoint.
15     Q.    Well, you're the inventor.  You tell
16 me, and I'm asking you.  What does your patent
17 mean?
18     A.    I am, but I didn't write this.  This is
19 written by a professional attorney.  So I can -- I
20 can't defend each word and fully understand the
21 ramifications of substituting words in a
22 contract -- in a patent, what that would do.
23     Q.    Did the attorney make the decision that
24 the merchant processor and the lender could be the
25 same entity or did you make that decision?

285

C E R T I F I C A T E

STATE OF NEW YORK    )
                     : ss.
COUNTY OF NEW YORK   )

       I, LAURIE A. COLLINS, a Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

       That BARBARA S. JOHNSON, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

       I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

       IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of July 2006.

*[Signature: Laurie A. Collins]*

LAURIE A. COLLINS, RPR