# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |
|---|---|
| § | |
| § | |
| **ADVANCEME, INC.,** § | **CIVIL CASE NO. 6:05-CV-424 (LED–JDL)** |
| **Plaintiff,** § | |
| § | |
| **v.** § | |
| § | |
| **RAPIDPAY LLC, FIRST FUNDS LLC,** § | |
| **MERCHANT MONEY TREE, INC.,** § | |
| **REACH FINANCIAL LLC, and** § | |
| **FAST TRANSACT, INC. d/b/a** § | |
| **SIMPLE CASH,** § | |
| **Defendants.** § | |
| § | |
| § | |
| **ADVANCEME, INC.,** § | **CIVIL CASE NO. 6:06-CV-082 (LED-JDL)** |
| **Plaintiff,** § | |
| § | |
| **v.** § | **JURY TRIAL DEMANDED** |
| § | |
| **AMERIMERCHANT, LLC,** § | |
| **Defendant.** § | |
| § | |

## ADVANCEME, INC.'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO

## PATENT LOCAL RULE 4-5(c)

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ............................................................................... 1

II.   CLAIM ELEMENTS ......................................................................... 1

      A   "Obligation" ............................................................................. 1

      B.  Third Party ............................................................................... 5

      C.  Various Forwarding Means and the Receiving Means ................................ 9

      D.  "Periodically Forwarding" ......................................................... 15

      E.  "Smart Card" .......................................................................... 15

      F.  "Customer Identifier," "Debit Card," "Accepting Means,"
          "Accumulating Payments . . . ," "Accumulating Means" ........................... 16

III.  CONCLUSION ................................................................................ 16

# TABLE OF AUTHORITIES

**PAGE**

Application of Freeman, 573 F.2d 1237 (C.C.PA. 1978)............................................................ 13

Budde v. Harley-Davidson, Inc., 250 F.3d 1369 (Fed. Cir. 2001) ............................................ 11

Charles E. Hill & Assocs., Inc. v. Amazon.com, No. Civ. A. 2:02-CV-186, 2005
    WL 2483510 (E.D. Tex. Oct. 7, 2005) .................................................................................. 14

Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302 (Fed. Cir.
    2000).................................................................................................................................. 15, 16

Finisar Corp. v. The DirecTV Group, Inc., 416 F. Supp. 2d 512 (E.D. Tex. 2006)............. 13, 14

Goldenberg v. Cytogen, Inc., 373 F.3d 1158 (Fed. Cir. 2004)...................................................... 3

Jonsson v. Stanley Works, 903 F.2d 812 (Fed. Cir. 1990) ........................................................... 3

WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339 (Fed.Cir. 1999)...................... 10, 12, 13

## I.    INTRODUCTION

Consistent with their general disregard for this Court's Local Patent Rules, Defendants'

Opposition abandons many of their proposed constructions insisted upon during the parties' meet

and confer sessions and contained in the P.R. 4-3 Joint Claim Construction Statement.  Instead,

Defendants propose several new constructions that attempt to import improper limitations from

suggested embodiments or that ignore the specification and prosecution history of the '281

Patent.  Defendants' efforts to manipulate this process and this Court should be rejected.

## II.    CLAIM ELEMENTS

### A.    "Obligation"

Defendants originally asserted that "obligation" should be construed according to its

ordinary meaning.  Docket Entries ("D.E.") 86 (*RapidPay*) and 32 (*AmeriMerchant*), Joint Claim

Construction and Prehearing Statement Pursuant to P.R. 4-3, p. 8.  In response to Plaintiff's

Opening Brief, Defendants have reversed their position and now propose a completely revised

construction for this term.  Defendants' latest construction, however, continues to miss the mark.

Although Defendants now concede that the construction of the term "obligation" should

account for transactional costs and fees, Defendants bizarrely contend that this construction

should exclude only certain fees and costs (e.g., discount rate, interchange fees and network

fees), but not other fees and costs normally associated with the typical transaction processing

environment.  Defendants' position is disingenuous because the '281 Patent does not distinguish

between the different types of transaction fees and costs that can be incurred in the typical

transaction environment.  Rather, the intrinsic evidence of the '281 Patent makes it clear that *all*

fees and costs associated with the typical transaction processing environment are outside the

scope of the term "obligation."

