**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **ADVANCEME, INC.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 6:05-CV-424 (LED)** |
| **RAPIDPAY, LLC, BUSINESS CAPITAL** | § | |
| **CORPORATION, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| **ADVANCEME, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CAUSE NO. 6:06-CV-082 (LED)** |
| **v.** | § | |
| | § | |
| **AMERIMERCHANT, LLC,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**<u>DEFENDANTS' MOTION TO COMPEL</u>**

759291v.3

Dockets.Justia.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    BACKGROUND ...........................................................................................2

II.    PLAINTIFF HAS FAILED TO PRODUCE ANY INTERNAL DOCUMENTS.............3

    A.    Defendants Identify Relevant Documents in Plaintiff's Possession.......................4

    B.    Plaintiff Must Immediately Produce All Relevant Documents ............................6

        1.    Plaintiff Must Immediately Produce all Relevant Documents
        Contained on its Back-up Tapes ..................................................7

        2.    Plaintiff Must Immediately Produce Complete *Angrisani*
        Deposition Transcripts ...............................................................10

III.    PLAINTIFF IGNORES DEFENDANTS' INTERROGATORY......................................12

IV.    PLAINTIFF REFUSES TO PROVIDE A 30(b)(6) WITNESS .......................................14

V.    PLAINTIFF'S PRIVILEGE LOG PROVIDES NO INFORMATION ABOUT THE
ALLEGEDLY PRIVILEGED DOCUMENTS .................................................................17

VI.    CONCLUSION.............................................................................................................19

First Funds LLC, Reach Financial LLC, Merchant Money Tree, Inc., and AmeriMerchant, LLC ("Defendants") respectfully request that the Court order AdvanceMe, Inc. ("Plaintiff") (1) to produce all documents relevant to the claims or defenses of any party; (2) to respond completely to Defendants' sole interrogatory; (3) to appear at a deposition for each of the noticed FED. R. CIV. P. 30(b)(6) topics; and (4) to serve a privilege log that complies with FED. R. CIV. P. 26(b)(5).

Defendants have made every effort to resolve each of these issues with Plaintiff. As these repeated efforts have proved unsuccessful, Defendants are forced to seek the Court's intervention to obtain the discovery that Plaintiff is required to provide under the Court's Discovery Orders, the local Patent Rules, and the Federal Rules of Civil Procedure. Plaintiff's refusal to comply with its discovery obligations has already significantly prejudiced Defendants, and any further delay threatens to prevent their defense of these actions. For example: Plaintiff has refused to produce highly relevant documents and information related to its knowledge of the prior art identified in Defendants' preliminary invalidity contentions, all of which are relevant to Defendants' claims of invalidity and inequitable conduct; refused to respond to Defendants' interrogatory requesting all facts supporting Plaintiff's contention that the patent-in-suit is not invalid because of the prior art, thus preventing the narrowing of issues before the Court on summary judgment; refused to appear for a FED. R. CIV. P. 30(b)(6) deposition; and served on Defendants a privilege log containing such vague descriptions of documents that Defendants are unable to assess Plaintiff's assertions of privilege. Defendants request that the Court order Plaintiff to comply with its discovery obligations and impose appropriate sanctions on Plaintiff for its myriad violations of the Court's Discovery Orders, the Court's Patent Rules, and the Federal Rules of Civil Procedure.

1

## I.  **BACKGROUND**

Though Plaintiff filed the first of these two actions over a year ago, <u>it has failed to produce even one single internal document</u>.  Plaintiff has claimed that *all* documents within its possession, custody, or control – other than the produced prosecution histories, publicly available articles, and selected portions of deposition transcripts from a separate case – are either privileged or irrelevant.  Additionally, Plaintiff has only recently informed Defendants that documents are stored on 48 back-up tapes, although it has refused to search the back-up tapes for relevant documents or provide any information to Defendants regarding the tapes.[1]  Plaintiff's production consists of roughly 9,000 pages of duplicate copies of prosecution histories, publicly available articles, and out-of-context excerpts of depositions from a different litigation involving Plaintiff.  That a plaintiff in a patent suit would not have *any* relevant internal documents within its possession, custody, or control is unlikely; that this Plaintiff has absolutely no relevant internal documents is inconceivable.

The patent-in-suit was issued just over one year ago, on September 6, 2005.  Relevant documents, therefore, include documents created up to September 6th of last year.  Moreover, Plaintiff's entire business appears to be based on the patented invention, or some similar system or method.  That a business based on a patented invention would have no documents relevant to the patent is simply incredible.

Additionally, multiple former employees of Plaintiff have informed Defendants that: Plaintiff had knowledge of at least several of the invalidating prior art references identified in Defendants' preliminary invalidity contentions throughout prosecution of the patent-in-suit; numerous internal e-mail communications discussed this invalidating prior art; this invalidating

---

[1] Instead, Plaintiff has simply stated that such information is within the scope of the noticed 30(b)(6) deposition of Plaintiff, although Plaintiff has refused to provide a witness for the properly noticed 30(b)(6) topics, as explained *infra* Part IV.

prior art was discussed at numerous meetings of the Board of Directors of Plaintiff or its predecessors, at executive meetings of Plaintiff or its predecessors, at off-site leadership meetings of Plaintiff or its predecessors (for which notebooks with agendas were prepared), and at other meetings throughout prosecution; this invalidating prior art was included in Plaintiff's or its predecessors' written analyses of competitors during prosecution; and this invalidating prior art was analyzed in Plaintiff's or its predecessors' business plans. Neither these adverse documents nor any other internal documents have been produced by Plaintiff.

