# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **ADVANCEME, INC.** | § | |
|      *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **RAPIDPAY, LLC, BUSINESS CAPITAL** | § | |
| **CORPORATION, FIRST FUNDS LLC,** | § | **CAUSE NO. 6:05-CV-424 LED** |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH** | § | |
|      *Defendants*. | § | |
| **ADVANCEME, INC.,** | § | |
|      *Plaintiff*, | § | |
| **v.** | § | |
| | § | **CAUSE NO. 6:06-CV-0082 LED** |
| **AMERIMERCHANT, LLC,** | § | **JURY TRIAL DEMANDED** |
|      *Defendant.* | § | |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO COMPEL

**TABLE OF CONTENTS**

I. BACKGROUND ........................................................................................................1

II. PLAINTIFF CONTINUES TO REFUSE TO PRODUCE ALL RELEVANT
    DOCUMENTS..........................................................................................................2

   A. Plaintiff Produces Previously Withheld Documents in Response to
      Defendants' Motion to Compel ..................................................................5

   B. Plaintiff Refuses to Provide the Court or Defendants Any Information
      About the Contents of its Backup Tapes....................................................6

   C. Plaintiff's Handling of the *Angrisani* Deposition Transcripts Provides Yet
      Another Example of Plaintiff's Discovery Gamesmanship.......................8

III. PLAINTIFF CONTINUES TO IMPROPERLY PREVENT DEFENDANTS'
     30(b)(6) DEPOSITION OF PLAINTIFF................................................................9

IV. PLAINTIFF'S OPPOSITION REVEALS ITS MOTIVE FOR AVOIDING
    DEFENDANTS' INTERROGATORY: IT HAS NO BASIS FOR
    DISTINGUISHING THE CLAIMS FROM THE PRIOR ART .........................11

V. PLAINTIFF'S PRIVILEGE LOG PROVIDES NO INFORMATION ABOUT
   THE ALLEGEDLY PRIVILEGED DOCUMENTS...........................................13

VI. DEFENDANTS REQUEST A HEARING ON THEIR MOTION ...................15

VII. CONCLUSION....................................................................................................15

Defendants First Funds, LLC, Merchant Money Tree, Inc., Reach Financial, LLC, and AmeriMerchant, LLC ("Defendants") hereby file their Reply in Support of their Motion to Compel and, in support hereof, would respectfully show the Court as follows:

## I.    BACKGROUND

Plaintiff's evasive Opposition to Defendants' Motion to Compel ("Plaintiff's Opposition") reveals the absence of any legitimate explanation for Plaintiff's refusal to comply with its discovery obligations in these actions. Plaintiff avoids addressing the actual issues raised by Defendants' Motion to Compel ("Defendants' Motion"), and instead focuses on its unfounded complaint that Defendants failed to meet and confer over those issues.[1] For the reasons set forth in Defendants' Motion and herein, the Court should end Plaintiff's egregious crippling of the discovery process and grant Defendants' Motion.

As explained in Defendants' Motion, Plaintiff's dilatory tactics are severely hampering Defendants' defense of these actions. Since it filed suit, Plaintiff has consistently refused to produce relevant internal documents, arguing that the only relevant documents in its possession, custody, or control are duplicate copies of prosecution histories and publicly available articles. *See* Defendants' Motion at 2. In response to Defendants' Motion, Plaintiff produced a few marginally relevant internal documents, thus ending its one-year charade that it has no relevant internal documents. However, *none* of the recently produced documents is responsive to the categories of documents identified in Defendants' Motion, and Plaintiff's failure to produce all relevant documents continues. *See* Defendants' Motion at 2-6.

---

[1] In addition to Defendants having exhausted the meet and confer process for the issues raised in their Motion, the specious arguments raised in Plaintiff's Opposition reveal the parties' need for the Court to resolve the issues raised by Defendants' Motion.

