# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| **ADVANCEME, INC.,** | § | **CASE NO. 6:05-CV-424 (LED)-(JDL)** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RAPIDPAY LLC, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL LLC, and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| **Defendants.** | § | |
| | § | |

---

## PLAINTIFF ADVANCEME, INC.'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' SECOND PARTIAL SUMMARY JUDGMENT MOTION OF PATENT INVALIDITY

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 1

        A.      Defendants' Reply Fails To Respond to AdvanceMe's Detailed Evidence
                Showing the Absence of the "Applying" Step from the Prior Art ......................... 1

        B.      The Contemporaneous Documentation Demonstrates That the Forwarding
                Step Was Not Performed by the LeCard Program .................................................. 2

        C.      The Contemporaneous Documentation Demonstrates That the Processing
                Steps Were Not Performed by the Merchant Processor in the LeCard
                Program ................................................................................................................. 4

        D.      The LeCard Program Did Not Perform Claim 10 ................................................... 6

        E.      The LeCard Program Does Not Qualify as "Public Use" of the Inventions .......... 8

        F.      Defendants Fail To Properly Apply the Law on Corroboration ........................... 11

        G.      Defendants Have Not Presented Any Evidence To Demonstrate
                Obviousness ......................................................................................................... 15

III.    CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

Page

## CASES

*Finnigan Corp. v. ITC*,
   180 F.3d 1354 (Fed. Cir. 1999)...........................................................................12, 14, 15

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
   292 F.3d 728 (Fed. Cir. 2002)...................................................................................12, 13

*New Railhead Manufacturing, L.L.C. v. Vermeer Manufacturing Co.*,
   298 F.3d 1290 (Fed. Cir. 2002)............................................................................................9

*The Barbed Wire Patent*,
   143 U.S. 275 (1892)........................................................................................12, 13, 14

*TorPharm Inc. v. Ranbaxy Pharmaceuticals, Inc.*,
   336 F.3d 1322 (Fed. Cir. 2003)........................................................................................10

*Woodland Trust v. Flowertree Nursery, Inc.*,
   148 F.3d 1368 (Fed. Cir. 1998)...................................................................... 8, 9, 12-13

## STATUTES

35 U.S.C. § 102(b) ....................................................................................................................9

I.    **INTRODUCTION**

In order to obtain summary judgment, Defendants are required to demonstrate that there do not exist any genuine issues of material fact concerning the Clever Ideas Prior Art. AdvanceMe's opposition, however, raises genuine issues concerning every aspect of Defendants' invalidity defense. AdvanceMe has submitted a wealth of documentation and deposition testimony which confirms that the LeCard Program did *not* perform the patented inventions, and that Defendants cannot possibly meet the public use and corroboration requirements in this case. AdvanceMe has also submitted a detailed expert declaration explaining the differences between the patented inventions and the LeCard Program, which has gone *entirely unrebutted* by Defendants. The overwhelming evidence submitted by AdvanceMe requires the denial of Defendants' motion.

II.    **ARGUMENT**

   A.    **Defendants' Reply Fails To Respond to AdvanceMe's Detailed Evidence Showing the Absence of the "Applying" Step from the Prior Art.**

As an initial matter, Defendants' reply ignores one of the primary arguments asserted in AdvanceMe's Opposition, i.e., that the LeCard Program did not perform the "applying" step. As AdvanceMe and Dr. Shamos explained, the deposition testimony and contemporaneous documentation clearly establish that the LeCard Program did not perform this step because Clever Ideas did not apply "that portion" allegedly forwarded from Diners Club. Opposition, pp. 7, 19-20. Defendants only address this argument in a single footnote and fail to respond to any of the detailed arguments made by AdvanceMe on this subject. Reply, p. 2 fn. 2. Since there is no serious dispute that the LeCard Program did *not* perform the "applying" step, Defendants' motion should be summarily denied.

