# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| **ADVANCEME, INC.,** | § | **CASE NO. 6:05-CV-424 LED - JDL** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RAPIDPAY LLC, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL LLC, and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| **Defendants.** | § | |
| | § | |

## ADVANCEME, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO SUPPLEMENT DISCOVERY BASED ON NEWLY DISCOVERED EVIDENCE

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND............................................................................... 2

    A.     Defendants' Invalidity Contentions ......................................................... 2

    B.     The Significant Discovery Conducted By The Parties ........................... 4

    C.     Defendants Serve a Subpoena on Bieler Weeks after the Discovery Cutoff Date, and over a Month after Their Final Invalidity Contentions Are Served ...................................................................................................... 5

III.    ANALYSIS............................................................................................................ 7

    A.     The Relevant Legal Authority ................................................................. 7

    B.     Defendants' Failure To Provide An Explanation for Their Delay Requires Denial of Their Motion As a Matter of Law......................................... 9

    C.     Defendants Have Not Established the Importance of the Bieler Documents ...... 11

    D.     The Potential Prejudice to AdvanceMe Weighs Heavily Against Defendants ............................................................................................... 13

    E.     A Continuance Would Further Prejudice AdvanceMe ....................... 15

IV.     CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Dabney v. Montgomery Ward & Co.*,
  761 F.2d 494 (8th Cir. 1985) ...........................................................................8

*Havenfield Corp. v. H&R Block, Inc.*,
  509 F.2d 1263 (8th Cir. 1975) ..........................................................................8

*Massachusetts Institute of Technology v. Abacus Software*,
  462 F.3d 1344 (Fed. Cir. 2006)........................................................................7

*Nike, Inc. v. Adidas America Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2007)...........................................................7-8

*Softvault Systems, Inc. v. Microsoft Corp.*,
  No. 2:06-C 2007, WL 1342554 (E.D. Tex. May 4, 2007).............................7-8

*STMicroelectronics, Inc. v. Motorola, Inc.*,
  307 F. Supp. 2d 845 (E.D. Tex. 2004).....................................................7, 8, 11

*S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*,
  315 F.3d 533 (5th Cir. 2003) .................................................................7, 8, 9

## STATUTES

35 U.S.C. § 102...................................................................................2, 3, 4, 6, 15

## MISCELLANEOUS

P.R. 3-6 (a)(2) ......................................................................................................3

I.    **INTRODUCTION**

Defendants' motion is another attempt to ignore the deadlines set forth in this Court's Local Rules and conduct an end-run around the Amended Docket Control Order.  The Motion should be denied.

***First***, this Court has repeatedly made clear that a party is not permitted to introduce evidence that was produced for the first time after the discovery cutoff date unless the party first explains in detail how it acted ***diligently*** to obtain this evidence.  Defendants' motion, however, does not provide any explanation for why Defendants waited until weeks after the close of discovery — and months after their final invalidity contentions were served — to even seek information from Bieler Marketing Associates ("Bieler").  Indeed, Defendants do not identify when they first became aware of Bieler, how they first became aware of Bieler, when they first attempted to contact Bieler, or when they first requested that Bieler produce information.  Defendants' failure to provide any showing of diligence compels the denial of this motion.

***Second***, the comments by Defendants in their motion affirmatively indicate that Defendants did not act diligently in attempting to obtain information from Bieler.  Defendants apparently contend that they "discovered" Bieler's infomercial-related activities by clicking on the website of a company called Media Funding Corporation.  Defendants fail to disclose, however, that this website has been publicly available since at least ***2003***, in substantially the same form as it currently exists.  Defendants cannot possibly claim that they acted diligently by waiting until weeks after the cutoff date to click onto a publicly accessible website.  Indeed, if a party was permitted to establish diligence in such a fashion, the deadlines in the Docket Control Order would be rendered meaningless.