Defendants claim that the three processing fees identified in their proposed construction of "obligation" is an "exhaustive list of the universe of processing fees" set forth in the '281 Patent. Defendants' Responsive Claim Construction Brief, p. 6. The '281 Patent does not purport to provide an "exhaustive" list of transactional fees and costs, however, but rather provides *examples* of the various fees and costs that can be incurred when using the typical transaction processing environment. Moreover, the '281 Patent plainly states that the claimed embodiments are constructed on top of the typical transaction processing environment and makes no attempt to include any of the various fees and costs incurred in this environment as part of the "obligation." Exhibit A to AdvanceMe's Opening Claim Construction Brief ("Opening Brief Ex."), '281 Patent, 2:48-51 ("The borrowing merchants use one or more already-familiar payment transaction processing systems to make the payments required by the lender or the loan collecting entity.").

Rather than distinguishing between the various types of fees and costs incurred in the traditional transaction processing environment, a wide range of fees and costs were disclosed during prosecution. For example, the Examiner reviewed and considered during prosecution several references that described a variety of transaction fees and costs that could be incurred in the typical transaction processing environment. See Exhibit A to AdvanceMe's Reply Claim Construction Brief, ("Rebuttal Ex."), attached hereto, '281 Patent File History, Information Disclosure Statement submitted March 3, 1998 ("03/03/98 IDS"). Specific exemplary fees and costs disclosed in the 03/03/98 IDS included: point-of-sale ("POS") terminal rental fees (see Rebuttal Ex. B, Reference C9 at FHC0140-FHC0144); POS switch fees (see Rebuttal Ex. C, Reference C10 at FHC0160); POS fees (see Rebuttal Ex. C, Reference C10 at FHC0162); advertising fees (see Rebuttal Ex. C, Reference C10 at FHC0162) ("Note: …3¢ goes to a

network POS promotional fund"); and foreign transaction fees (see Rebuttal Ex. C, Reference

C10 at FHC0171) ("Banks' fees for so-called foreign transactions influence interchange...."). 

Defendants' proposed construction of the term "obligation" completely ignores all of these other

exemplary fees and costs even though they are part of the intrinsic record of the '281 Patent.

Not only were these various fees and costs disclosed during the prosecution, the

Applicant's representatives repeatedly emphasized that the "obligation" is *independent* of any

costs and fees owed in typical processing systems. AdvanceMe's Opening Claim Construction

Brief, p. 13; Opening Brief Ex. D, '544 Patent File History, 01/20/99 Amendment and Response,

p. 3. Contrary to the Defendants' assertion that this statement was just a single "vague and

ambiguous statement by the patentee" (Defendants' Responsive Claim Construction Brief, p. 8),

this distinction was maintained throughout prosecution and *repeated* to the Board of Patent

Appeals and Interferences ("BPAI") to distinguish the prior art. Opening Brief Ex. G, '544

Patent File History, 06/07/00 Applicant's Brief on Appeal to the BPAI, p. 8.

Defendants incorrectly assert that these portions of the prosecution history can be ignored

because they were made "during prosecution of a different patent and with respect to a *different*

*term* in a different claim." Defendants' Responsive Claim Construction Brief, p. 8 (italics in

original). The prosecution history of a parent patent is part of the prosecution history of the child

patent. Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1167 (Fed. Cir. 2004) (holding that the

prosecution history of the parent application is treated "as part of the intrinsic evidence" of the

child application when construing claim terms); see also Jonsson v. Stanley Works, 903 F.2d

812, 818 (Fed. Cir. 1990) (holding that the prosecution history of parent application is relevant to

understanding scope of claims issuing in a continuation-in-part application). The '281 Patent is a

continuation of the '544 Patent, and both patents contain *identical* disclosures. Both the '544

Patent and the '281 Patent were examined by the *same* Examiner, James W. Myhre, and both patents had the *same* prior art[1] cited against them. In addition, the claims of the '281 Patent are so similar to those of the '544 Patent that the USPTO required a Terminal Disclaimer for the '281 Patent to limit its term to that of the '544 Patent. Rebuttal Ex. D, '281 Patent File History, 03/17/05 Notice of Allowability, p. 2 and attached Paper No. 20050317, p. 3. The Applicant's representative further linked the claims of the '281 Patent to those in the '544 Patent by stating:

> By the present amendment, Applicant has amended the claims [of the '281 Patent] to *closely follow* the language of the claims that were on appeal in the ['544 Patent], with several minor changes in the independent claims.