This disconnect between the documents that should exist and Plaintiff's lack of document production, along with Plaintiff's failure to respond properly to interrogatories and deposition notices and to provide a privilege log that complies with the Federal Rules, has forced Defendants to seek the Court's intervention.

II.    **PLAINTIFF HAS FAILED TO PRODUCE *ANY* INTERNAL DOCUMENTS**

Although Plaintiff has produced roughly 9,000 pages of documents in these actions,[2] its entire production consists of duplicate copies of publicly available prosecution histories, publicly available articles, publicly available print-outs of Defendants' web sites, and out-of-context excerpts of depositions from another litigation. Plaintiff has failed to produce even one single internal document in either action.

Despite Plaintiff's lack of production, it recently stated that it is continuing to undertake "exhaustive document collection efforts," although it has refused to inform Defendants what its

---

[2] On June 26, 2006, the deadline for initial production in the *Rapidpay* matter, Plaintiff produced roughly 1,500 pages of publicly available prosecution histories, publicly available articles, and print-outs of the *Rapidpay* Defendants' web sites. On August 21, 2006, Plaintiff produced to all Defendants nearly 1,000 pages of the publicly available prosecution history of the patent-in-suit. On August 22, 2006, Plaintiff produced, in the *AmeriMerchant* matter, a duplicate copy of what it had already produced in the *Rapidpay* matter on June 26, 2006, including roughly 1,500 pages of publicly available prosecution histories, publicly available articles, and web site print-outs. On August 31, 2006, Plaintiff produced nearly 3,000 pages of duplicate copies of the patent-in-suit's prosecution history. Finally, on September 30, 2006, Plaintiff produced roughly 2,100 pages of multiple copies of excerpts of deposition transcripts and the prosecution history of the parent of the patent-in-suit. Nowhere in any of these productions did Plaintiff include any internal documents.

efforts include, why these efforts have not yielded a single relevant internal document, or when these efforts will be complete. *See* Ex. U, October 30, 2006 letter from Hilary Preston to Michael Edelman.

    A.    <u>Defendants Identify Relevant Documents in Plaintiff's Possession</u>

Shortly after Plaintiff failed to produce any relevant internal documents by the June 26, 2006 deadline for initial production of documents in the *Rapidpay* action, Defendants began their quest to obtain all relevant documents from Plaintiff. *See* Ex. A, July 5, 2006 letter from Joseph Gray to Ronald Lemieux. In Defendants' letter, they identified specific relevant documents – including deposition transcripts from a litigation involving Plaintiff's alleged misrepresentations relating to the patents ("the *Angrisani* deposition transcripts"), memoranda, reports, minutes, or e-mail regarding any issue in these actions – that had been identified to Defendants by third parties as being in Plaintiff's possession, custody, or control. *Id*. Until then, Plaintiff had maintained that it did not have a single relevant, non-public document in its possession, custody, or control; however, after receiving Defendants' letter, Plaintiff admitted the existence and relevance of the *Angrisani* deposition transcripts.

Defendants also learned from third parties that patent prosecution was discussed extensively at Board of Directors Meetings, and so advised Plaintiff (Plaintiff had not yet even mentioned Board Meeting minutes). Nearly two months later, Plaintiff acknowledged that the Board Meeting minutes were relevant, but claimed that they were privileged in their entirety and would be listed on a forthcoming updated privilege log. *See* Ex. B, August 25, 2006 letter from Hilary Preston to Robert Matz.

Defendants later learned – again, from third parties – that Plaintiff should have in its possession, custody, or control numerous internal documents revealing its knowledge of prior art identified in Defendants' preliminary invalidity contentions, as set forth *supra* Part I. When

confronted with this information, Plaintiff has either feigned ignorance as to the relevance of documents revealing Plaintiff's knowledge of prior art that was not disclosed to the Patent Office ("The prior art that the Defendants have identified is not relevant to the claims . . . ."[3]) or characterized Defendants' request for all documents revealing Plaintiff's knowledge of the identified prior art as "absurdly overbroad."[4]   *See* Ex. C, August 31, 2006 letter from Robert Matz to Hilary Preston at 4; Ex. D, September 5, 2006 letter from Hilary Preston to Robert Matz at 2.  Plaintiff simply refuses to search for or produce all documents relevant to the claims and defenses in these actions.

On September 30, 2006 – after Defendants identified numerous relevant documents likely in Plaintiff's possession, custody, or control (that it had still not produced and after nearly 11 months after Plaintiff filed suit) – Plaintiff, for the first time, informed Defendants that it is "in possession of 48 back-up tapes that could be searched," but that it will not search them.[5]  Ex. E, September 30, 2006 letter from Robert Matz to Willem Schuurman, Joseph Gray, and Hilary Preston.