Plaintiff's grossly inadequate production – which it champions for the number of pages and not its substance – in conjunction with Plaintiff's refusal to provide a 30(b)(6) witness, its refusal to respond to Defendants' interrogatory, and its refusal to provide a privilege log that complies with the Federal Rules, has prevented Defendants from fully developing their defenses. Without documents revealing who was substantively involved in prosecution of the patent-in-suit, without a 30(b)(6) deposition of Plaintiff, and without the prior art documents identified to Defendants by third parties, Defendants are unable to proceed with additional critical discovery.[2] Plaintiff, perhaps realizing that discovery into its knowledge of the prior art will reveal inequitable conduct, has apparently decided to stonewall Defendants in every aspect of discovery in an attempt to conceal these facts. With the close of discovery looming, Plaintiff has thus far been successful in preventing Defendants from obtaining <u>any</u> meaningful discovery from Plaintiff, which unfortunately necessitates the Court's intervention. Defendants thus respectfully request that their Motion to Compel be granted.

## II.   PLAINTIFF CONTINUES TO REFUSE TO PRODUCE ALL RELEVANT DOCUMENTS

In their Motion, Defendants identify several categories of highly relevant documents that have not been produced by Plaintiff. *See* Defendants' Motion at 2-6. In its Opposition, however, Plaintiff refuses to address the whereabouts of these highly relevant documents or explain how it possibly contends that they are not relevant to the claims or defenses in these actions. Plaintiff additionally fails to address why it failed to produce a single internal document within the <u>first year</u> after it filed suit; why it never so much as mentioned the relevant documents that were

---

[2] For example, Defendants are unable to take the depositions of the individuals involved in patent prosecution or depositions of Plaintiff's employees who had extensive knowledge of the prior art, because Plaintiff has not produced documents revealing the identity of these individuals and refuses to appear for a 30(b)(6) deposition with topics directed precisely at this information.

added to its privilege log before they were identified by Defendants; or why it believes it is Defendants' responsibility to identify specific relevant documents to Plaintiff.

Rather than addressing these or other issues raised by Defendants' Motion, Plaintiff chooses to pat itself on the back for allegedly conducting a "whole new search" that it claims it was "not required to do." Plaintiff's Opposition at 4. However, Plaintiff cites no authority for a party satisfying its discovery obligations by conducting a single incompetent search for relevant documents; the Discovery Orders in place in these actions require that "without awaiting a discovery request, each party shall provide to every other party . . . a copy of all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses in this action." Discovery Order at ¶ 2(a).

Moreover, Plaintiff's attempt to place the burden on Defendants to identify relevant documents for which Plaintiff must search is a prime example of Plaintiff's improper repudiation of its discovery obligations in these actions. Regardless of whether Defendants request specific relevant documents, the Discovery Orders require Plaintiff to produce *all* relevant documents. Plaintiff attempts to excuse its failure to produce all relevant documents by arguing that "the only documents that Defendants claimed were relevant were documents relating to the '281 Patent, such as the patent file history or internal documentation at AdvanceMe relating to the patent." Plaintiff's Opposition at 2. Such a position is absurd. In addition to the Discovery Orders' requirement that Plaintiff produce all relevant documents without a document request, Defendants have specifically alleged invalidity of the patent-in-suit and inequitable conduct, and served extensive preliminary invalidity contentions, which obligate Plaintiff to produce all documents related to Plaintiff's knowledge of material prior art, including the prior art identified in Defendants' preliminary invalidity contentions, as well as all other documents relevant to the

claims or defenses of any party to these actions.[3]  *See*, *e.g.*, Ex. B to Defendants' Motion, August 25, 2006 letter from Hilary Preston to Robert Matz.

The crux of the parties' dispute, as explained in Defendants' Motion at 6-7 and avoided by Plaintiff in its Opposition, centers on the parties' disagreement as to the meaning of "relevance." Defendants' position is that the term encompasses, among other things, all documents revealing *any* knowledge by Plaintiff of the systems or methods employed by the prior art references identified in Defendants' preliminary invalidity contentions.