**B.** **The Contemporaneous Documentation Demonstrates That the Forwarding Step Was Not Performed by the LeCard Program.**

In its Opposition, AdvanceMe explained that the LeCard Program clearly did not perform the forwarding element of the patent claims, because the only contemporaneous documentation Defendants have produced unequivocally demonstrates that Diners Club did not forward a portion of LeCard transactions to Clever Ideas "as payment." Opposition, pp. 15-19. Rather, the documentation states that *every single dollar* of LeCard payments was simply passed through Diners Club to Clever Ideas. Edelman Decl., Ex. A [LC_00001; LC_00004; LC_00005].[1]

Defendants have no intelligible response to this point. Indeed, Defendants concede that "in the Clever Ideas/LeCard prior art the *entirety* of the transaction information was sent to Clever Ideas." Reply, p. 5 (emphasis added). This concession ought to entirely dispose of Defendants' invalidity defense. Nevertheless, Defendants argue that there is a distinction between the forwarding of "transaction information" and the forwarding of "payments," and contend that Diners Club forwarded all of the former but only a portion of the latter due to the existence of a cardholder discount. The problem with this argument is that it is *entirely contradicted* by the documentation Defendants have submitted. This documentation plainly indicates that *every single dollar* (not just "transaction information") was sent from Diners Club to Clever Ideas for processing. Edelman Decl., Ex. A [LC_00001; LC_00004; LC_00005].

---

[1] Defendants cannot seriously dispute that the claims require forwarding in portions, and therefore only half-heartedly address the issue in a single footnote. Claim 10 specifically requires forwarding only a "portion," and Claim 1 requires receiving and applying in portions. Though Defendants attempt to rely upon the language "at least a portion" in Claim 1, the meaning of this language to one of ordinary skill in the art is thoroughly explained in AdvanceMe's opposition and expert declaration. Opposition, p. 16; Shamos Decl., ¶ 20. Further, Defendants entirely ignore the "as payment" language in the forwarding element. As AdvanceMe has explained, this language clearly indicates that the merchant processor must divide up the revenue so that the amount provided to the payment receiver is the portion that is actually paid toward the outstanding obligation. Opposition, p. 16; Shamos Decl., ¶ 23.

Indeed, it is hard to see how the documentation could be any clearer on this point. According to the documentation, when a customer pays $100 at a merchant, that entire $100 (and not just the "transaction information" for that payment) is sent from Diners Club to Clever Ideas, without any deduction or discount of any kind. Edelman Decl., Ex. A [LC_00004]. Clever Ideas then receives the $100 and splits it into at least two portions, with $20 going to the merchant to settle the tax and tip and $80 applied to the merchant's advance. *Id.* [LC_00005]. This documentation is clear on its face, and Defendants are not legally permitted to concoct a public use defense by submitting uncorroborated deposition testimony to contradict it.

In its Opposition, AdvanceMe further explained that the very witnesses proffered by Defendants admitted that the documentation discloses the forwarding of the full $100 from Diners Club to Clever Ideas. Opposition, p. 6. Defendants now claim that this testimony needs to be "read into context," because it only indicates that "information" was sent to Clever Ideas as opposed to all of the "payment." This distinction, however, is completely absent from the deposition testimony that AdvanceMe cited. Rather, the witnesses concede that the contemporaneous documentation shows the forwarding of *one hundred dollars* (not 100% of "transaction information") to Clever Ideas. Ex. D [McBrearty Dep., 31:7-32:7] ("Here's the other 100 that goes, you know, to LeCARD"); Ex. E [Sorwell Dep., 29:1-6 (admitting documentation informs merchant that full $100 was sent to Clever Ideas)].

Further, Defendants fail to recognize that it makes no difference whether or not a cardholder discount was applied before the transaction was sent to Clever Ideas. The patent claims require that a portion of the "payment" be sent to the payment receiver, and the plain terms of the claims indicate that this "payment" is the amount that is owed to the merchant. However, since any 20% discount offered to the cardholder is lopped off the top of the

customer's bill, it *never became part of the "payment" in the first place*. Defendants admit this fact in their reply. Reply, p. 3 (stating it is "undisputed" that Diners Club would only bill and collect $80 for an $100 transaction due to alleged discount). The alleged 20% cardholder discount is therefore utterly irrelevant to the patent claims.