Similarly, Defendants state in their motion that the Bieler documents are related to processes allegedly implemented by processor Litle & Co.  However, Defendants have been in contact with Tim Litle since early 2006, and Mr. Litle has been an eager and willing participant in Defendants' efforts to locate alleged prior art.  Indeed, when Mr. Litle was deposed in September of 2006, he disclosed the existence of the very relationships with infomercial companies that Defendants claim to have now belatedly "discovered."  Yet, Defendants did absolutely nothing from September of 2006 until after the cutoff date to obtain supporting documentation or otherwise

follow-up on this testimony. Rather, Defendants waited until *after* the discovery cutoff date had

passed – and months after their final invalidity contentions had been served – to serve a subpoena

on Bieler. AdvanceMe should not bear the burden of Defendants' extraordinary lack of diligence.[1]

      *Third*, the prejudice to AdvanceMe from Defendants' attempt to introduce this new

evidence would be overwhelming. If the Bieler documents had been produced in a timely fashion,

AdvanceMe would have been able to spend months conducting needed discovery on the issues

raised by those documents. From the face of the documents alone, there are at least ten depositions

that would need to be taken relating to the Bieler documents, in addition to the propounding of

substantial written discovery. Indeed, since Defendants want to use these documents to establish a

public use defense, AdvanceMe would have conducted substantial discovery concerning the

confidentiality provisions contained in the agreements, and the numerous factual issues relating to

the "public use" and "corroboration" requirements under 35 U.S.C. § 102(b). Since, however,

Defendants waited until weeks *after* the discovery cutoff date to "discover" these documents,

AdvanceMe has been robbed of the ability to conduct this critical discovery.

      In short, Defendants' motion does not come close to establishing good cause for the

requested relief. Accordingly, Defendants' motion must be denied.

## II.    FACTUAL BACKGROUND

###     A.    Defendants' Invalidity Contentions.

      On July 7, 2006, Defendants served their original Invalidity Contentions. In those

contentions, Defendants asserted that the '281 Patent was invalid under 35 U.S.C. §§ 102(b) and

102(f). Declaration of Shanée Y. Williams ("Williams Decl."), Ex. 1. On July 21, 2006, without

seeking leave of court, the Defendants purported to serve a document entitled "Amended Invalidity

Contentions." In those contentions, the Defendants identified the postage finance program of Litle

---

[1] Notably, the discovery cut-off in this case was set for February 15, 2006, and was extended to March 2, 2007 at Defendants' request to move both the discovery deadlines and the trial date.

& Co. as prior art.  Williams Decl., Ex. 2.  These contentions did not, however, make any mention of Bieler or any agreements involving Bieler.

On August 30, 2006, after the parties conducted extensive discovery, the Defendants purported to serve their Second Amended Invalidity Contentions, once again failing to seek leave of Court before their service.  Williams Decl., Ex. 3.  Those contentions also did not make any mention of Bieler or any agreements involving Bieler.  When Defendants requested that AdvanceMe retroactively stipulate to service of these amended contentions, AdvanceMe responded that it would consider doing so if the Defendants agreed not to make any further amendments in the future.  Defendants refused to agree to this, and instead sought leave of Court to amend their invalidity contentions.  Docket No. 101.  Over AdvanceMe's vigorous objections, Defendants' motion was granted on October 4, 2006.  Docket No. 123.

Surprisingly, Defendants never filed or served any amended contentions pursuant to the October 4, 2006 Order.  Instead, on November 2, 2006, Defendants filed yet another motion to amend their invalidity contentions.  Docket No. 141.  This motion also did not make any mention of Bieler or any agreements involving Bieler.  In response to the motion, AdvanceMe objected that Defendants' continuous shifting of their invalidity positions (especially concerning the Litle & Co. prior art) was making it impossible for AdvanceMe to prepare its case.  Docket No. 153. Nevertheless, over AdvanceMe's objections, the Court granted Defendants' expedited motion. Docket No. 173.  However, just as with the previous motion, Defendants again failed to file or serve any amended contentions pursuant to that Order.

On February 12, 2007, after the parties had conducted dozens of depositions and just eighteen days before the discovery cutoff, Defendants attempted to amend their invalidity contentions yet again pursuant to P.R. 3-6(a)(2).  Williams Decl., Ex. 4.  Though these final invalidity contentions attempted to add 35 U.S.C. §§ 102(a) and 102(g) as invalidity defenses, the contentions still did not make any mention of Bieler or any agreements involving Bieler.

On March 12 and April 12, 2007, Defendants filed motions for partial summary judgment of invalidity based on the Litle & Co. and Clever Ideas prior art, respectively.  *See* Docket Nos.