Opening Brief Ex. K, '281 Patent File History, 07/12/04 Request for Extension-of-Time and Amendment, p. 5. From this evidence, it is clear that the above mentioned statements made during the prosecution of the '544 Patent apply to the construction of "obligation" in the '281 Patent. It makes no difference whether the term is "loan" or "obligation" - neither of these terms include the fees and costs arising out of the typical transaction processing environment.

Defendants' attempt to link the claim construction arguments to the alleged prior art from First USA reveals the true motive underlying the Defendants' position: Defendants are attempting to ignore all of the statements made during the prosecution history so that they can try to assert as prior art a system that merely included the payment of monthly *rental fees* for *credit card swipe machines*. As previously discussed above, these types of rental fees were clearly and repeatedly considered and distinguished during prosecution.

For all of these reasons, AdvanceMe respectfully requests that the Court adopt AdvanceMe's construction of "**obligation**" as: "**an amount owed by a merchant that is**

---

[1] This prior art includes U.S. Patent No. 4,750,199 to Cohen and U.S. Patent No. 5,465,206 to Hilt et al.

**independent of any costs or fees arising out of the use of customer identifiers as payment.**"

### B.    Third Party"

Claim 10 of the '281 Patent recites that a portion of the payment be electronically forwarded to a "third party." As explained in Plaintiff's Opening Brief, a "third party" is a party other than the two parties involved in the underlying transaction. In the context of a transaction between a lender and a merchant, anyone other than the lender and the merchant can be a "third party." Similarly, in the context of the transaction recited in claim 10 between the merchant and the merchant processor, anyone other than the merchant or a merchant processor can be a third party. Quite obviously, therefore, a merchant processor cannot itself constitute a "third party" within the meaning of claim 10.

The plain meaning of claim 10 itself leaves no question that the merchant processor cannot be the "third party." Claim 10 recites that the merchant processor forwards a portion of the payment to a third party and not to itself. If the merchant processor can be included in the construction of "third party," then the language of the claim makes no sense: a party does not "forward" a payment "to a third party" if all it is doing is simply keeping the portion of the payment for itself. Thus, any construction that includes the merchant processor itself in the definition of the term "third party" would vitiate the ordinary meaning of claim 10 and render that language of the claim superfluous. Defendants cannot pretend that this language in claim 10 does not exist.

Defendants refuse to accept the plain language of claim 10, however, because some of their invalidity arguments against claim 10 require a distorted interpretation of this term. As Defendants concede, the alleged prior art from Litle that they rely upon does not forward a portion of a payment to a third party. Indeed, it does not involve any forwarding from the merchant processor whatsoever. Rather, in Defendants' alleged prior art, the merchant processor

simply pockets the payment portion itself. This scenario is completely different from the system recited in claim 10. Recognizing this difference, Defendants improperly attempt to read the forwarding step to a third party completely out of claim 10. Defendants cannot ignore the express language of the claim.

In an effort to bootstrap their argument, Defendants incorrectly argue that the ordinary meaning of the term "third party" is "ambiguous." "Third party" is used in claim 10, however, the same way the term is used in ordinary English, *i.e.*, a party other than one of the principals of a transaction. Claim 10 specifies that the merchant processor is one of the principals to the underlying transaction. That is why the portion of the payment is forwarded *from* the merchant processor *to* the third party. Because the merchant processor is one of the principals to the transaction, the merchant processor cannot also be a third party to the same transaction without vitiating the meaning of claim 10.

Defendants attempt to confuse this straightforward analysis by arguing that there are numerous different "transactions" disclosed in the '281 Patent. This argument is irrelevant. The term "third party" is recited in claim 10 and, therefore, all that matters is to identify the principals to the transaction referenced in claim 10. Claim 10 does not describe a "card account repayment transaction" or a "loan transaction." Rather, claim 10 encompasses a transaction involving the processing and forwarding of payments by a merchant processor. It is indisputable that the merchant processor is one of the principals to the transaction recited in claim 10. Since the merchant processor is a principal to the transactions, it cannot, by definition, also be a "third party" to the very same transaction.