Defendants have thus been forced to discover and identify relevant documents in Plaintiff's possession, custody, or control before Plaintiff will even acknowledge their existence. And even then, Plaintiff will either (1) erroneously contend that such documents are irrelevant; (2) take the position that any such documents are located on back-up tapes that it refuses to search; or (3) place them on a privilege log with an incomplete and inadequate description so that

---

[3] Ex. G, October 10, 2006 letter from Michael Edelman to Joseph Gray at 2.
[4] Plaintiff also chastised Defendants for suggesting "for the very first time" that documents revealing Plaintiff's knowledge of the identified prior art references are relevant.  Ex. C, August 31, 2006 letter from Robert Matz to Hilary Preston.  Of course, it is not difficult to imagine that documents related to Defendants' defenses are relevant to the claims or defenses of any party to these actions, and the Court's Discovery Orders and Patent Rules make clear that Plaintiff has the obligation to produce all relevant documents without formal document requests.
[5] *See infra* Part II.B.1 (discussing Plaintiff's back-up tapes).

it is impossible for Defendants to assess Plaintiff's claims of privilege.[6]  Plaintiff's approach to discovery, therefore, appears to be to remain silent until Defendants learn about the existence of relevant documents from third parties, then find a way to ensure that Defendants never obtain the relevant, non-privileged information to which they are entitled.

      B.     <u>Plaintiff Must Immediately Produce All Relevant Documents</u>

Federal Rule of Civil Procedure 26(b)(1) and Local Rule CV-26(d) explain the low bar for determining relevance.  Plaintiff, however, appears to have taken the position that Defendants must discover and identify specific relevant documents before it is under an obligation to produce anything.  Plaintiff is mistaken.  In addition to all documents related to conception, inventorship, prosecution, or implementation of the patented invention, all documents that reveal any knowledge by Plaintiff of the prior art systems or methods identified by Defendants in their preliminary invalidity contentions, or similar systems and methods that existed prior to the filing date of the patent-in-suit, are relevant under FED. R. CIV. P. 26(b)(1) and Local Rule CV-26(d) and should have been produced by Plaintiff.  Indeed, any such documents may lead to identification of admissible evidence related to the validity of the patent-in-suit or Defendants' defense of inequitable conduct.[7]

It has been impossible to determine the standard of relevance employed by Plaintiff for prior art documents, because it has chosen to take the position that Defendants' proposed category of relevant prior art documents is "absurdly overbroad" rather than identify the standard of relevance it has employed in its search, if any, for relevant prior art documents.  *See* Ex. C, August 31, 2006 letter from Robert Matz to Hilary Preston at 4.  As Defendants have repeated throughout their efforts to obtain relevant documents from Plaintiff, they are seeking documents

---

[6] *See infra* Part V (discussing Plaintiff's inadequate privilege log).
[7] Plaintiff consistently attempts to apply the relevance inquiry only to Defendants' defense of inequitable conduct, although it fails to realize that prior art documents are additionally relevant to validity of the patent-in-suit.

759291v.3

relevant to prior art methods and systems "or to plaintiff's knowledge of that prior art." *See* Ex. D, September 5, 2006 letter from Hilary Preston to Robert Matz at 2. Plaintiff cannot explain how documents revealing its knowledge of the invalidating prior art that Defendants specifically allege Plaintiff withheld from the Patent Office with the intent to deceive is not relevant to the claims or defenses of any party to these actions.

Because of Plaintiff's lack of production of a single internal document related to the claims or defenses of any party, Defendants request that the Court order Plaintiff to immediately produce all such documents, consistent with the standard of relevance defined by FED. R. CIV. P. 26 and Local Rule CV-26(d). Relevant documents include, but are not limited to, the documents described above (of which Defendants have become aware from third parties) as well as the following categories of documents.

1.    *Plaintiff Must Immediately Produce all Relevant Documents Contained on its Back-up Tapes*

When recently revealing the existence of back-up tapes in Plaintiff's possession and informing Defendants of its refusal to search the tapes, Plaintiff stated that the back-up tapes are "stored in an old format which is not the same as the format currently used by" Plaintiff. Ex. E, September 30, 2006 letter from Robert Matz to Willem Schuurman, Joseph Gray, and Hilary Preston. And, Plaintiff contends, "Given the old format in which the tapes are stored and the huge costs involved in restoring and reviewing these documents, the information stored on these back-up tapes is not 'reasonably accessible' under Federal Rule of Civil Procedure 26(b)(2) (to take effect on December 1, 2006)." *Id*. at 2.