Plaintiff mistakenly believes that only smoking gun documents satisfy the Federal Rules' and Local Rule CV-26(d)'s standard of relevance. For example, Plaintiff claims that its "second search located documents referencing certain companies such as Transmedia, but without [1] any connection between such companies and the '281 Patent, and [2] without any acknowledgement these alleged competitors were performing the same inventions as contained in the patent . . . ." Plaintiff's Opposition at 5. Similarly, Plaintiff identifies "nefarious discussions about withholding prior art" and "discussions about how competitors had previously performed the inventions in the '281 Patent" as constituting the scope of relevant documents. Plaintiff's Opposition at 11. But all documents revealing *any* knowledge by Plaintiff of these systems or methods are reasonably calculated to lead to the discovery of admissible evidence and should be produced – including documents discussing the cash advances or other products offered by the entities identified in Defendants' preliminary invalidity contentions prior to the filing date of the '281 Patent, documents discussing how the cash advances were repaid to Plaintiff's competitors,

---

[3] Plaintiff also misrepresents Defendants' position on the relevance of prior art documents. Rather than claiming that Plaintiff must produce every document that "so much as *mentioned* any of the" prior art references, *see* Plaintiff's Opposition at 3 (emphasis in original), Defendants have consistently requested that Plaintiff produce, in addition to all other documents relevant to the claims or defenses of any party to these actions, all documents that reveal *Plaintiff's knowledge of the prior art systems or methods identified in Defendants' preliminary invalidity contentions*. *See* Ex. D to Defendants' Motion, September 5, 2006 letter from Hilary Preston to Robert Matz at 2. Rather than search for such documents, Plaintiff has chosen to argue about how "absurdly overbroad" a hypothetical category would be.

-4-

or other internal documents revealing Plaintiff's knowledge of these competitors.[4]  Plaintiff's feigned belief that the documents must be so dramatic as to be self-contained admissions of inequitable conduct is simply inconsistent with the Federal Rules and Local Rule CV-26(d), and Plaintiff has thus far relied on this feigned belief to conceal relevant documents.

Defendants respectfully request that the Court order Plaintiff to produce *all* documents relevant to the claims or defenses of any party, applying the standard of relevance dictated by the Federal Rules and Local Rule CV-26(d), including but not limited to the specific categories of documents identified in Defendants' Motion at 2-6 and all documents revealing Plaintiff's knowledge of any aspect of the prior art systems and methods identified in Defendants' preliminary invalidity contentions.

### A.    Plaintiff Produces Previously Withheld Documents in Response to Defendants' Motion to Compel

Because Plaintiff has no justifiable explanation for failing to produce any relevant internal documents before Defendants filed their Motion, it appears to have conducted a haphazard search after Defendants filed their Motion in an attempt to convince the Court that it has "bit[ten] the bullet" and produced all documents relevant to the claims or defenses of the parties in these actions.  *See* Plaintiff's Opposition at 4.  Such an attempt should be rejected.

Contrary to Plaintiff's statements in its Opposition, Plaintiff never informed Defendants that it was conducting a "second" search for documents.  *See* Plaintiff's Opposition at 4-5. Instead, Plaintiff simply stated that it "has conducted, and is continuing to conduct, a diligent search for all" relevant documents, Ex. E to Defendants' Motion, and that its "search is

---

[4] Plaintiff also mistakenly believes that only prior art documents in the possession of those individuals involved in the prosecution of the '281 Patent are relevant.  *See* Plaintiff's Opposition at 3.  While such documents are clearly relevant, so are any and all documents in the possession of *Plaintiff* that reveal any of *Plaintiff's* knowledge of the prior art.  Indeed, all such documents are reasonably calculated to lead to the discovery of admissible evidence.

continuing, and it has not yet been exhausted," Ex. G to Defendants' Motion.[5] Notably, when Defendants asked Plaintiff to explain what its continued "exhaustive document collection efforts" entailed, Plaintiff simply refused to respond. *See* Ex. A to Gray Declaration in Support of Defendants' Reply in Support of their Motion to Compel ("Gray Declaration"), October 30, 2006 letter from Hilary Preston to Michael Edelman.[6]

Regardless, Plaintiff's search for relevant documents has failed to yield any of the highly relevant documents identified by third parties and explained in Defendants' Motion. And the fact that Plaintiff found, for the first time, relevant internal documents only after Defendants filed their Motion, definitively shows that Plaintiff failed to conduct a diligent search prior to Defendants' Motion.