Ultimately, regardless of the actual amount sent to Clever Ideas, the fact remains that the LeCard Program could not have performed the patent claims because Diners Club did not provide *portions* to Clever Ideas "as *payment*." Rather, it is undisputed that Diners Club simply passed through the entire transaction and then let Clever Ideas do the work of dividing up the revenue. Accordingly, the work that the patent claims require to be performed by the *merchant processor* is instead performed by the *payment receiver*. Since the evidence is clear that the LeCard Program worked in the *opposite* fashion from the patent claims, Defendants' motion must be denied.

C.   **The Contemporaneous Documentation Demonstrates That the Processing Steps Were Not Performed by the Merchant Processor in the LeCard Program.**

In its Opposition, AdvanceMe explained that the LeCard Program clearly did not perform the claim elements because the only contemporaneous documentation Defendants have produced unequivocally demonstrates that Diners Club did not perform the processing steps required of the patent claims. Opposition, pp. 14-15. Rather, the documentation clearly demonstrates that the transaction was sent from Diners Club to Clever Ideas for processing and settlement. Edelman Decl., Ex. A.

Defendants' only response to this clear documentary evidence is to attempt to *contradict* the documentation through uncorroborated deposition testimony. However, the language of the documentation is as clear as can be -- it explicitly states that the LeCard transactions "*could not be processed*," that the charges were "*rejected*" by Diners Club, and that the entire transaction

was forwarded to Clever Ideas for settlement.  Edelman Decl., Ex. A [LC_00004] (emphasis

added).  Defendants now take the position that this documentation simply did not tell the truth to

the thousands of merchants that allegedly received it, even though Defendants have not presented

a single piece of contemporaneous documentation to indicate the LeCard Program worked in any

other way.

Defendants further complain about the interpretation of these documents from

AdvanceMe's expert, but fail to explain why they have failed to provide any declaration in

response from one of ordinary skill in the art.  If it is so clear that Dr. Shamos is mistaken, then

why has Defendants' expert not made any attempt to rebut his opinion?  If Defendants really

disagree with Dr. Shamos' "unilateral" interpretation, then why have they solely relied upon

*attorney argument* rather than submitting testimony from one of ordinary skill in the art?  The

glaring absence of *any* response from Defendants' expert speaks volumes.

Defendants also argue it is significant that the date of the processing statement is

April 30, whereas the date of the "relevant charges" is April 17.  According to Defendants, "it is

clear that this document is a summary of how Diners Club dealt with the already approved and

already processed transactions."  Reply, p. 6 (emphasis in original).  This appears to be clear

only to Defendants' counsel, however, as Defendants do not submit *any* testimony to support it.

Further, Defendants' argument is illogical.  Clearly, the reason for any spread between these

dates is because there was a time lag between the date that the entire transaction was forwarded

to Clever Ideas for processing and the date that the merchant was informed of this activity.  It is

difficult to fathom how this demonstrates Diners Club performed all processing for LeCard transactions.[2]

### D.    The LeCard Program Did Not Perform Claim 10.

Defendants' reply continues their efforts to ignore the Court's claim construction of the forwarding step in Claim 10.  The Court's order specifically provides that this step is limited to the algorithm recited in "column 5, lines 21-37."  Defendants do not dispute that the algorithm described in these lines is *completely absent* from the LeCard Program.