215, 232.  As part of the briefing on those motions, AdvanceMe objected, among other things, to Defendants' attempt to assert a new defense under § 102(g) due to the prejudice to AdvanceMe. The Court sustained AdvanceMe's objections to the § 102(g) defense.  Docket No. 266.

### B.    The Significant Discovery Conducted By The Parties.

Since early 2006, the Defendants and their counsel have been in constant contact with Tim Litle for the purpose of obtaining information to use in support of their invalidity contentions. Williams Decl., Ex. 5.  During these communications, Defendants asked Mr. Litle for information concerning Litle & Co., and enlisted him in an effort to track down supporting documents.  As these communications reflect, Mr. Litle was ready and willing to answer any questions that Defendants raised, and otherwise provide any information about the processing relationships of Litle & Co. that Defendants requested.

On September 6, 2006, the parties deposed Tim Litle.  Williams Decl., Ex. 6.  During the deposition, Mr. Litle was asked by Defendants concerning his involvement with "infomercial type of compan[ies]."  *Id.* at 57:25-60:6, 60:12-16, 224:20-225:7, 296:9-297:21, 298:13-20.  In response, Mr. Litle testified that Litle & Co. processed about 95% of all infomercials.  *Id.* at 297:4-21.  Mr. Litle also identified the infomercial companies that he could recall off hand.  *Id.* at 296:9-298:12.  However, since neither Defendants nor Litle had produced a single document relating to such infomercial companies, and Litle's alleged relationship to such companies or to Bieler was not mentioned in Defendants' invalidity contentions, questioning on the subject was limited.

In addition to the deposition of Tim Litle, the parties deposed other witnesses allegedly familiar with some aspect of the Litle & Co. prior art, including Laurent Bouchard, J. Randall Bourne, Allen Abbott, and James Alexander.  These witnesses were located all over the country, which necessitated substantial travel by the parties and their counsel.  Since Defendants did not produce a single document relating to infomercial companies, and never identified the name of Bieler in their invalidity contentions or discovery responses, there was no questioning of these witnesses relating to Bieler or to infomercial-related activities.  Rather, the parties' questions during these depositions were focused on the prior art alleged in Defendants' invalidity contentions.

During the fact discovery period, the parties also conducted written discovery relating to Defendants' invalidity contentions. Williams Decl., Ex. 7. For example, AdvanceMe propounded interrogatories directed to Defendants' invalidity contentions, and Defendants supplemented their responses to these interrogatories on March 2, 2007. *Id.*, Ex. 8 (Responses to Interrogatories Nos. 7-9, 21). Although Defendants' motion implies that Defendants were aware of the existence of Bieler in early March 2007 (*see* Defendants' Motion at pp. 1, 3), there is absolutely no mention of Bieler in their amended interrogatory responses or Rule 26 disclosures. Accordingly, AdvanceMe was completely unaware of the existence of Bieler during the fact discovery period.

Pursuant to the Court's Docket Control Order, fact discovery closed on March 2, 2007. Docket No. 201. Expert discovery closed on April 11, 2007. Docket No. 217. The Joint Pretrial Order is required to be submitted on June 8, 2007, and the parties' proposed Findings of Fact and Conclusions of Law are required to be submitted on the same date. Docket No. 272. Only five weeks remain until the commencement of trial.

## C.    Defendants Serve a Subpoena on Bieler Weeks after the Discovery Cutoff Date, and over a Month after Their Final Invalidity Contentions Are Served.

On March 30, 2007, Defendants' counsel issued a subpoena to Bieler in the *AdvanceMe v. AmeriMerchant* action. Defendants' Motion, Ex. B. This subpoena was issued five weeks after the Defendants served their final invalidity contentions on February 12, 2007. Further, this subpoena was issued almost a month after the discovery cutoff date had passed, and after the expert discovery cutoff date had also passed. The Defendants made no attempt to seek leave to serve a subpoena in the instant action, nor did the Defendants seek leave to amend their invalidity contentions to include any information related to Bieler in this action.[2]

---

[2] Currently pending in the *AmeriMerchant* matter is Defendants' Motion for Leave To Amend Invalidity Contentions so that they may add Bieler to those contentions. This demonstrates Defendants' understanding that permission would need to be granted by the Court to amend their invalidity contentions before the Bieler information could be used at trial. Defendants have not sought any such amendment in the instant motion. *See* Defendants' Motion at p. 1.