Defendants further incorrectly argue that claim 10 involves four different entities and, therefore, the term "third party" is ambiguous. Again, Defendants miss the point. The issue is

not which entities appear somewhere in the language of claim 10, but rather which entities are the principals of the forwarding transaction recited in claim 10. No matter which other entities are described in claim 10, there still is no question that the merchant processor is one of the principals to the forwarding transaction. Because the merchant processor is a principal to the forwarding transaction, it cannot also be a third party to the same transaction.

Attempting to find some support for its incorrect construction, Defendants also try to rely on the file history of the '281 Patent. The only passage cited by Defendants from the file history, however, is a statement reflecting that the term "lender" was replaced with the term "third party." Defendants never make clear why this is relevant. Though it is true that the term "third party" in claim 10 is broader than the term "lender" (because, for example, the third party can be a designee of the lender), this statement does not contradict the fact that a merchant processor cannot be a third party under the plain language of claim 10.

Failing to find any support for their rewriting of claim 10 in the prosecution history, Defendants then try to rely on a passage in the specification that uses the term "third party." As AdvanceMe predicted in its Opening Brief, Defendants completely misread this passage. In this passage, the merchant processor is described as being a third party entity from the perspective of a loan transaction, *i.e.*, the merchant processor is described as "an entity other than the borrower or the lender." Opening Brief Ex. A, '281 Patent, 1:35-37. This is precisely consistent with the plain and ordinary meaning of "third party," *i.e.*, a party other than the principals in a transaction. There is no question that a merchant processor is a third party to a loan transaction between the merchant and the lender. However, there is also no question that the merchant processor cannot be a third party in the "forwarding a portion of payment to the third party" transaction recited in claim 10 because the merchant processor is itself a principal in this transaction.

Defendants are also incorrect in arguing that because the specification indicates that a merchant processor may be a lender, replacing the term "lender" in the claims with the term third party means that the term third party must include merchant processors. This syllogism fails because the statements that the Defendants are relying upon are not directed to the specific invention set forth in claim 10. Unlike method claims 1-9 of the '281 Patent, claim 10 is a means-plus-function claim. Thus, the terms of claim 10 specifically limit the recited system to one where the forwarding of a portion of the payment is from the merchant processor to the third party. In contrast, claim 1 recites that the forwarding of the portion of the payment is to a "computerized payment receiver," which does not necessarily have to be a third party. It is the broader language of claim 1 to which the statements in the specification cited by Defendants are directed, not the narrower "third party" recited in claim 10.

The reason for the distinction between claim 1 and claim 10 is made clear in the specification. In one embodiment (set forth at length in the specification and in claim 10), the invention is performed by using a merchant processor to forward a portion of the payment to a separate third party entity. Claim 1, however, is more broadly drafted to account for certain charge card systems (such as American Express) where the lender can be a large entity such as a financial institution where one division of the entity, acting separately as the "lender," can "forward" a portion of the payment to another division of the same entity that acts as a "merchant processor." For example, American Express could have both a lending department and a transaction processing department. Even though these departments are technically part of the same entity, they could be segregated in such a manner that it would make sense to describe one "merchant processing" department "forwarding" a portion of a payment to a "payment receiving" department, even if no third party is involved. In this aspect, claim 1 was purposely

drafted more broadly than claim 10 so that forwarding to a separate third party entity was not necessarily required.

However, the term "third party" is not recited in claim 1 but rather in claim 10. Claim 10 was not drafted to encompass the forwarding of payments between different divisions of a single entity. Rather, claim 10 is drafted to encompass the embodiment described in the specification where the lender or payment receiver is always described as being a separate third party entity from the merchant processor. See, e.g., Opening Brief Ex. A, '281 Patent, FIG. 2, 5:14-17.

In short, the plain meaning of the term "third party" controls the resolution of this issue. Under the language of claim 10, the third party cannot be the merchant processor itself. A different construction would render this term in claim 10 meaningless. Accordingly, AdvanceMe's proposed construction of this term should be adopted.

### C.    Various Forwarding Means and the Receiving Means

Defendants incorrectly assert that there are no corresponding structures disclosed in the '281 Patent for performing the functions recited in the various "forwarding" and "receiving" means-plus-function elements[2] of the '281 Patent. Accordingly, if the Court finds that corresponding structure is disclosed in the '281 Patent, AdvanceMe's constructions of these elements should be adopted.