In response, Defendants requested additional information about the back-up tapes and the information they contain, including: (a) the time periods for which Plaintiff has backed up documents; (b) how often files were transferred to back-up tapes; (c) when files were transferred

to back-up tapes for each specific time period; (d) whether individual back-up tapes contain information for only particular months and/or years; and (e) whether all documents not backed up have been destroyed. *See* Ex. F, October 9, 2006 letter from Joseph Gray to Ronald Lemieux. Plaintiff refused to provide any additional information about the back-up tapes, instead stating that "we note that you have already noticed a deposition on topics relating to electronic documents." Ex. G, October 10, 2006 letter from Michael Edelman to Joseph Gray. However, as explained *infra* Part IV, Plaintiff has refused to make a witness available for the 30(b)(6) deposition and thus rendered it impossible for Defendants to obtain more information regarding Plaintiff's back-up tapes. Without any information regarding the back-up tapes, Defendants are unable to assess Plaintiff's accessibility claim, and Defendants are unable to determine the whereabouts of the numerous relevant documents identified to Defendants by third parties.

Plaintiff's only reason for not producing relevant information contained on the tapes is that it is not "reasonably accessible" under FED. R. CIV. P. 26(b)(2) (to take effect December 1, 2006). *See* Ex. E, September 30, 2006 letter from Robert Matz to Willem Schuurman, Joseph Gray, and Hilary Preston. The only support for Plaintiff's claim of inaccessibility is that the documents are not stored in the same format as that currently used by Plaintiff and would thus be expensive to restore. *Id.* Because Plaintiff bears the burden of establishing that discoverable material should not be produced, *see* FED. R. CIV. P. 26(b)(2), simply asserting that it would be expensive to restore the back-up tapes and refusing to provide any additional information regarding the tapes does not relieve Plaintiff of its discovery obligations.

Whether Plaintiff's back-up tapes should be searched, and their relevant contents produced, is controlled by comparing the burden on Plaintiff with the likely benefit of the discovery, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* FED. R. CIV. P. 26(b)(2). The burden on Plaintiff in producing the documents is nominal compared to the likely benefit of the discovery in resolving these actions.[8] Because Plaintiff is seeking, among other things, a permanent injunction preventing all Defendants from continuing a large, allegedly infringing, portion of their businesses, the issues at stake in these actions could not be more important. And because documents supporting Defendants' contention that Plaintiff withheld material prior art from the Patent Office during prosecution will render the patent-in-suit unenforceable, documents contained on Plaintiff's back-up tapes are absolutely necessary to resolve the issues in these actions.

Because Plaintiff has failed to produce a single internal document, and all such relevant documents have presumably either been transferred to these tapes or destroyed, just resolution of these actions requires that Plaintiff search its back-up tapes for all relevant documents. Defendants thus request that the Court order Plaintiff to immediately (1) provide information regarding the back-up tapes, including: the location of the back-up tapes, the categories of documents that are stored on the back-up tapes; when documents were transferred to each back-up tape; the time frame for creation of documents on each back-up tape; the format of documents stored on the back-up tapes; and how the contents of the back-up tapes are organized on the tapes, and (2) produce all relevant contents of the back-up tapes. Alternatively, Defendants request that the Court order Plaintiff to provide an exact duplicate of all back-up tapes for

---

[8] Plaintiff asserts that the costs involved in restoring the back-up tapes may "range from $130,000 to $1.3 million (depending upon the breadth of the search terms used)," although it fails to provide any other information regarding the restoration process or the search protocols used in determining this cost estimate. *See* Ex. E, September 30, 2006 letter from Robert Matz to Willem Schuurman, Joseph Gray, and Hilary Preston.

Defendants' restoration and review, with the agreement that if relevant documents are revealed, Plaintiff will bear the cost of Defendants' restoration and review.

       2.    *Plaintiff Must Immediately Produce Complete* Angrisani *Deposition Transcripts*

*Angrisani v. Capital Access Network, Inc.* et al. is an ongoing litigation in the United States District Court for the District of New Jersey (Civil Action No. 02-cv-3167) in which Frank Angrisani, Plaintiff's former Chief Executive Ofiicer, alleges that Plaintiff, among other things, fraudulently misrepresented and fraudulently concealed certain facts including those related to its patent.  During discovery in the *Angrisani* matter, at least four individuals were deposed and testified to facts relevant to the instant actions: Frank Angrisani, Les Falke (also a former Chief Executive Officer of Plaintiff), Marc Tesler (a member of Plaintiff's Board of Directors), and Gary Johnson (Plaintiff's founder, Chairman of Plaintiff's Board, and husband of the alleged inventor of the patent-in-suit).

<u>Two months</u> after Defendants learned from a third party that these relevant deposition transcripts were in Plaintiff's possession and advised Plaintiff of their knowledge, Plaintiff admitted the transcripts' relevance and produced a few out-of-context excerpts of those transcripts.[9]  Plaintiff contended that the depositions each consist of thousands of pages of transcripts (though later admitted that all depositions combined consist of approximately 1,100 pages), and demanded that Defendants provide search terms for locating relevant portions of those transcripts.  *Compare* Ex. C, August 31, 2006 letter from Robert Matz to Hilary Preston *with* Ex. G, October 10, 2006 letter from Michael Edelman to Joseph Gray.  Defendants consistently requested that Plaintiff simply produce a copy of the CD(s) containing the

---

[9] Because Plaintiff has designated all of these transcripts "Confidential: Outside Counsel Eyes Only" under the protective orders in these actions, Defendants have not attached the out-of-context excerpts produced by Plaintiff as an exhibit to this motion.  Defendants will be happy to provide these excerpts to the Court under seal if the Court would like to review them.