### B. Plaintiff Refuses to Provide the Court or Defendants *Any* Information About the Contents of its Backup Tapes

Plaintiff similarly attempts to skirt the back-up tape issue by relying solely on a vendor's cost estimate for restoring the back-up tapes while steadfastly refusing to provide *any* information about the search protocol employed in the estimate or about the actual contents of the back-up tapes. Plaintiff's Opposition at 7-9; 11-13.[7] As Plaintiff is aware, the Court and Defendants *must* be informed of such necessary information in order to assess Plaintiff's claim that its 48 back-up tapes are immune from discovery. Because Plaintiff has failed to provide any

---

[5] These two letters, Exs. E and G to Defendants' Motion, constitute the *only* documented support for Plaintiff's claim that it informed Defendants of its "second search." Robert Matz's Declaration in Support of Plaintiff's Opposition reiterates Plaintiff's misrepresentation, without identifying *any* correspondence between the parties or telephone conferences where the alleged "second search" was discussed.

[6] Similarly, Plaintiff's November 10, 2006 letter in response to Defendants' November 4, 2006 letter reiterating Plaintiff's numerous discovery failures (including *all* issues raised by Defendants' Motion) failed to even so much as mention its "continuing" search for relevant documents or the newly asserted "second search." *See* Ex. 8 to Plaintiff's Opposition.

[7] Plaintiff presumably possesses at least some information regarding the contents of the back-up tapes, given the fact that Plaintiff even maintains back-up tapes. Without any information, it would be impossible to retrieve any document without incurring $130,000 to $1.3 million, and the back-up tapes would be essentially useless.

support for its claim that the tapes are not "reasonably accessible" – and instead relies solely on a restoration estimate about which it provides absolutely no information while refusing to provide any information about the contents of the back-up tapes – Plaintiff has failed to carry its burden to show that the information on the back-up tapes is not reasonably accessible. *See* FED. R. CIV. P. 26(b)(2).

As an initial matter, Plaintiff argues that Defendants have "failed to establish relevance for the production of AdvanceMe's archived email communications." Plaintiff's Opposition at 12. This argument is confusing, given that Plaintiff, not Defendants, raised the issue of back-up tapes as a source of potentially relevant documents. *See* Ex. E to Defendants' Motion, September 30, 2006 letter from Robert Matz to Willem Schuurman, Joseph Gray, and Hilary Preston. Plaintiff, at least initially, must have believed the back-up tapes contained relevant information. Why else would they have alerted Defendants as to their existence?

Moreover, because Plaintiff has failed to produce *any* documents within the highly relevant categories identified by third parties and described in Defendants' Motion, *see* Motion at 2-6, these documents must have either been transferred to Plaintiff's back-up tapes, destroyed, or improperly withheld. Giving Plaintiff the benefit of the doubt, Defendants have proposed that Plaintiff restore and review the back-up tapes for such relevant documents.

Additionally, Plaintiff admits that it cannot show that the back-up tape contents are *not* relevant. Plaintiff asserts that "It is likely that [the back-up tapes] merely contain the same type of internal documents that AdvanceMe has already searched . . . ." *See* Plaintiff's Opposition at 12. In other words, Plaintiff incredibly admits that it is not even sure of the contents of its own back-up tapes while simultaneously asserting that all of their contents are "likely" irrelevant and/or duplicative. Plaintiff's inconsistent and confused argument regarding its back-up tapes

should be rejected, and the Court should order Plaintiff to immediately produce the listing of contents for each back-up tape so that the Court, Defendants, and Plaintiff can learn the contents of the tapes.

In order to accurately assess Plaintiff's claims regarding its back-up tapes, Defendants and the Court need, in addition to the listing of contents for each back-up tape, the information that Defendants have consistently requested since Plaintiff revealed the existence of its back-up tapes, including: (a) the time periods for which Plaintiff has backed up documents; (b) how often files were transferred to back-up tapes; (c) when files were transferred to back-up tapes for each specific time period;[8] (d) whether individual back-up tapes contain information for only particular months and/or years; and (e) whether all documents not backed up have been destroyed. *See* Defendants' Motion at 8; Ex. F to Defendants' Motion, October 9, 2006 letter from Joseph Gray to Ronald Lemieux.