Realizing this is beyond dispute, Defendants' brief desperately attempts to convince the Court to ignore the plain and clear language of its Order.  Reply, p. 9.  Setting aside the fact that the Order is plain on its face and Defendants are not legally entitled to ignore it, Defendants' argument completely misunderstands the reason why the Court cited these lines from the patent specification in the first place.  Though it is true that the claim element involves forwarding to a third party, the Court made clear that the manner in which portions of payments are *derived* to be sent to the third party is a critical part of the required algorithm.  Edelman Decl., Ex. J, p. 19.  The lines cited by the Court provide that the forwarded portions are derived by starting with the full amount that would normally go to the merchant and then *subtracting* a portion that is sent to the third party, such that the payment is split between the merchant and the third party.  '281 Patent, 5:21-37.  Since it is undisputed that the LeCard Program did not perform this algorithm, Defendants' invalidity defenses cannot succeed.

---

[2] Defendants contend that "[i]f in fact the charges had been 'rejected' or 'not processed' at the time they were presented (on April 17th), there would be nothing for LeCard to 'settle directly with' the merchant."  Reply, p. 6.  This does not follow.  Though the charges were rejected on April 17, the reason for this is that – as the contemporaneous documentation explains – the entire transaction was forwarded to Clever Ideas for processing and settlement.

Defendants further contend that the algorithm should be limited to what was "necessary" to perform the claimed function. However, that is precisely what the Court has already done in the Claim Construction Order. The claim language in Claim 10 requires forwarding of a *portion* of the payment to the payment receiver, and the specification makes clear that the goal of this algorithm is to forward a *portion* of the amount that would *normally be paid to the merchant*. '281 Patent, 5:21-25. The split of payments between the merchant and payment receiver is absolutely necessary to perform the claimed function, because otherwise the payment receiver would not receive a portion of what the merchant would normally be paid. Indeed, if this split was not a part of the required algorithm, then the algorithm would do nothing other than repeat what the claim language already says, i.e., forwarding a portion of the payment to the payment receiver. Clearly, however, the intent of the Claim Construction Order was to *limit* the forwarding step to only the algorithm disclosed in the specification.

There is simply no dispute that Diners Club did *not* forward a portion of what the merchant would normally be paid. Indeed, even under Defendants' theory of how the LeCard Program worked, the only amounts that were allegedly "deducted" by Diners Club were cardholder discounts and processing fees, neither of which would ever have been sent to the merchant in the first place. In other words, *every single dollar* that would normally have gone to the merchant was sent to Clever Ideas. This is *not* the algorithm recited by the Claim Construction Order.[3]

---

[3] In its Opposition, AdvanceMe also explained that Defendants' argument with respect to Claim 10 must fail because the sparse testimony concerning the alleged use of the structure required by this means-plus-function claim is entirely uncorroborated. Defendants' reply concedes that no documentation exists to corroborate this structure, but solely responds by contending that "testimony may corroborate other testimony." Reply, p. 10. As explained below, Defendants continue to misconstrue the corroboration requirement. *See* Part F, *infra*.

Defendants further argue that the prosecution history is relevant to the scope of the forwarding algorithm. However, Defendants had the opportunity to submit this alleged evidence during claim construction proceedings, when the scope of this algorithm was being decided by the Court. Defendants chose not to. In any event, Defendants' argument is mistaken. As AdvanceMe has previously explained, the prosecution history Defendants cite overwhelmingly supports the algorithm cited by the Court, because it demonstrates that the applicant replaced *non*-means plus function claims (which explicitly required the splitting of payments between payment receiver and merchant), with means plus function claims that were intended to incorporate the very same structure. Surreply in Opposition to Litle Motion, p. 6.

### E.    The LeCard Program Does Not Qualify as "Public Use" of the Inventions.

Defendants' brief spends several pages misconstruing the law on public use. Defendants' discussion makes at least three central mistakes.

*First*, Defendants fail to acknowledge that the case law they are relying upon concerns prior public use *by an inventor* or with the inventor's permission as opposed to alleged public use by an unrelated *third party*. This distinction is significant. Where alleged public use by an inventor or his agent is involved, a public use or sale may be found even if the actual performance of the invention is kept confidential. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). However, where public use by a *third party* is alleged, the sole focus of the inquiry is on whether the purported third party use of the *invention* was *available to the public*. *Id*. As the Federal Circuit has explained:

> [A]n inventor's own prior commercial use, albeit kept secret, may constitute a public use or sale under § 102(b), barring him from obtaining a patent. [Citations omitted.] However, when an asserted prior use is not that of the applicant, §102(b) *is not a bar when that prior use or knowledge is not available to the public*.