On April 24, 2007, Bieler produced 166-pages of documents in response to the subpoena. Defendants' Motion, Ex. C. The documents produced by Bieler included numerous draft agreements between Media Funding Corporation and informercial companies, which appear to be drafted between March 1, 1997 and June 12, 1997. Williams Decl., Ex. 9. Numerous of the draft agreements contain strict confidentiality clauses which purport to insulate from public view the nature of the parties' relationships, including the very existence of the agreements themselves. *Id.* at BM0086, BM0106-BM0107. In addition, Bieler produced handwritten notes, internal memoranda, and other documentation. *Id.*, Ex. 10. As explained below, Defendants' claim that these documents support a public use defense raise a flood of legal and factual issues that would require significant discovery.

On April 30, 2007, Defendants purported to "add" Bieler to their identification of witnesses with knowledge in the *AmeriMerchant* action. Defendants' Motion, Ex. D. Additionally, Defendants purported to inform AdvanceMe of their intent to assert the Bieler documents in support of their claims in this action under 35 U.S.C. §§ 102(a), 102(b), and 102(g). *Id.* On May 4, 2007, AdvanceMe responded that Defendants' alleged "newly discovered" evidence was clearly untimely, and explained the substantial prejudice AdvanceMe would suffer if the Defendants were permitted to rely on documents produced after the cutoff date and long after service of final invalidity contentions. Defendants' Motion, Ex. E. AdvanceMe further informed Defendants that it would move to strike any attempt by Defendants to introduce any testimony or evidence relating to Bieler or Media Funding Corporation at the trial in the instant action. *Id.*

The instant motion was filed on May 22, 2007. The motion did not attempt to provide an explanation for why Defendants did not diligently pursue discovery from Bieler before the cutoff date. Indeed, Defendants' motion did not provide the date Defendants or their counsel first learned of Bieler, the steps Defendants took before the cutoff date to obtain information from Bieler, or the reason why a subpoena was not issued until almost a month after the cutoff date had passed. Nor does the motion purport to recognize the voluminous amount of discovery that would need to be taken in order for AdvanceMe to respond to the attempted use of these documents.

III.  **ANALYSIS**

A.  **The Relevant Legal Authority.**

Defendants' motion seeks to revise their invalidity contentions months after the deadline for service of those contentions has passed, and to introduce documents that were not produced before the discovery cutoff date.  In essence, therefore, Defendants' motion is seeking relief from numerous of the deadlines set forth in the Docket Control Order.

In order to obtain such relief, this Court has repeatedly indicated that a detailed showing of diligence must be made, and that this showing must go well beyond vague assertions of a continuing investigation.  *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 851 (E.D. Tex. 2004) (Davis, J.) (denying motion for leave to amend infringement contentions where movant failed to provide any details concerning the alleged "investigation" that resulted in the proposed amendment); *Softvault Sys., Inc. v. Microsoft Corp.*, No. 2:06-CV-16, 2007 WL 1342554, *1 (E.D. Tex. May 4, 2007) (Davis, J.) (denying motion for leave to amend infringement contentions to assert earlier priority date based on previous application because plaintiff could not establish diligence in light of its failure to "fully analyze" the information).  Indeed, the sole case cited and relied upon by Defendants refused to allow the movant to amend its complaint because the movant had not diligently sought such amendment.  *S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535-36 (5th Cir. 2003).

The Federal Circuit has approved of this Court's refusal to permit belated amendments to pleadings and discovery.  *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1365 (Fed. Cir. 2006) (Judge Folsom appropriately determined that an amendment to infringement contentions two years after the litigation was filed, after claims construction, after invalidity contentions were served, after depositions were taken, and after expert reports were served, would materially change the theories of the case); *see also Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667, 669-670 (E.D. Tex. 2007) (the rules governing invalidity contentions "are 'designed specifically to "require parties to crystallize their theories of the case early in the litigation"'" and allowing parties to adopt

a 'rolling' approach to such contentions "in the hope of hiding their true intentions until late in a case . . . would thwart the purpose of the local patent rules.").