As explained in Plaintiff's Opening Brief, the '281 Patent clearly discloses the requisite corresponding structure for each of these means-plus-functions elements. The structure for the electronically forwarding means "at the merchant" disclosed in the '281 Patent is the input/output ("I/O") device 322 of the merchant 20 depicted in FIG. 3B. See Opening Brief Ex.

---

[2] See AdvanceMe's 09/13/06 Opening Claim Construction Brief at 23-25, 29, 32-35, §§ (K), (L), (O).

A, '281 Patent, 6:60-62. The structure for each of the various forwarding means[3] "at the merchant processor" (collectively referred to as the "merchant processor forwarding means") disclosed in the '281 Patent is the I/O device 306 of the merchant processor 300 depicted in FIG. 3A. Id. at 5:53-58 & 6:60-62. The '281 Patent further discloses that that "receiving means" at the "merchant processor" can be the I/O device 306 or a telephone.[4] Id. at 4:8-15, 5:53-58 and 6:60-62. Defendants' position ignores these structures and argues instead that because the '281 Patent does not disclose every conceivable detail of the forwarding and receiving processes, these claim elements are somehow indefinite under 35 U.S.C. § 112(6). Defendants' assertions are erroneous for several reasons.

First, Defendants' position is entirely based on the incorrect proposition that various forwarding and receiving means are general purpose computer implemented functions and that, therefore, the WMS Gaming (184 F.3d 1339) standard is applicable to identify the corresponding structures. The WMS Gaming standard does not apply, however, because the functions recited in these elements do not require that the forwarding or receiving be implemented by a general purpose computer and/or software. Rather, the recited functions (*i.e.*, forwarding or receiving) simply require that the forwarding or receiving occur (using, for example, a modem or telephone). Because Defendants' entire analysis for these elements is predicated on the incorrect application of the wrong standard, Defendants' argument must be rejected.

---

[3] These "merchant processor forwarding means" include: the "portion forwarding means," the "accumulated payment forwarding means," the "periodically forwarding means," and the "percentage forwarding means."

[4] Defendants' assertion that there is no support in the specification for including a telephone in the corresponding structure of the receiving means is mistaken. The receiving means is the structure at the merchant that receives the data forwarded from the merchant to the merchant processor represented by arrow 22 in FIG. 1A. The '281 Patent explicitly states that this transmission can be "by telephone." Opening Brief Ex. A, 281 Patent, 4:8-15.

Second, Defendants' position completely fails to account for the heavy burden it must meet. Because Defendants' argument would have the effect of invalidating several claims of the '281 Patent, Defendants are required to present *clear and convincing* evidence that the specification lacks disclosure of *any* structure which would be sufficient to be understood by one skilled in the art to perform the recited function. Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1376-77 (Fed. Cir. 2001). Defendants never provide *any* evidence, however, establishing what one of ordinary skill in the art would understand. Further, Defendants do not submit *any* expert declarations to demonstrate the understanding of one of ordinary skill in the art and do not cite *any* statements in the specification or prosecution history that demonstrate such an understanding. Defendants cannot meet their heavy clear and convincing burden without any evidence to support their argument.

The structures disclosed in the '281 Patent for the various forwarding and receiving means are more than sufficient. For example, the '281 Patent specifically describes the physical structure that is used to perform the forwarding and receiving means at the merchant processor: "The I/O module 306 [shown in FIG. 3A] allows the merchant processor 300 to communicate electronically with the other components (e.g., the merchant 20, the network 40, the card issuer 50, and the lender 60) in the card transaction processing system shown in the drawings." See Opening Brief Ex. A, '281 Patent, 5:53-58. This statement clearly establishes that an I/O device is the specific structure at the merchant processor for forwarding and receiving information to the other parties.[5] Further, Defendants' own extrinsic dictionary defines an I/O device as hardware

---

[5] This same statement applies for the I/O device 322 at the merchant 20 because the '281 Patent states that "the merchant processor 300 and the merchant 20 can communicate through the I/O devices 306 and 322." Opening Brief Ex. A, '281 Patent, 6:60-63.

used for providing (*i.e.*, forwarding) data to a computer. See Defendants' Responsive Claim Construction Brief, p. 24, n. 17.