10

transcripts or a hard copy of the transcripts in their entirety to preserve context and eliminate the risk that relevant portions would not be produced. *See* Ex. F, October 9, 2006 letter from Joseph Gray to Ronald Lemieux.

Plaintiff, rather than simply producing the relevant transcripts, went to considerable effort to redact testimony that appears to be relevant and eliminate all context from the admittedly relevant portions. Plaintiff ultimately produced only 163 pages of testimony, nearly all of which contain unexplained redactions that appear to exclude relevant testimony. Plaintiff has removed all context from the admittedly relevant testimony – indeed, many of the 163 pages produced contain redactions both before and after admittedly relevant testimony on a single page.

Plaintiff has never explained why it believes it is less costly or less burdensome to develop a search protocol and redact over 85% of the transcripts than to simply produce the transcripts in their entirety. Nor has Plaintiff ever informed Defendants of the search protocol used in determining which portions of the transcripts are relevant. If confidentiality is a concern, this Court has entered protective orders in both cases to ensure proper handling of such information. And Plaintiff has never contended that any of the transcripts contain privileged material. Considering the fact that Plaintiff has willingly produced over 9,000 pages of multiple copies of prosecution histories and multiple copies of publicly available articles, any claim by Plaintiff that production of an additional 1,100 pages of deposition transcripts that admittedly contain relevant information is burdensome cannot be credited.

III.    **PLAINTIFF IGNORES DEFENDANTS' INTERROGATORY**

Defendants served a single amended interrogatory on Plaintiff September 26, 2006 (attached hereto as Ex. H).[10]  Defendants' Amended Interrogatory No. 1 states:

> For each of the LeCard Prior Art, Litle & Co. Prior Art, and First USA Prior Art identify [1] every element in both of the asserted independent claims of the '281 Patent (Claims 1 and 10) that is not disclosed in these three prior art references and [2] state all facts supporting Plaintiff's contention that these identified pieces of prior art do not anticipate every element of both asserted independent claims of the '281 Patent (Claims 1 and 10).

*Id*.  Plaintiff's purported objections and response were served November 1, 2006, more than 30 days after service.  *See* Ex. I, November 1, 2006 e-mail from Christina Henderson to Defendants' counsel.[11]  Because Plaintiff failed to serve objections or responses within 30 days of service, Plaintiff failed to timely object and thus waived all purported objections.  *See* FED. R. CIV. P. 33(b).  Nevertheless, Plaintiff's non-responsive response to Defendants' interrogatory was made subject to improper objections.  *See* Ex. J, Plaintiff's Objections and Response to Defendants' Amended First Set of Interrogatories.

Additionally, Plaintiff refuses to provide the information requested by Defendants' Amended Interrogatory Number 1.  As clearly stated in the definitions accompanying Defendants' Interrogatory, the phrases "LeCard Prior Art," "Litle & Co. Prior Art," and "First USA Prior Art" refer to the prior art references identified in Exhibits 1, 6, and 3 of Defendants' Second Amended Invalidity Contentions, respectively.  *See* Ex. H, Defendants' Amended First Set of Interrogatories to Plaintiff; Ex. K, Defendants' Second Amended Preliminary Invalidity

---

[10] *See* Ex. O, October 4, 2006 letter from Robert Matz to Hilary Preston (acknowledging that Defendants' Amended Interrogatory Number 1 was served on September 26, 2006).

[11] Robert Matz, counsel for Plaintiff, represented in an e-mail on November 1, 2006 that the objections and responses were served October 31, 2006 via email and U.S. mail, although the only objections and responses Defendants received appeared in the November 1, 2006 e-mail from Christina Henderson, after Defendants' asked Plaintiff on November 1, 2006 when they could expect a response.  Regardless, Plaintiff failed to object within 30 days of service of Defendants' Amended Interrogatory.

Contentions (excluding Exhibits 2, 4, and 5).[12]   The three prior art references identified in Exhibits 1, 6, and 3, as shown in Ex. K, are the identified prior art systems and methods publicly and commercially employed by Clever Ideas-LeCard, Inc., Litle & Company, and First USA in the early 1990s.   As Plaintiff acknowledges, Defendants' Second Amended Invalidity Contentions make clear that Defendants' invalidity defense is based in part on 35 U.S.C. § 102(b) public use.  *See* Ex. K, Defendants' Second Amended Invalidity Contentions (excluding Exhibits 2, 4, and 5); Ex. J, Plaintiff's Objections and Responses to Defendants' Amended First Set of Interrogatories to AdvanceMe at 10 (acknowledging "Defendants' other invalidity defense based upon alleged public use . . . .").