Defendants respectfully request that the Court order Plaintiff to immediately: (1) search for and produce all relevant documents from its back-up tapes, and (2) provide the necessary information regarding its back-up tapes outlined above.

### C. Plaintiff's Handling of the *Angrisani* Deposition Transcripts Provides Yet Another Example of Plaintiff's Discovery Gamesmanship

As described in Defendants' Motion at 10-11, Defendants learned of the existence of relevant deposition transcripts from another litigation involving Plaintiff (the "*Angrisani* matter") and requested on July 5, 2006 that Plaintiff produce all relevant documents from that litigation. *See* Ex. A to Defendants' Motion, July 5, 2006 letter from Joseph Gray to Ronald Lemieux.

---

[8] If any of Plaintiff's back-up tapes contain relevant documents and were created after it began contemplating litigation, Plaintiff must bear the cost of restoration and production because the documents' relevance to the instant actions would have been apparent when they were created. *See* Quinby v. WestLB AG, No. 04 Civ. 7406-WHP-HBP, 2006 U.S. Dist. LEXIS 64531 (S.D.N.Y. September 5, 2006) (holding that several backup tapes had to be searched at the cost of the party producing the backup tapes because their relevance was apparent before storage). Realizing the impropriety of recently transferring relevant internal documents to "inaccessible" back-up tapes, Plaintiff continues to refuse to provide any information about their contents or date of creation.

-8-

However, two months after Defendants made this request, Plaintiff produced only out-of-context snippets of relevant testimony, claiming that such snippets were determined to be the only relevant portions of testimony after "a painstaking review of thousands [*sic* 1,100 pages] of pages of deposition testimony from that action."  *See* Plaintiff's Opposition at 6-7.  Plaintiff continues to fail to explain why it did not simply produce the entire deposition transcripts with an appropriate designation under this Court's Protective Orders so that Defendants would be able to decipher the admittedly relevant testimony and its context.[9]

Given that production of 1,100 pages of documents should cost no more than $100, Plaintiff's "painstaking review," which certainly included attorney time, resulted only in unnecessary expense for Plaintiff and production of unintelligible snippets of testimony to Defendants.  For the reasons set forth in Defendants' Motion at 10-11 and herein, Defendants respectfully request that the Court order Plaintiff to produce complete *Angrisani* deposition transcripts with an appropriate designation under the Protective Orders to alleviate Plaintiff's confidentiality concerns.

### III. PLAINTIFF CONTINUES TO IMPROPERLY PREVENT DEFENDANTS' 30(B)(6) DEPOSITION OF PLAINTIFF

Plaintiff's Opposition additionally reveals its lack of a good faith basis for refusing to provide a 30(b)(6) witness on all properly noticed topics.  For example, Plaintiff has refused to provide a witness to testify on Topic 22 because it incredibly claims that the entirety of Topic 22 calls for privileged information.  *See* Plaintiff's Opposition at 18.  Topic 22 of Defendants' Notice of 30(b)(6) Deposition of Plaintiff, Ex. L to Defendants' Motion, states: "Information describing steps taken by AdvanceMe to prepare each representative to testify as to the topics

---

[9] *See* Ex. B to Gray Declaration (examples of redacted *Angrisani* deposition testimony produced by Plaintiff). Additionally, Plaintiff's claim that it has produced all relevant testimony is suspect considering its misunderstanding of relevance as defined by the Federal Rules and explained *supra*.

listed in this notice." Plaintiff must know that the steps taken to prepare a 30(b)(6) witness for such a deposition (such as which documents were reviewed, which employees provided information, etc.) are not privileged in the least; indeed, such information is necessary, for example, to determine whether the witness is adequately prepared for the deposition and which individuals within the corporation possess information related to each topic. Not surprisingly, Plaintiff's attorneys asked precisely this type of question at recent 30(b)(6) depositions of Defendants. Nevertheless, Plaintiff refuses to present a witness to testify on this topic.