*Id*. at 1370-71 (emphasis added).

The reason this rule is stricter with respect to third-party public use is because entirely different policy considerations come into play. Section 102(b) applies to inventors because, among other reasons, it is the strong policy of the patent law to require inventors to promptly seek protection for their inventions. This policy consideration does not apply where third-party public use is concerned. Rather, the only reason third-party public use is recognized as a potential statutory bar is because of the concern that the inventor may not have "contributed to the store of knowledge" already known to the public. *Id*. at 1370. Accordingly, to show an invalidating public use by a *third party*, the defendant must at a minimum demonstrate that the invention was in the store of knowledge available to the public.

Defendants' failure to recognize this distinction permeates their briefing. For example, Defendants rely on the case of *New Railhead Manufacturing, L.L.C. v. Vermeer Manufacturing Co.*, 298 F.3d 1290, 1298-1300 (Fed. Cir. 2002), and argue that the Federal Circuit in that case did not analyze whether the claim elements were available to the public. Reply, p. 12. Defendants neglect to point out, however, that *New Railhead* involved an allegation that someone had been permitted *by the inventor* to publicly use the invention before the priority date. 298 F.3d at 1293. As a result, the court analyzed whether the alleged public use could be considered experimentation by the inventor. *Id*. at 1298-99. The case did *not* disturb the general rule that an alleged *third party* public use of an invention must be *available to the public*. *Woodland Trust*, 148 F.3d at 1370.

*Second*, the case law that Defendants cite involve situations where defendants are attempting to show public use of product claims. However, Defendants fail to appreciate that the claims in the '281 Patent are in the nature of *process* claims. This is another huge distinction. As the Federal Circuit has stated:

> [I]f [plaintiff] had, more than one year before the filing of the application for the
> '671 patent, sold [the product] made by the claimed process, then its process
> claims would be invalid under section 102(b) –  regardless of whether the process
> was disclosed to the public or not.  In contrast, if the product were sold by one
> other than the patentee, *and the process of making remained unknown,* then sale
> of the product would *not* pose a statutory bar to a claim on the process.

*TorPharm Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1327 (Fed. Cir. 2003) (citations

omitted; emphasis added).

    This holding precisely fits the instant case.  At most, Defendants' uncorroborated

evidence only establishes that the Clever Ideas product (i.e., the LeCard Program itself) was

offered for sale before the priority date.  However, it is undisputed that the *process* underlying

the product (i.e., the manner in which payments were settled, processed, forwarded and applied)

remained unknown to the public.  Indeed, Clever Ideas' own policy of confidentiality prevented

these details from being known, and Clever Ideas' own witnesses testified that Clever Ideas did

not want merchants to know them.  Edelman Decl., Exh. E (Sorwell Dep., 27:1-10).  Since the

*process* underlying the LeCard Program remained unknown, a statutory bar cannot exist.

    *Third*, Defendants confuse disclosure of the *invention* with disclosure of the *enabling*

*details* of the invention.  There is no question that, if the elements of the patented invention are

available to the public, then the fact that further enabling details were not disclosed is irrelevant.

However, there is also no question that third-party public use cannot be established unless the

*elements of the inventions* are available to the public.  Here, it is beyond dispute that the very

activities which Defendants claim constitute performance of the claim elements were all invisible

to the public, because the details of the arrangements between Diners Club and Clever Ideas

were kept confidential.  Since the alleged performance of the *inventions* was completely hidden

from the public, it is simply not possible for Defendants to rely on a public use defense.