Courts consistently recognize their power to exclude evidence as a means of enforcing a pre-trial scheduling order. *S&W Enterprises LLC*, 315 F.3d at 535 ("We owe the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order' . . . which, toward the end of court efficiency, is to expedite pretrial procedure.") (internal citations omitted); *STMicroelectronics, Inc.*, 307 F. Supp. 2d at 848 ("It is beyond question that district courts have broad power to control their dockets and enforce their orders."); *Havenfield Corp. v. H&R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975) (refusal to permit supplemental interrogatory response within trial court's discretion); *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494 (8th Cir. 1985) (court has no obligation to reopen discovery).

In order to obtain the type of relief sought by Defendants, there must be an adequate showing of good cause. *STMicroelectronics, Inc.*, 307 F. Supp. 2d at 850.  To establish good cause, Defendants ***must*** demonstrate that the relevant deadlines in the Docket Control Order could not have been met despite the diligence of the party needing the extension. *S&W Enters., LLC*, 315 F.3d at 535.  If this threshold standard is not met, Defendants cannot establish good cause as a matter of law and the inquiry ends. *STMicroelectronics, Inc.*, 307 F. Supp. 2d at 851 (denying motion to amend due to failure to carry burden of showing diligence, before even reaching issue of prejudice).  Further, in considering whether good cause has been shown, the Court may also consider (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in admitting the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Id*. at 850.

**B.**     **Defendants' Failure To Provide An Explanation for Their Delay Requires Denial of Their Motion As a Matter of Law.**

In order to establish good cause, Defendants' motion must establish that they acted diligently to gather the relevant evidence before the deadlines in the Docket Control Order, and that those deadlines could not have met despite Defendants' diligence. *S&W Enters., LLC*, 315 F.3d at

535.  Defendants have not even attempted to make this required showing.  Defendants have not provided *any* explanation for why they were unable to obtain the Bieler documents during the discovery period, or why they waited until weeks after the cutoff date — and months after service of their final invalidity contentions — to obtain documents from Bieler.

Rather than addressing their diligence before the discovery cutoff date, Defendants' motion only addresses their alleged diligence after they initially contacted Bieler (apparently in March of 2007).  Whether, however, Defendants acted diligently in March of 2007 is totally beside the point.  To establish good cause, Defendants must demonstrate that they acted diligently during the year-long discovery period *before* the cutoff date, and that despite the exercise of this diligence it simply was not possible for them to have located and produced the Bieler documents before the relevant deadlines in the Docket Control Order.  Since Defendants have not even attempted to make this showing, their motion cannot succeed.

The only evidence submitted by Defendants in support of their motion is a brief declaration from one of Defendants' counsel, Floyd Walker.  This declaration does not even attempt to provide an explanation for Defendants' delay.  To the contrary, Mr. Walker's declaration is conspicuously silent on this issue, making it clear that Defendants are attempting to skirt the subject in order to avoid the disclosure of uncomfortable facts.  For example, Mr. Walker states that "[c]ounsel for Defendants requested that Bieler Marketing Associates look for documents evidencing loan obligations repaid through card transactions as soon as we were able to speak with Bieler Marketing Associates' counsel."  Walker Decl., ¶ 3.  This carefully worded statement begs the question of when Bieler was first requested to look for documents, and why this request was apparently not made until after the discovery cutoff date had passed.  Surely, Defendants were "able to speak" to Bieler's counsel during the year-long fact discovery period; why, then, were Defendants only contacting Bieler's counsel after the cutoff date had passed?

Mr. Walker further attests that Bieler refused to produce the documents without a subpoena, and then finally produced documents on Friday, April 27, 2007.  Walker Decl., ¶¶ 3-6.  Once again, however, these vague statements only beg the question.  The relevant issue here is not when

Defendants received the documents from Bieler, but rather what steps Defendants took during the year *before* the discovery cutoff to diligently investigate its case. The fact that Bieler insisted upon a subpoena when it was finally contacted after the cutoff date in March of 2007 says absolutely nothing about whether Defendants took diligent steps to obtain this information before March of 2007 and when or how they learned of Bieler and its alleged programs. There is simply nothing in Mr. Walker's declaration that purports to explain this year-long delay.