Not only does the '281 Patent specifically disclose sufficient physical structure for the forwarding means, the '281 Patent also includes several flowcharts and block diagrams that further describe and explain the specific structures in sufficient detail for one of ordinary skill in the art to make and use the various forwarding and receiving means. For example, arrow 29 shown in FIG. 2 of the '281 Patent is an electronic transmission that represents the forwarding of a portion of the payment to a third party. Opening Brief Ex. A, '281 Patent, FIG. 2, 4:8-10, 5:21-25. According to the '281 patent, the I/O device 306 allows the merchant processor to communicate electronically with the other parties. Id. at 5:53-58. Thus, the I/O device 306 is the structure that electronically sends the portion of the payment to the third party as recited by the function of the portion forwarding means of claim 10.

Defendants simply ignore all of these disclosures and, instead, improperly leap to the conclusion that an I/O device is a generic structural term. Defendants, however, fail to submit *any* evidence to establish that one of ordinary skill in the art would not understand an I/O device to be sufficiently specific structure for carrying out the various forwarding means.

Even if the WMS Gaming "algorithm" standard applies here, Defendants' argument completely misstates this standard. This standard does not require that a patent disclose every conceivable detail of how the forwarding means would occur in order for sufficient structure to be disclosed. Rather, this standard only requires a showing that one skilled in the art would understand that sufficient structure is disclosed in a patent for performing the recited function. Finisar Corp. v. The DirecTV Group, Inc., 416 F. Supp. 2d 512, 518-19 (E.D. Tex. 2006) ("Under 35 U.S.C. § 112(6), the structure, in this case, a computer which executes an algorithm,

must be sufficiently disclosed so that one of ordinary skill in the art can determine the limitations

on what is claimed."). As a result, the requisite "algorithm" can be disclosed in a number of

ways:

> Since this function is computer implemented, the patent must disclose an algorithm to be
> performed by the computer to accomplish the recited function. WMS Gaming Inc., 184
> F.3d at 1349. This does not mean that the patentee must disclose specific source code for
> the computer. And, the term "algorithm" is not limited to a formula of mathematical
> symbols. For example, the steps, formula, or procedures to be performed by the
> computer might be expressed textually, or shown in a flow chart. See Application of
> Freeman, 573 F.2d 1237, 1245-46 (C.C.P.A. 1978) and cases cited therein.

Finisar, 416 F. Supp. 2d at 518-19.

In spite of the Federal Circuit's admonitions, Defendants apparently hold the mistaken

belief that the '281 Patent does not disclose an "algorithm" for these means-plus-function

elements unless every conceivable detail concerning the various forwarding and receiving means

is set forth in the '281 Patent. To support their position, Defendants set forth a litany of

irrelevant and completely unsubstantiated details that they assert "*might*" be necessary but that

are not specifically contained in the specification, and then contend that the lack of such details

in the '281 Patent demonstrates a failure to disclose an algorithm. Defendants' Responsive

Claim Construction Brief, pp. 27-28. This is nonsensical. The law does not require that any of

these details be provided. Rather, the law solely requires that an algorithm be disclosed which

informs one of ordinary skill in the art how the recited function is performed. Finisar, 416 F.

Supp. 2d at 518-19. For general purpose computer implemented means-plus-function elements,

all that needs be disclosed is a series of steps, or boxes in a flow chart, which indicate how the

specifically recited function is performed. Id. The '281 Patent clearly makes this disclosure.

Opening Brief Ex. A, '281 Patent, FIGS. 2, 3A, 3B, 4:8-10, 5:21-25, 5:53-58.

Fundamentally, Defendants mistakenly focus on what is allegedly not disclosed by the '281 Patent rather than properly focusing on what is disclosed. It is impossible for any patentee to disclose every conceivable detail in a patent specification, and if this was the standard it would always be easy for any defendant to simply open up a computer dictionary and locate a thousand different details (such as the operating system, the device drivers, or the content of source code modules) and claim that the lack of those details invalidates the claims. This is not required, however. As long as there is some structure disclosed that would enable one with ordinary skill in the art to understand how the function would be performed, this requirement is satisfied.