Plaintiff's response, however, appears to address only the *documents cited* in Defendants' preliminary invalidity contentions, rather than the prior art references themselves.   Those documents simply corroborate third party testimony regarding, and Defendants' descriptions of, the prior art references identified in Exhibits 1, 6, and 3 of their preliminary invalidity contentions; Defendants have never relied exclusively on the prior art publications as defining the invalidating prior art references.   It merely addresses Plaintiff's unilateral interpretation of these corroborating documents, ignoring the full description of these references provided in the Defendants' invalidity contentions and the third party testimony (of witnesses intimately familiar with the operation of the prior art systems and methods).[13]   This testimony is directly contrary to Plaintiff's feigned misunderstanding of the corroborating documents and directly supports Defendants' descriptions of the prior art references in Exhibits 1, 6, and 3.

---

[12] This version of Defendants' preliminary invalidity contentions is entitled "Defendants' Second Amended Preliminary Invalidity Contentions" in the *Rapidpay* matter and "AmeriMerchant's Amended Preliminary Invalidity Contentions" in the *AmeriMerchant* matter.

[13] Depositions of both Tim Litle (founder of Litle & Co.) and Lee Suckow (president of Clever Ideas) have been taken about these respective prior art references.

13

In other words, Plaintiff appears to respond only to "which elements does Plaintiff contend are not disclosed in the corroborating documents cited in Defendants' Second Amended Preliminary Invalidity Contentions" – and not to the interrogatory served by Defendants. Plaintiff's transparent attempt to avoid revealing that it has no basis whatsoever for contending that the prior art references identified by Defendants (and supported by third party testimony given in these actions) do not invalidate all relevant claims of the patent-in-suit must be rejected. To date, Plaintiff has even refused to provide an explanation for its non-responsive response to Defendants' interrogatory. *See* Ex. R, November 3, 2006 letter from Joseph Gray to Michael Edelman.[14]

Defendants request that the Court compel Plaintiff to immediately provide a complete response to Defendants' sole interrogatory, without objection, or, alternatively, limit Plaintiff's opposition to Defendants' invalidity defenses based on these three prior art references to only those facts included in Plaintiff's response supporting Plaintiff's contention that those prior art references do not anticipate every element of both independent claims.

## IV.  **PLAINTIFF REFUSES TO PROVIDE A 30(b)(6) WITNESS**

On October 4, 2006, Defendants noticed the FED. R. CIV. P. 30(b)(6) deposition of Plaintiff on 22 topics. *See* Ex. L, Notice of Deposition of AdvanceMe, Inc. Plaintiff objected to some of the noticed topics, and after several letters, the parties resolved many of Plaintiff's objections. However, Plaintiff continues to refuse to provide a witness on several properly

---

[14] Plaintiff sent a letter to Defendants on November 10, 2006, after the date by which Defendants requested a response regarding Plaintiff's failure to respond to Defendants' interrogatory, requesting "additional time" to respond to certain issues raised in Defendants' letters to Plaintiff. *See* Ex. S, November 10, 2006 letter from Robert Matz to Joseph Gray. However, Plaintiff failed to propose a date by which it would respond or explain why Plaintiff had initially refused to respond to Defendants' interrogatory. Ex. T, November 10, 2006 e-mail from Joseph Gray to Robert Matz. Defendants have thus exhausted the meet and confer process, and Plaintiff has left Defendants no option but to seek relief from the Court.

noticed topics and improperly conditions its appearance for a deposition on *any* topics on Defendants' withdrawal of certain topics.

The two outstanding issues regarding the 30(b)(6) deposition of Plaintiff are set forth in Michael Edelman's November 7, 2006 letter to Joseph Gray, attached hereto as Ex. P:[15]   (1) Plaintiff refuses to produce a witness on topics 4-6, 8-10, and 22 on the apparent basis that these topics might call for both non-privileged and privileged information; (2) Plaintiff refuses to produce a witness to testify about factual bases, if any, for distinguishing the prior art from the claimed invention.  Both arguments are unfounded.

First, Plaintiff contends that it will not prepare or provide a witness to testify on Topics 4-6, 8-10, and 22 because it believes they call for privileged information.  *See id*.  However, Defendants have made clear that they are not seeking privileged information, and that Plaintiff's counsel may simply object to any question that calls for privileged information during the deposition.  *See* Ex. M, October 31, 2006 letter from Joseph Gray to Michael Edelman.  Plaintiff insists that, because it believes that these topics may call for privileged information, it is under no obligation to prepare a witness on the *non-privileged* information within their scope.

While portions of Topics 4-6, 8-10, and 22 may call, in part, for privileged information, they also call for substantial non-privileged information.  *See* Ex. L, Notice of Deposition of AdvanceMe, Inc.  Such non-privileged information includes, for example (and without limiting the non-privileged scope of the noticed topics):

- Topic 4: Any information provided to attorneys involved in prosecution with the intent that such information be communicated to the Patent Office.
- Topic 5: Any information regarding prior art provided to attorneys involved in prosecution with the intent that such information be communicated to the Patent Office.

---

[15] Plaintiff's letter reflects additional objections, although the parties have since resolved those objections.

- <u>Topic 6</u>: Identification of individuals who communicated with attorneys involved in prosecution of the patents.

- <u>Topic 8</u>: Identification of individuals with authority to make decisions relating to the prosecution of the patents and the duration of that authority.