Plaintiff's only substantive response to Defendants' specific examples of non-privileged information falling within the scope of the disputed topics relates to Topic 4. *See* Plaintiff's Opposition at 18; Defendants' Motion at 15-16. In their Motion, Defendants correctly stated a basic tenet of privilege law, that "any information provided to attorneys involved in prosecution with the intent that such information be communicated to the Patent Office" (within the scope of Topic 4) is not subject to a proper claim of privilege. *See* Defendants' Motion at 15; *United States v. Robinson*, 121 F.3d 971, 975 (5th Cir. 1997) (holding that attorney-client privilege only attaches to communications intended to be confidential). Plaintiff cites *Robinson v. Texas Automobile Dealers Assoc.*, 214 F.R.D. 432 (E.D. Tex. 2003) in support of its argument that the entirety of Topic 4 is privileged, although even *Robinson* confirms Defendants' position: "The [attorney-client] privilege requires [] intent that the communication remain confidential . . . ." 214 F.R.D. at 439. Plaintiff should thus be ordered to provide a witness to testify to the non-privileged scope of Topics 4-6, 8-10, and 22.

Moreover, Topics 11-15 simply do not ask for the information described by Plaintiff in its Opposition. *See* Plaintiff's Opposition at 19; Ex. L to Defendants' Motion, Notice of Deposition of Plaintiff. Plaintiff attempts to characterize these topics as "ask[ing] a lay witness

to compare all of the different claims in the '281 Patent . . . with the breathtakingly broad definition of 'Prior Art' cited in the deposition notice, and then give AdvanceMe's position on all the distinctions between the inventions and the prior art." Plaintiff's Opposition at 19. However, none of Topics 11-15 even so much as mentions the specific language of the claims, much less require a lay witness to compare them to the prior art. *See* Defendants' Motion at 16.

Defendants respectfully request that the Court order Plaintiff to immediately provide a 30(b)(6) witness to testify to all of the topics that were noticed over two months ago.

## IV. PLAINTIFF'S OPPOSITION REVEALS ITS MOTIVE FOR AVOIDING DEFENDANTS' INTERROGATORY: IT HAS NO BASIS FOR DISTINGUISHING THE CLAIMS FROM THE PRIOR ART[10]

In another attempt to avoid revealing that it has no basis for distinguishing the '281 Patent from the prior art identified by Defendants, Plaintiff refuses to provide a response to the sole interrogatory served by Defendants. *See* Defendants' Motion at 12-14; Ex. J to Defendants' Motion, Plaintiff's Objections and Response to Defendants' Amended First Set of Interrogatories.

Plaintiff's strained position is made clear in its Opposition at 15-18: it has ignored Defendants' interrogatory in arguing that it asks Plaintiff to "*compare the exhibits*" with the '281 Patent and "identify those elements which are not *disclosed by Exhibits* 1, 3, and 6." Plaintiff's Opposition at 16 (emphases added). However, Defendants do not ask that Plaintiff "compare the exhibits" to the patent claims; rather, it asks two broad questions: (1) identification of every element in the independent claims that is not disclosed in the prior art references *identified in* Defendants' preliminary invalidity contentions; and (2) state all facts supporting Plaintiff's contention that these *identified pieces of prior art* do not anticipate every element of both

---

[10] Because Plaintiff agrees that it has waived all objections to Defendants' Amended Interrogatory No. 1, *see* Plaintiff's Opposition at 17, Defendants agree that the issue is moot. *See* Defendants' Motion at 12.

asserted independent claims of the '281 Patent. *See* Ex. H to Defendants' Motion, Defendants' Amended Interrogatory No. 1.

As explained in Defendants' Motion at 12-14, the referenced prior art is explicitly defined as the methods and systems *identified in* Exhibits 1, 3, and 6 of Defendants' existing preliminary invalidity contentions – not the exhibits themselves, and not merely the documents disclosed by the exhibits. *See id.* Defendants' interrogatory thus asks Plaintiff two separate questions, both of which require Plaintiff to incorporate all information available to it regarding the identified systems and methods – including documentation, depositions, and any other information available to Plaintiff.