Lastly, Defendants attempt to downplay the testimony that AdvanceMe has submitted on Clever Ideas' policy of confidentiality and its suppression of the details underlying the LeCard Program. Reply, p. 14. Defendants cannot, however, ignore the testimony under oath that is plainly in the record. This testimony clearly indicates that (a) the *only* material on the LeCard Program provided to merchants was the few pages submitted by Defendants on this motion, Edelman Decl., Ex. C [Landon Dep., 63:14-64:16], (b) Clever Ideas' own Vice-President did not know that merchants had *any* information relating to the processing of payments under the LeCard Program, Ex. C [Landon Dep., 62:16-63:13], (c) the business arrangements between Clever Ideas and Diners Club were confidential pursuant to contract, Ex. D [McBrearty Dep., 82:24-83:5], and (d) all the "behind the scenes stuff" on how the LeCard Program allegedly worked was kept from the eyes of the merchants because it was "excess information that just confuses the matter." Ex. E [Sorwell Dep., 27:1-10]. Since the allegedly relevant aspects of the LeCard Program were suppressed from the public, Defendants' defense cannot succeed.

### F.    Defendants Fail To Properly Apply the Law on Corroboration.

Defendants spend several pages of their reply attempting to demonstrate that they have somehow met the corroboration requirement for a public use defense. This attempt fails.

*First*, Defendants contend that "corroboration is only required of oral testimony – and not contemporaneous documents." Reply, pp. 16-17. However, as AdvanceMe has explained in its opposition, the contents of the contemporaneous documentation affirmatively demonstrate that the patented inventions were *not* performed by the LeCard Program. As a result, Defendants have been forced to try to submit uncorroborated deposition testimony in order to *contradict* the contemporaneous documentation. There is no case from the Federal Circuit, or any other jurisdiction, that has ever found the corroboration requirement to be satisfied under these extreme circumstances.

*Second*, Defendants cite case law for the proposition that corroboration may be in the form of either documentary or testimonial evidence. Reply, p. 17. Defendants fail to recognize, however, that the law does *not* permit Defendants to rely upon testimonial evidence such as they have presented in this case to meet the clear and convincing burden for patent invalidity. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 740-43 (Fed. Cir. 2002); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1366-70 (Fed. Cir. 1999).

For instance, in *Juicy Whip*, 292 F.2d at 740-43, the Federal Circuit determined that the oral testimony of *six* different witnesses was insufficient corroboration, even if this testimony correlated the prior art with each of the claim limitations in the patent. The Federal Circuit pointed out that the Supreme Court had rejected a public use defense which was based upon the oral testimony of *24 different witnesses*. *Id*. at 741, *citing The Barbed Wire Patent*, 143 U.S. 275 (1892). After reviewing this precedent, the court determined that (even though it was not challenging the credibility of the witnesses), the Defendants had failed to provide the clear and convincing evidence necessary to invalidate the patent, because the only physical records available simply did not reveal that the claim elements were performed. *Id*. at 743.

Similarly, in *Woodland Trust*, *supra*, the defendant proffered testimony from *four* different witnesses concerning the alleged prior use, all of whom were deemed to be credible by the trial court. *Id*. at 1370. The district court found, based on this testimony, that the patent was invalid. On appeal, the Federal Circuit reversed, and found *as a matter of law* that the testimony from these four credible witnesses simply was not enough to meet the corroboration requirement. *Id*. at 1371-73. The Federal Circuit stated that "[a]lthough an appellate court is indeed in a poor position to assess credibility, there is a very heavy burden to be met by one challenging validity when the only evidence is the oral testimony of interested persons and their friends, particularly

as to long-past events." *Id*. at 1371.  The Federal Circuit further emphasized that, despite the many years of alleged commercial and public use and the "ubiquitous paper trail of virtually all commercial activity," no physical record had been presented to support the oral evidence of the four witnesses, and the only contemporaneous documents (two undated photographs) were insufficient because of  their "lack of detail and clarity." *Id*. at 1373.