In fact, not only do Defendants fail to make the required showing of diligence, the vague statements contained in Defendants' motion affirmatively indicate that Defendants did not act diligently. For example, Defendants claim they formed a belief that Bieler may possess relevant documents "[b]ased on the website for Media Funding Corporation." Defendants' Motion, p. 3. Assuming for the sake of argument that this is true (despite the fact that Mr. Walker's declaration does not even mention the Media Funding website) this representation affirmatively demonstrates the lack of diligence by Defendants. The website for Media Funding Corporation *has been publicly accessible since at least 2003*, and comparison of the website as it existed in 2003 to the website as it exists today does not reveal any significant changes. Williams Decl., Ex. 11. Clearly, Defendants cannot establish that they acted diligently by waiting until after the discovery cutoff date to click on a website that has been publicly accessible for the last five years.

Similarly, Defendants indicate that the Bieler documents are related to the processing relationships of Litle & Co. However, Defendants have been in regular contact with Mr. Litle since the spring of 2006, and Mr. Litle has clearly expressed an interest in providing whatever information the Defendants need to help their case. Given the alleged relationship between Litle & Co. and the Bieler documents, there is no possible excuse for Defendants' failure to investigate the Bieler documents a year ago.

Indeed, during his deposition in September of 2006, Mr. Litle expressly testified of relationships between Litle & Co. and informercial companies, which clearly should have placed Defendants on notice that this was an issue they could investigate. Williams Decl., Ex. 6. Yet, Defendants do not even attempt to explain why they waited *seven months* after this deposition to

investigate the matter further or serve Bieler with a subpoena.  To establish good cause, Defendants were required to provide a detailed explanation for this lengthy delay, yet Defendants offer none.

The vague statements contained in Defendants' motion simply do not pass legal muster. Indeed, Defendants' statements are no different than the statements this Court rejected in *STMicroelectronics*.  In that case, the plaintiff moved to supplement its infringement contentions five days before the claim construction hearing by asserting that "ST Inc. promptly supplemented its contentions after its continuing investigation revealed additional infringing products and infringed claims."  *STMicroelectronics*, 307 F.Supp.2d at 850.  The court found this conclusory statement woefully insufficient because the plaintiff failed to explain, among other things, "what new information its 'investigation' revealed that would warrant the [new] claims," "what diligence it used prior to the disclosure date," and "why its diligence was not sufficient."  *Id*.  The facts are no different here.

In short, Defendants have failed to demonstrate that they could not have met the deadlines in the Docket Control Order through the exercise of reasonable diligence, and in fact the evidence overwhelmingly demonstrates that Defendants did not act diligently in investigating its defenses. Accordingly, the motion must be denied.

### C.    Defendants Have Not Established the Importance of the Bieler Documents.

Even assuming that Defendants had shown they could not have met the deadlines in the Docket Control Order despite the exercise of reasonable diligence, the other relevant factors would still weigh overwhelmingly against the grant of this motion.  For example, Defendants contend that the "importance" of the documents weighs in favor of the motion.  However, these documents are cumulative of other alleged prior art relating to Litle & Co. that is already included in Defendants' invalidity contentions, and will already be analyzed by the trier of fact at the July trial.  Defendants fail to demonstrate there is any "importance" in having these additional agreements and contracts relating to infomercial companies — none of which have been the subject of any discovery — considered as well.

Defendants contend that the documents are important because they show that "Litle & Co's practice of the claimed invention" was "widespread."  Defendants' Motion at p. 5.  But this

contention puts the cart before the horse, since it is based on documentation which has not been the subject of any discovery. There is no evidence that the systems allegedly reflected by the agreements (most of which consist of draft agreements containing extensive mark-ups) were implemented before the priority date of the '281 Patent, and no evidence that those systems were publicly available as required for a public use defense. Nor is there any evidence to corroborate any alleged public use. Indeed, the confidentiality provisions in the agreements themselves strongly indicate that the systems allegedly reflected by these documents were *not* available to the public. Williams Decl., Ex. 9. Further, on their face, the agreements appear to indicate that numerous elements of the patent claims are completely absent, including the authorization, settling, and forwarding steps in both the method and means-plus-function claims. Ultimately, the only way the parties could investigate the "importance" of the documents is through extensive discovery, which is precisely the discovery that Defendants' violation of the Docket Control Order has prevented AdvanceMe from conducting.