The cases cited by Defendants overwhelmingly indicate that Defendants' "lack of structure" argument must be rejected. The only cases cited by Defendants in which the court found absence of structure involved situations in which the patent failed to disclose any structure other than a few words merely repeating the function itself. Finisar, 416 F. Supp. 2d at 519. As long as the patent contains structure which goes beyond a mere repetition of the function, the courts have consistently found that sufficient structure has been disclosed. For example, Judge Ward of this Court found that a "hard drive 36" was the corresponding structure for the "means for storing the updated constant data in the memory of the remote computer." Charles E. Hill & Assocs., Inc. v. Amazon.com, No. Civ. A. 2:02-CV-186, 2005 WL 2483510, at *13 (E.D. Tex. Oct. 7, 2005). According to the dictionary definition of I/O device introduced by Defendants, a hard drive is an example of an I/O device.[6] In Charles E. Hill, Judge Ward found "hard drive" to be sufficient structure for the "means for storing." Id. at *13. Yet under Defendants' argument, a hard drive would be inadequate structure because a hard drive "requires installation of software

---

[6] According to the definition of "disk drive" in same computer dictionary, there are "[t]wo types of disk drives in common use: floppy disk drives and hard disk drives." See Rebuttal Ex. E, Microsoft Press Computer Dictionary, Third Edition 1997, p. 151.

routines called device drivers to enable the computer to transmit and receive data to and from

them." See Defendants' Responsive Claim Construction Brief, p. 24, n. 17.  The Court's finding

in Charles E. Hill completely undermines Defendants' argument and establishes that the I/O

device disclosed here is sufficient.

For all of these reasons, the Court should reject Defendants' position that there is no

structure disclosed in the '281 Patent for the forwarding and receiving means and adopt

AdvanceMe's constructions for these elements.

**D.    "Periodically Forwarding"**

Defendants rely on a misreading of the '281 Patent to support their construction of the

phrase "periodically forwarding."  The passage in the '281 Patent cited by Defendants clearly

indicates that the period can be either by duration (e.g., time) or amount (e.g., monetary amount).

The two examples included in the cited passage begins first with a duration example and then an

amount example.  The simple grammatical ordering of these two examples indicates that the

inventor intended for both possibilities to be included as periodic.  Had this passage in the '281

Patent been intended to support the Defendants' interpretation of this passage, the order of the

two examples in the cited passage would have been reversed in order to correspond to the order

of the embodiments.  Accordingly, the Court should reject Defendants' proposed construction for

the term "periodically forwarding" in favor of AdvanceMe's construction.

**E.    "Smart Card"**

Defendants' proposed construction for the term "smart card" is improper because it

includes the phrase "that can be used to make purchase" that would make the recitation of "as

payment" portion of claims 1 and 10 superfluous.  It is improper to construe one term such that it

renders other claims terms superfluous. Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,

214 F.3d 1302, 1307 (Fed. Cir. 2000). Therefore, the Court should adopt AdvanceMe's

construction for the term "smart card."

**F.**  **"Customer Identifier," "Debit Card," "Accepting Means," "Accumulating the Payments…," "Accumulating Means"**

The Court is respectfully referred to Plaintiff's Opening Brief for Plaintiff's positions

regarding the elements: (1) "customer identifier" recited in claims 1-7 and 10-16; (2) "debit

card" recited in claims 3 and 12; (3) "accumulating the payments until a predetermined amount

is reached" recited in claims 8 and 17; (4) the various "accepting means" recited in claims 10 and

12-16; and (5) the "means for accumulating the payments until a predetermined amount is

reached" recited in claim 17 for the reasons supporting Plaintiff's constructions for each of these

elements.

**III.**  **CONCLUSION**

For all of the reasons presented in this Reply Brief and in the Opening Claim

Construction Brief, AdvanceMe respectfully requests that the Court adopt AdvanceMe's

constructions of each of the terms of the '281 Patent.


Date:  October 10, 2006            Respectfully submitted,

                                   By: _____ /s/ Ronald S. Lemieux _____
                                   PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                   Ronald S. Lemieux
                                   (CA Bar No. 120822) (Admitted Pro Hac Vice)
                                   Five Palo Alto Square, Sixth Floor
                                   Palo Alto, CA  94306-2155
                                   Telephone: (650) 320-1800
                                   Telecopier: (650) 320-1900
                                   Email:  ronlemieux@paulhastings.com

IRELAND, CARROLL & KELLEY, P.C.
Otis W. Carroll, Attorney-in-Charge
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
6101 South Broadway, Suite 500
Tyler, TX 75703
Telephone: 903-561-1600
Facsimile: 903-581-1071
Email: fedserv@icklaw.com

**ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.**

LEGAL_US_W #5455701.2v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record or parties will be served by facsimile transmission and/or first class mail this 10th day of October, 2006.

_____/s/_____
Rosemary Jones-Shine