- <u>Topic 9</u>: Identification of individuals having any involvement or participation in the prosecution of the patents.

- <u>Topic 10</u>: Any decisions made by persons with authority to make decisions regarding the prosecution of the patents that were not at the direction of attorneys involved in prosecution of the patents.

- <u>Topic 22</u>: Identification of which individuals the 30(b)(6) witness contacted, and which documents the witness reviewed, in preparing to provide testimony on each noticed topic.

Defendants request that the Court order Plaintiff to make a witness available to testify to non-privileged information responsive to each of these topics.

Second, Plaintiff improperly claims that Plaintiff is not obligated to present a witness on Topics 11-15. *See* Ex. P, November 7, 2006 letter from Michael Edelman to Joseph Gray. These topics cover the factual bases, if any, for distinguishing prior art from the patented invention and the features, if any, of the patented invention that are not within the prior art. Plaintiff argues that these topics call for the witness to interpret the claims of the patent and compare each claim to the prior art. As the Court will see in Ex. P, Plaintiff misreads the topics as noticed and is again attempting to avoid revealing that it has no factual basis for distinguishing the patented invention from the prior art. These topics do not ask for an element-by-element analysis of the prior art; they do not even refer to the patent claims. They simply cover differences, if any, of which Plaintiff is aware between the prior art and the alleged invention.

Although Defendants noticed the 30(b)(6) deposition of Plaintiff on October 4, 2006 and suggested multiple dates for that deposition, Plaintiff rejected all proposed dates and waited until five weeks later, November 7, 2006 to provide *any* available deposition dates to Defendants, and at that time provided only a single date <u>in December</u>, which is conditioned on Defendants'

withdrawal of properly noticed topics.  Defendants thus request that the Court order Plaintiff to *immediately* make a witness available for deposition on *all* noticed topics.

V.    **PLAINTIFF'S PRIVILEGE LOG PROVIDES NO INFORMATION ABOUT THE ALLEGEDLY PRIVILEGED DOCUMENTS**

Federal Rule of Civil Procedure 26(b)(5) states that a party asserting a privilege "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  Plaintiff's September 30, 2006 privilege log (attached hereto as Ex. N) fails to even attempt to provide descriptions of allegedly privileged documents that would enable Defendants to assess the applicability of privilege.[16] Indeed, it appears that Plaintiff purposefully provided descriptions that are so vague that it is impossible to determine whether any of the listed documents are subject to a proper claim of privilege.  Defendants thus request that the Court order Plaintiff to provide a privilege log that complies with FED. R. CIV. P. 26(b)(5).

After Defendants learned from third parties about the existence of relevant Board Meeting minutes and informed Plaintiff that it was aware of these documents, Plaintiff eventually informed Defendants of its claim that all of the Board Meeting minutes are privileged in their entirety and would be reflected on an updated privilege log.  *See* Ex. B, August 25, 2006 letter from Hilary Preston to Robert Matz.  However, Plaintiff's updated privilege log, served September 30, 2006, provides descriptions of allegedly privileged documents and communications (including Board Meeting minutes) that are so vague and incomplete that it is

---

[16] In addition to consistently requesting that Plaintiff provide Defendants with a privilege log complying with the requirements of FED. R. CIV. P. 26(b)(5) since July 2006, Defendants outlined the myriad privilege log deficiencies in a letter to Plaintiff's counsel dated November 3, 2006.  *See* Ex. Q, November 3, 2006 letter from Joseph Gray to Michael Edelman.  Similar to Plaintiff's approach to Defendants' letter requesting a complete interrogatory response, Plaintiff refused to provide a response or remedy the issue by the date requested in Defendants' letter. Plaintiff's dilatory tactics have already significantly prejudiced Defendants, thus Defendants are forced to seek Court intervention to compel Plaintiff to comply with its discovery obligations.

impossible for Defendants to assess Plaintiff's claims of privilege.  *See* Ex. N, Plaintiff's privilege log.

For example, Plaintiff's privilege log describes all Board Meeting minutes merely as "Minutes of Meeting of Board of Directors reflecting client confidences communicated to W. Durkin III, Esq. in connection with a request for legal services and legal advice." *Id.* at 9-12, 17, and 18.  Such a description does not reflect the subject matter that was discussed or for which subjects the attorney was providing legal versus business advice or for which the attorney was not a participant.  Presumably, a wide range of business topics are discussed at meetings of the Board of Directors, although Plaintiff seemingly believes that an attorney's presence at such a meeting, alone, renders the entire meeting privileged.

Plaintiff itself has acknowledged that more detailed information than that contained in its privilege log is necessary to assess a claim of privilege, stating that such a determination would require: "what was discussed at these meetings, how these meetings were conducted, and who attended these meetings (and for what purpose)."  Ex. C, August 31, 2006 letter from Robert Matz to Hilary Preston.  Yet Plaintiff has not provided this information.

Plaintiff's privilege log further fails to comply with the requirement of FED. R. CIV. P. 26(b)(5) by identifying documents as "attorney notes," though the purported author is not an attorney, *see* Ex. N at 14, by including facsimiles without a recipient, *see* Ex. N at 15, and by including documents without a distribution list (and meeting minutes without an attendee list), *see* Ex. N at 9-12, 17, and 18.