Nevertheless, Plaintiff's Opposition makes clear that: (1) it cannot identify *any* element in the independent claims that is not present in the systems and methods employed by LeCard, Litle & Co., and First USA, and (2) that the *only* fact supporting Plaintiff's contention that the identified prior art does not anticipate every element of both independent claims of the '281 Patent is that Plaintiff believes the evidence of invalidity in the record is not sufficiently corroborated. Plaintiff states that:

> [E]ven if the interrogatory had asked AdvanceMe to compare the '281 Patent claims with deposition testimony, AdvanceMe's answer would not have changed in the slightest. It is well settled that a party cannot demonstrate a "public use" under Section 102(b) unless that public use is sufficiently corroborated through contemporaneous documentation or similar information.

Plaintiff's Opposition at 17 (citation omitted). In other words, the only fact supporting Plaintiff's contention that the identified prior art systems and methods do not anticipate every element of both independent claims of the '281 Patent (the second part of Defendants' interrogatory) is that it (incorrectly) believes that the record does not contain sufficient corroborating evidence to support the prior art documentation and third party testimony in the record. Plaintiff thus admits that the only basis for contending that the claims are not invalid in light of the prior art identified

-12-

by Defendants is the *sufficiency of proof* in the record – and *not* that there is an element of the claims that distinguishes them over the prior art.

Defendants thus request that the Court order Plaintiff to respond to the interrogatory served on Plaintiff, which Plaintiff has admitted should simply state, in response to the two questions posed in Defendants' interrogatory, respectively: (1) that there is no element in the independent claims of the '281 Patent that is not disclosed in the prior art references identified in Defendants' preliminary invalidity contentions; and (2) that Plaintiff believes the testimony of third party witnesses Tim Litle and Lee Suckow, in conjunction with the supporting prior art documentation, is not sufficiently corroborated evidence of invalidity under 35 U.S.C. §§ 102(a) or 102(b).[11]

## V.  PLAINTIFF'S PRIVILEGE LOG PROVIDES NO INFORMATION ABOUT THE ALLEGEDLY PRIVILEGED DOCUMENTS

Even a brief glance at Plaintiff's privilege log, Ex. N to Defendants' Motion, reveals its glaring inadequacies. In its Opposition, Plaintiff argues that it has "already provided all details concerning these privileged documents that it was able to provide." Plaintiff's Opposition at 21. However, Plaintiff fails to recognize that conclusory statements do not establish privilege. *See CSX Transp., Inc. v. Admiral Ins. Co.*, No. 93-132-CIV-J-10, 1995 U.S. Dist. LEXIS 22359 at *9 (M.D. Fla. July 20, 1995) (holding that conclusory statements, e.g. "confidential attorney-client communication for the purpose of providing legal advice," do not establish the elements of the attorney-client privilege). If the conclusory statements in Plaintiff's privilege log are all the information that Plaintiff can provide about the allegedly privileged documents, it has failed to show that they are subject to a proper claim of privilege, and the Court should order Plaintiff to produce all of the documents included therein.

---

[11] While Plaintiff is incorrect in this assertion, such a response would be sufficient in response to the second question posed in Defendants' interrogatory.

The most glaring examples of Plaintiff's vague and incomplete descriptions and failure to establish applicability of the attorney-client privilege are its Board Meeting Minutes privilege log entries. *See* Ex. N to Defendants' Motion at 9-12, 17, and 18. In its Opposition, Plaintiff makes two similarly meritless arguments regarding these Minutes. First, Plaintiff claims that because a corporate agent recorded the Minutes, and because an attorney was present at the Board Meetings where allegedly privileged Minutes were recorded, the entirety of the Minutes is privileged. Plaintiff's Opposition at 21. However, simply having an attorney attend a meeting does not render the entirety of the meeting communications privileged. *See* Defendants' Motion at 18. For example, the attorney may have provided business rather than legal advice, or the attorney may not have even participated in topics discussed at the meeting.