It is impossible to meaningfully distinguish the decisions in *Juicy Whip*, *Woodland Trust*, and *Barbed Wire Patent* from the situation here.   Just as was true in those cases, Defendants are attempting to show the alleged prior performance of the inventions through oral testimony of persons who are purporting to recall details many years after the fact.  Just as was true in those cases, Defendants have failed to present *any* contemporaneous documentation or physical records to show that the elements of the inventions were actually performed, despite the alleged years of commercial use by Clever Ideas.  The governing precedent, therefore, stands as an insuperable obstacle to Defendants' public use defense.

*Third*, Defendants argue (for the first time) that corroboration should be applied according to a "rule of reason" standard.  Reply, p. 17.  However, Defendants overlook that one of the most important factors in applying the "rule of reason" test is the length of time that has passed since the alleged prior use.  In fact, courts have cited this factor as a compelling reason for rejecting attempts at corroboration.  *Juicy Whip*, 292 F.3d at 743 (stating that evidence was insufficient as a matter of law to surmount the "clear and convincing evidence hurdle" because, *inter alia*, the testimony came more than eight and twelve years after witnesses saw the alleged prior art).  Here, the alleged prior use occurred at least *ten to fifteen* years before the deposition testimony was taken in this case.  Further, other "rule of reason" factors also weigh heavily against Defendants here, such as the interests of the witnesses, the contradiction between the

witnesses and the documentation, and the relationship between the witnesses and Clever Ideas. *Id.* at 741. In any event, Defendants' reply does not even attempt to evaluate all the factors under the "rule of reason" test, or explain how the Court can possibly evaluate all these heavily fact-dependent factors within the context of a summary judgment motion.

*Fourth*, Defendants contend that a few of the witnesses they have proffered are from "unbiased" witnesses, and therefore the corroboration requirement should be relaxed. This is simply not the law. After exhaustively reviewing the precedent in this area, the Federal Circuit squarely decided that the corroboration requirement applies with equal force to allegedly disinterested witnesses. *Finnigan*, 180 F.3d at 1369 ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."). As the Supreme Court and Federal Circuit have reasoned, "[w]itnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information...." *Id.* at 1366, *quoting Barbed Wire Patent*, 143 U.S. at 284.[4]

Lastly, Defendants attempt to demonstrate that certain witnesses, such as Mr. Suckow, are not actually biased. Once again, however, Defendants misunderstand the relevant standard. The corroboration requirement does not rest upon whether the witnesses are actually biased, but

---

[4]  Defendants identify three witnesses they contend are "unbiased." However, Tom McBrearty claims (without a single piece of supporting documentation) that he started the very LeCard program that is alleged to be prior art in this case. Defendants' Motion, Ex. J [McBrearty Dep. at 17:1-6]. This is precisely the type of interested witness that the federal courts have identified in explaining why testimonial evidence on public use is viewed with "grave suspicion." *Finnigan*, 180 F.3d at 1368. Adam Secher was employed at infringer Clever Ideas, and admitted that he "didn't have a clue" how the LeCard Program really worked. Edelman Decl,. Ex. F [Secher Dep., 23:1-23; 41:10-24]. Michelle Boudette is a former AdvanceMe employee that is basing her speculation on the LeCard Program entirely on alleged hearsay statements from unidentified merchants, and therefore her testimony is not even admissible. Defendants' Motion, Ex. T [Boudette Dep., 33:12-23].

rather *presumes* (for numerous policy reasons) that oral testimony is suspect even if the witnesses are conscientious. *Finnigan*, 180 F.3d at 1368.

In any event, Defendants' attempt to explain away the troubling aspect of Mr. Suckow's testimony rings hollow. For example, Defendants ask why AdvanceMe offered to pay Mr. Suckow for his expert testimony, but the answer to this is obvious – who would be better to testify concerning the novelty of AdvanceMe's inventions than the CEO of a company that had switched its business to copy them? Based on the evidence, that is exactly what AdvanceMe had reason to believe Mr. Suckow would testify to. AdvanceMe could not have known that Mr. Suckow would feel insulted at being offered "only" $400 an hour for his time, and therefore decide to jump in bed with Defendants.