Without citing any legal authority, Defendants also claim that the public interest favors allowing them to introduce further evidence of the alleged invalidity of the '281 Patent. Defendants' Motion at p. 7. However, Defendants entirely ignore the more compelling public interest in requiring parties to adhere to the deadlines ordered by the Court, and to diligently pursue an investigation of its case during a year-long discovery period. It is clearly not in the public interest to enable parties to manipulate the Court's Docket Control Order by waiting until after the cutoff date to access a public website, and then using the information "discovered" by reading the website as the basis to introduce brand-new prior art.

### D.    The Potential Prejudice to AdvanceMe Weighs Heavily Against Defendants.

The prejudice to AdvanceMe if the Defendants were permitted to use the Bieler documents at trial would be immense. Over the past year, the parties have conducted a significant volume of discovery specifically targeted to Defendants' invalidity contentions. With respect to the Litle & Co. prior art alone, the parties conducted five depositions of witnesses Defendants identified as having knowledge regarding the alleged prior art, and are in the process of preparing their pre-trial

submissions based on that record as developed through months of deposition and written discovery. It is far too late for Defendants to introduce new alleged prior art documents into this case. Indeed, a belated introduction of the Bieler documents would require AdvanceMe to conduct much of its discovery efforts all over again, at great cost and expense.

Without any effort to substantiate their position, Defendants assert that the deposition of Peter Bieler is the "only possible discovery required regarding these documents." Defendants' Motion at p. 5. This is absurd. In truth, given the extensive documentation produced by Bieler and the numerous factual issues under Section 102(b) that would need to be explored, there is a vast amount of discovery that AdvanceMe would need to take concerning these documents. For example, the documents reveal the existence of at least *nine* different witnesses that would need to be deposed in order to adequately explore the nature of this alleged prior art, including the parties to the draft agreements (*e.g.,* Jonathan Noel), the attorneys that drafted or negotiated the agreements (*e.g.,* Michael Wolf, Matthew Fladell, Helen Athan and Jonathan Rich), the infomercial companies that allegedly were the beneficiares of the arrangements (*e.g.,* Love it Golf Company, Bermuda Triangle Golf and Golf Solutions, Inc.), and the unknown author of handwritten notes regarding one of the alleged Bieler arrangements. Williams Decl., 10.

Even more, AdvanceMe would also be required to retake several depositions completed long ago. For example, when AdvanceMe took the deposition of Tim Litle and Laurent Bouchard of Litle & Co. before the cutoff date, AdvanceMe's deposition questioning was only focused on the postage finance program that was contained in Defendants' invalidity contentions. AdvanceMe had never heard of Bieler or Media Funding Corporation, and had never received any documentation relating to Litle's alleged relationship with these entities. If the Bieler documents were admissible at trial, AdvanceMe would need to retake the depositions of these Litle-related witnesses, as well as the depositions of other witnesses relating to Defendants' prior art allegations.

Defendants apparently contend that the Bieler documents create another basis for a "public use" defense as well. However, almost all of the agreements produced by Bieler are draft agreements containing strict confidentiality clauses. Further, certain of the agreements post-date

the priority date of the '281 Patent, and other agreements are close to that date thereby raising the likelihood that any "use" of the alleged systems did not occur until after the priority date. Numerous depositions would need to be taken, therefore, to explore whether there was any "public use" before the priority date. Indeed, the issues that would need to be explored during these depositions would be practically endless, including whether the various agreements were ever finalized, the dates by which agreements were put into operation, the actual operation of the systems allegedly reflected by the draft agreements, the manner in which payments were authorized, settled, and forwarded under the agreements, the meaning and extent of the confidentiality clauses in the agreements, and the alleged use of the structure by the contracting parties of the structure required by the means-plus-function claims in the '281 Patent.

These are heavily fact-dependent issues that would require a substantial number of depositions and written discovery. Defendants cannot seriously deny this. Indeed, when Defendants asserted the Clever Ideas Prior Art and the Litle Postage Finance Program in their invalidity contentions, it took over eight months for the parties to conduct relevant depositions and other discovery relating to this alleged prior art, even though the documentation relating thereto was not as voluminous as the Bieler documentation. It would clearly take at least as long for the parties to explore — through depositions, written discovery, and expert reports and depositions — all the issues relating to the Bieler documentation.