Defendants thus request that the Court order Plaintiff to serve a privilege log that complies with the requirements of FED. R. CIV. P. 26(b)(5).  Plaintiff should provide all information for each allegedly privileged document that it acknowledges is necessary to assess

759291v.3

Plaintiff's claim of privilege, including: (1) a detailed list of all subject matter(s) contained within the documents or discussed at the meetings; (2) all recipients of documents and attendees of meetings; and (3) each attendee's purpose in attending each meeting for each topic discussed.

## VI.    **CONCLUSION**

Despite Defendants' attempts to resolve each of the above issues, Plaintiff has refused to comply with its obligations under the Court's Discovery Orders, the Patent Rules, and the Federal Rules of Civil Procedure.  For the reasons set forth herein, Defendants respectfully request that the Court enter an order to compel:

1.  Plaintiff's production of all documents relevant to the claims or defenses of any party, including all relevant documents located on Plaintiff's back-up tapes and complete *Angrisani* deposition transcripts;

2.  Plaintiff's complete response to Defendants' interrogatory or, alternatively, that the Court order that Plaintiff's opposition to Defendants' invalidity defenses based on these three prior art references is limited to only those facts contained in Plaintiff's current response;

3.  Plaintiff's immediate appearance for a deposition on all of the noticed FED. R. CIV. P. 30(b)(6) topics; and

4.  Plaintiff's service of a privilege log that complies with FED. R. CIV. P. 26(b)(5).

Defendants also request that the Court impose appropriate sanctions on Plaintiff for its flagrant non-compliance with its discovery obligations in these actions.

759291v.3

November 13, 2006

Respectfully submitted,

*/s/ Joseph Gray*
William G. Schuurman
Texas State Bar No. 17855200
bschuurman@velaw.com
Joseph D. Gray
Texas State Bar No. 24045970
jgray@velaw.com
**VINSON & ELKINS L.L.P.**
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone: 512.542.8400
Facsimile: 512.236.3476

Hilary L. Preston
hpreston@velaw.com
**VINSON & ELKINS L.L.P.**
666 Fifth Avenue – 26th Floor
New York, NY 10103
Telephone: 212.237.0000
Facsimile: 212.237.0100

Douglas R. McSwane, Jr.
State Bar No. 13861300
**POTTER MINTON**
A Professional Corporation
110 N. College
500 Plaza Tower (75702)
P.O. Box 359
Tyler, Texas 75710
Telephone: 903.597.8311
Facsimile: 903.593.0846
E-mail: dougmcswane@potterminton.com

*Counsel for Defendants First Funds LLC, Merchant Money Tree, Inc., Reach Financial, LLC, and AmeriMerchant, LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of November, 2006.  Any other counsel of record will be served by first class mail on this same date.

*/s/ Joseph Gray*
Joseph Gray

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Defendants has conferred with counsel for Plaintiff regarding the substance of this motion in a good faith attempt to resolve the matter without court intervention.  Plaintiff is OPPOSED to the relief sought herein.

*/s/ Joseph Gray*
Joseph Gray

759291v.3

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | July 5, 2006 Letter from Joseph Gray to Ronald Lemieux |
| B | August 25, 2006 Letter from Hilary Preston to Robert Matz |
| C | August 31, 2006 Letter from Robert Matz to Hilary Preston |
| D | September 5, 2006 Letter from Hilary Preston to Robert Matz |
| E | September 30, 2006 Letter from Robert Matz to Willem Schuurman, Joseph Gray and Hilary Preston |
| F | October 9, 2006 Letter from Joseph Gray to Ronald Lemieux |
| G | October 10, 2006 Letter from Michael Edelman to Joseph Gray |
| H | Defendants' Amended First Set of Interrogatories to Plaintiff AdvanceMe, Inc. |
| I | November 1, 2006 E-mail from Christina Henderson to Defendants' counsel |
| J | Plaintiff AdvanceMe, Inc.'s Objections and Response to Defendants' Amended First Set of Interrogatories to Plaintiff AdvanceMe, Inc. |
| K | Defendants' Second Amended Invalidity Contentions (excluding Exhibits 2, 4 and 5) |
| L | Notice of Deposition of AdvanceMe, Inc. |
| M | October 31, 2006 Letter from Joseph Gray to Michael Edelman |
| N | AdvanceMe, Inc.'s Privilege Log |
| O | October 4, 2006 Letter from Robert Matz to Hilary Preston |
| P | November 7, 2006 Letter from Michael Edeleman to Joseph Gray |
| Q | November 3, 2006 Letter from Joseph Gray to Michael Edelman regarding document production |
| R | November 3, 2006 Letter from Joseph Gray to Michael Edelman regarding interrogatory response |
| S | November 10, 2006 Letter from Robert Matz to Joseph Gray |

| Exhibit | Description |
|---------|-------------|
| T | November 10, 2006 E-mail from Joseph Gray to Robert Matz and Michael Edelman |
| U | October 30, 2006 Letter from Hilary Preston to Michael Edelman |