Without a complete listing of the topics discussed at the allegedly privileged Board Meetings and identification of which topics Plaintiff contends consist of privileged communications, neither the Court nor Defendants can assess Plaintiff's privilege claims.[12] *See* FED. R. CIV. P. 26(b)(5). Similarly, it is impossible to tell whether Plaintiff's Board Meeting Minutes are subject to a proper claim of privilege – or whether privilege has been waived – without a complete listing of all Board Meeting attendees and a complete listing of everyone to whom the Board Meeting Minutes were distributed. Plaintiff's privilege log thus fails to comply with FED. R. CIV. P. 26(b)(5).

Second, Plaintiff argues that all Board Meeting Minutes that do not discuss patent prosecution are irrelevant. *See* Plaintiff's Opposition at 22. But, as explained *supra*, Plaintiff feigns misunderstanding of the broad scope of relevance dictated by the Federal Rules and Local

---

[12] As explained in Defendants' Motion at 18, Plaintiff has *already* acknowledged that which topics were discussed at these meetings is necessary to assess its claim of privilege, stating that such a determination would require knowledge of: "what was discussed at these meetings, how these meetings were conducted, and who attended these meetings (and for what purpose)." Ex. C to Defendants' Motion, August 31, 2006 letter from Robert Matz to Hilary Preston.

Rule CV-26(d). Defendants have identified, in their preliminary invalidity contentions, several of Plaintiff's or its predecessor's competitors that publicly and commercially employed systems and methods that render all relevant claims of the patent-in-suit invalid. If, as one would logically assume, Plaintiff discussed or analyzed its competitors at Board Meetings, such discussions would be highly relevant to Defendants' claims of invalidity and inequitable conduct. Such discussions would almost certainly not be a request for legal services or include provision of legal advice, thus they would not be subject to a proper claim of privilege.

The remaining privilege log issues raised in Defendants' Motion are adequately described therein, and the Court need only look at Ex. N to Defendants' Motion to recognize that Plaintiff has failed to serve a privilege log that complies with FED. R. CIV. P. 26(b)(5). Defendants thus respectfully request that the Court order Plaintiff to: (1) serve a privilege log that complies with FED. R. CIV. P. 26(b)(5), and (2) provide all information for each allegedly privileged document that it acknowledges is necessary to assess Plaintiff's claim of privilege, including: (a) a detailed list of all subject matter(s) contained within the documents or discussed at the meetings; (b) all recipients of documents and attendees of meetings; and (c) each attendee's purpose in attending each meeting for each topic discussed.

## VI. DEFENDANTS REQUEST A HEARING ON THEIR MOTION

Defendants respectfully request a hearing on their Motion to Compel in order to fully apprise the Court of the issues raised therein. Defendants request that the hearing be set for as soon as the Court's schedule will allow.

## VII. CONCLUSION

For the reasons set forth herein and in their Motion to Compel, Defendants respectfully request that the Court grant their Motion.

December 6, 2006                                Respectfully submitted,

                                                          By:  /s/ Joseph D. Gray

                                                              Willem G. Schuurman
Texas State Bar No. 17855200
bschuurman@velaw.com
Joseph D. Gray
Texas State Bar No. 24045970
jgray@velaw.com
**VINSON & ELKINS L.L.P.**
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Telephone: 512.542.8400
Facsimile: 512.236.3476

-and-

Hilary L. Preston
hpreston@velaw.com
**VINSON & ELKINS L.L.P.**
666 Fifth Avenue – 26th Floor
New York, NY 10103
Telephone: 212.237.0000
Facsimile: 212.237.0100

   -and-

Douglas R. McSwane, Jr.
State Bar No. 13861300
**POTTER MINTON**
A Professional Corporation
110 N. College
500 Plaza Tower (75702)
P.O. Box 359
Tyler, Texas 75710
Telephone: 903.597.8311
Facsimile: 903.593.0846
E-mail: dougmcswane@potterminton.com

*Counsel for Defendants First Funds, LLC, Merchant Money Tree, Inc., Reach Financial, LLC, and AmeriMerchant, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that all counsel of record who have consented to electronic service are being served a copy of this document via the court's CM/ECF system per Local Rule CV-5(a)(3) on this the 6th day of December, 2006. Any other counsel of record will be served by first class mail on this same date.

                                            /s/ Joseph D. Gray
                                                Joseph D. Gray