In the final analysis, the parties' disagreements on this motion concerning the worth and credibility of the deposition testimony is beside the point. Defendants cannot obtain summary judgment by asking the Court to make credibility determinations. All that matters for the purpose of this motion is that AdvanceMe has raised serious questions as to whether the deposition testimony Defendants have submitted could ever be deemed to meet the high burden of corroboration required by the case law. Accordingly, summary judgment must be denied.

G.    **Defendants Have Not Presented Any Evidence To Demonstrate Obviousness.**

Defendants' argue that AdvanceMe has "made no credible argument" for obviousness of dependent claims 2-4 and 11-13. As an initial matter, Defendants' obviousness argument is entirely based on the assertion that the independent claims 1 and 10 are anticipated by the LeCard Program. As explained at length by AdvanceMe, this is simply untrue.

However, even if anticipation had been shown, Defendants' obviousness argument is baseless. To obtain summary judgment, Defendants were required to submit evidence to demonstrate that there was no genuine issue of material fact. However, Defendants have not

submitted any declaration from an expert to demonstrate obviousness, or even a declaration from a lay witness on the topic. Defendants have also not submitted evidence of any suggestion or motivation to extend the LeCard Program to perform these dependent claims. The only alleged "evidence" that Defendants have submitted are a few excerpts from the prosecution history that are completely irrelevant to the obviousness determination, and an excerpt from the *infringement* report of AdvanceMe's expert. These excerpts merely address the manner in which different claims could be reduced to practice from a "processing standpoint," but do not contain any evidence to indicate that the *conception* of the dependent claims would be obvious. Defendants have simply not presented evidence to meet their summary judgment burden.

Further, the lengthy declaration by AdvanceMe's expert, Dr. Shamos, explains at length why the conception of the claims would be non-obvious in light of the nature of the prior art that existed at the time of conception. Shamos Decl., ¶¶ 9-17, 35-42. To explain this, Dr. Shamos describes the fact that Clever Ideas and other programs were "membership" dining programs that had a completely different focus. *Id.*, ¶¶ 9-10. Defendants assert that this discussion is "irrelevant" because the claims in the '281 Patent do not discuss "membership vs. non-membership programs." Reply, p. 21. This completely misses the point. AdvanceMe did not provide this opinion to establish that the claims required "non-membership" programs, but rather to explain why the inventions in the '281 Patent had such a different focus from what had come before. The huge differences between the dining programs and the patented inventions provide compelling evidence of non-obviousness.

III.    **CONCLUSION**

For all the reasons stated above, Defendants' motion should be denied.

Date:  May 16, 2007                     Respectfully submitted,

                    By:    _/s/ Michael N. Edelman_____
                           **PAUL, HASTINGS, JANOFSKY & WALKER LLP**
                           Ronald S. Lemieux  (ronlemieux@paulhastings.com)
                           (CA Bar No. 120822) (Admitted Pro Hac Vice)

                           Michael N. Edelman (michaeledelman@paulhastings.com)
                           (CA Bar No. 180948) (Admitted Pro Hac vice)
                           Five Palo Alto Square, Sixth Floor
                           Palo Alto, CA  94306-2155
                           Telephone:  650.320.1800
                           Facsimile:  650.320.1900

                           **IRELAND CARROLL & KELLEY**
                           Otis W. Carroll, Jr. (fedserve@icklaw.com)
                           LEAD ATTORNEY
                           State Bar No. 03895700
                           Deborah J. Race (drace@icklaw.com)
                           State Bar No. 16448700
                           6101 S. Broadway, Suite 500
                           Tyler, TX  75730
                           Telephone:  903.561.1600
                           Facsimile:  903.581.1071

                           ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by facsimile transmission and/or first class mail this 16th day of May, 2007.

_____
*/s/ Michael N. Edelman*

LEGAL_US_W # 56247777.2