Defendants' prior conduct in this case also greatly enhances the prejudice here. It would be one thing if this was Defendants' first attempt to change their invalidity theories, or to shift their prior art arguments. However, as the Court is aware, Defendants have repeatedly shifted their invalidity theories during the last year, causing an enormous waste of time and resources. Defendants have already amended their invalidity contentions three different times, and even shifted their contentions after depositions of relevant witnesses had been taken. Having suffered through Defendants' repeated attempts to change their invalidity theories, AdvanceMe should not have to suffer further because Defendants did not investigate their case diligently during the fact discovery period.

Just two weeks ago, Defendants attempted to revamp their invalidity contentions by introducing a Section 102(g) defense into the summary judgment proceedings. When AdvanceMe explained that it was improper to introduce a new defense after the relevant depositions had already been taken, Defendants refused to acknowledge that this prejudice existed. Yet, as a result of the clear prejudice to AdvanceMe, this Court upheld AdvanceMe's objections to Defendants' use of the Section 102(g) defense. Docket No. 266. This should have sent a clear message to Defendants that their never ending efforts to change their invalidity positions must come to an end. Yet, immediately after this ruling was made, AdvanceMe received the instant motion seeking to introduce new alleged prior art documents that were not even requested until weeks after the discovery cutoff date. At some point, enough must be enough.

### E.    A Continuance Would Further Prejudice AdvanceMe.

Defendants further assert that a "brief" continuance would remedy any prejudice to AdvanceMe. This is simply incorrect. It would be impossible to conduct the needed discovery with a "brief" continuance. Rather, as described above, the continuance would need to be extremely lengthy. AdvanceMe would need to take at least ten further depositions, revise its expert reports, reopen expert discovery, and revise its pre-trial submissions. Further, AdvanceMe would need to open up its own investigation into Bieler and Media Funding Corporation, and investigate whether there were other witnesses that could testify as to these entities that Defendants have not disclosed. It would take many months for all this discovery and investigation to be conducted.

Defendants should not be permitted to bootstrap their own lack of diligence into a continuance of the trial date. The trial date in this action has already (at the urging of Defendants) been moved for several months. Indeed, this case was originally supposed to be tried in February of this year. AdvanceMe did not agree to move the trial to July so that Defendants could thereafter click on a public website and "discover" new evidence, and use this as a basis to try to move the trial date yet again. It was Defendants' responsibility to conduct a full and complete investigation of its case *before* the relevant dates set forth in the Docket Control Order. Defendants' failure to do so cannot be laid at the feet of AdvanceMe.

IV.    **CONCLUSION**

For the foregoing reasons, AdvanceMe respectfully requests that the Court deny the Defendants' motion.


Date:  June __, 2007                    Respectfully submitted,

                               By:    */s/ Shanée Y. Williams*
                                      **PAUL, HASTINGS, JANOFSKY & WALKER LLP**
                                      Ronald S. Lemieux  (ronlemieux@paulhastings.com)
                                      (CA Bar No. 120822) (Admitted Pro Hac Vice)
                                      Michael N. Edelman (michaeledelman@paulhastings.com)
                                      (CA Bar No. 180948) (Admitted Pro Hac vice)
                                      Vidya R. Bhakar (vidbhakar@paulhastings.com)
                                      (CA Bar No. 220210) (Admitted Pro Hac Vice)
                                      Robert C. Matz (robertmatz@paulhastings.com)
                                      (CA Bar No. 217822) (Admitted Pro Hac Vice)
                                      Shanée Y. Williams (shaneewilliams@paulhastings.com)
                                      (CA Bar No. 221310) (Admitting Pro Hac Vice)
                                      Five Palo Alto Square, Sixth Floor
                                      Palo Alto, CA  94306-2155
                                      Telephone:  650.320.1800
                                      Facsimile:  650.320.1900


                                      **IRELAND CARROLL & KELLEY**
                                      Otis W. Carroll, Jr. (fedserve@icklaw.com)
                                      LEAD ATTORNEY
                                      State Bar No. 03895700
                                      Deborah J. Race (drace@icklaw.com)
                                      State Bar No. 16448700
                                      6101 S. Broadway, Suite 500
                                      Tyler, TX  75730
                                      Telephone:  903.561.1600
                                      Facsimile:  903.581.1071

                                      ATTORNEYS FOR PLAINTIFF ADVANCEME, INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by facsimile transmission and/or first class mail this 6th day of June, 2007.

By: _/s/ Shanée Y. Williams_