## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ADVANCEME, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. 6:05-CV-424 (LED)-(JDL)** |
| **RAPIDPAY, LLC, BUSINESS CAPITAL** | § | |
| **CORPORATION, FIRST FUNDS LLC,** | § | |
| **MERCHANT MONEY TREE, INC.,** | § | |
| **REACH FINANCIAL, LLC and** | § | |
| **FAST TRANSACT, INC. d/b/a** | § | |
| **SIMPLE CASH,** | § | |
| | § | |
| *Defendants.* | § | |

## TRIAL BRIEF IN SUPPORT OF CORROBORATING EVIDENCE

Plaintiff has spent a large part of its time in argument and in the cross-examination of third party witnesses called by Defendants (the "Witnesses") questioning the corroboration of the Witnesses' testimony. Plaintiff has asked this Court to ignore both the testimony of the Witnesses and the extensive contemporaneous documents corroborating the Witnesses' testimony.

The "rule of reason" does not support Plaintiff's position.

## Argument and Authorities

### A.     The "rule of reason" test applies to determine whether evidence has been sufficiently corroborated.

A "rule of reason" test is applied to determine whether there has been sufficient corroboration of prior art. *Sandt Tech., Ltd. v. Resco Metal and Plastics, Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). In applying this test, all pertinent evidence is examined in order to determine whether the inventor's story is credible. *Id.* Each corroboration case

Dockets.Justia.com

is to be decided on its own facts with a view toward deciding whether the evidence as a whole is persuasive.  *Id*.

Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that an inventor's testimony has been corroborated.  *Id*. at 1350-51.  But oral testimony of someone other than the alleged inventor may also corroborate an inventor's testimony.  *Id*. at 1351.

In *Sandt*, the Federal Circuit found that the evidence was sufficiently corroborated to find invalidity on summary judgment.  Defendant offered the following evidence to corroborate the prior art at issue: (1) a 1991 patent application for the stainless steel housing, which was ultimately abandoned; (2) a 1991 letter from defendant in response to the telephone company NYNEX's request to solve the telephone theft problem; (3) an affidavit from a former employee of NYNEX (Paul Horbach) stating that the alleged prior inventor demonstrated the Resco cover to him in 1990 or 1991; and (4) invoices dated in 1992 for purchases of security upper housings.  *Id*.

Most of defendant's corroborating evidence consisted of physical records that were made contemporaneously with the alleged earlier invention.  *Id*.  It was undisputed that the offer of sale letter did not clearly reference the invention.  *Id*.  But in addition to the documentary evidence corroborating the inventor's testimony, defendant submitted the affidavit of Horbach, wherein Horbach identified a photograph as depicting the device that he recognized was offered for sale by defendant to NYNEX in 1990 or 1991.  *Id*.  Under the "rule of reason" test, the Federal Circuit found the evidence sufficient for corroboration:

> In this case, Horbach has no interest in the outcome of the suit, is knowledgeable about telephone security devices, and his testimony was

unrebutted.  Moreover, unlike in *Woodland Trust*, there is a great deal of physical evidence made contemporaneously with Resco's invention that corroborates Horbach's declaration.  *Id*. at 1352.

Likewise, in *Kridl v. McCormick*, 105 F.3d 1446 (Fed. Cir. 1997), in affirming the decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (the "Board"), the Federal Circuit found sufficient corroboration for the evidence. McCormick's evidence of conception of the invention at issue consisted of the testimony of four witnesses, one of whom was a named inventor (Swain) and three of whom were employees of the assignee to the invention, Agracetus, Inc.   *Id*. at 1448.   The corroborating evidence also included 11 exhibits, including pages from the laboratory notebook of an individual who worked under Swain's supervision.  *Id*.  One of the pages dated January 18, 1984 and witnessed by an Agracetus, Inc. employee, described an experiment in which a gene fragment was inserted into a cloning vendor in both the sense and antisense orientations.  *Id*.

The Board found that McCormick did not present evidence explicitly corroborating conception of the utility of the invention, but this did not preclude the Board from finding sufficient corroboration.  *Id*. at 1450.  The Board based its decision on Swain's testimony and its factual finding that the laboratory notebook pages included each feature of the count, which was consistent with other evidence.  *Id*. at 1450.[1]  In affirming the Board's decision, the Federal Circuit found that "McCormick's evidence was sufficient to prove conception of the invention of the count, even though that evidence lacked explicit corroboration of the conception of antiviral utility."  *Id*. at 1451.

---

[1]   The Board noted that the "'rule of reason' which governs [the] evaluation of the evidence does not require that conception be proved in detail by an unbroken chain of corroboration but rather that a reasoned determination be made as to the credibility of the inventor's story." *Id*. at 1449.

Another example of sufficient corroboration can be found in *Beachcombers, Int'l, Inc. v. Wildwood Creative Prods., Inc.*, 31 F.3d 1154 (Fed. Cir. 1994). On an appeal finding public use of the purported invention, Plaintiff argued that the prior art was not sufficiently corroborated because: (1) the evidence was not corroborated by documentary evidence; (2) the alleged previous inventor ("Bennett") was not a disinterested witness; (3) Bennett's testimony was inconsistent with her deposition testimony; and (4) Bennett had no independent recollection of the date she showed her product to others. *Id.* In affirming the district court's denial of plaintiff's judgment as a matter of law regarding public use, the Federal Circuit refused to accept plaintiff's position on corroboration:

> Bennett's oral testimony was adequately corroborated by physical evidence, i.e., the entry in her date book and [Bennett's product] itself, and, if accepted at face value, meets the clear and convincing standard. *Id.*

The cases Plaintiff has previously cited in alleged support for its position on corroboration are inapposite to the evidence and circumstances before this Court.[2]

**B.      The evidence in this matter has been more than sufficiently corroborated.**

**Litle & Company Prior Art**

Tim Litle, a third party witness with no relationship to Defendants, unequivocally testified that the purported invention at issue in this matter was publicly known and used by his company long before the patent application was filed. (*See* Afternoon Trial Transcript at pp. 53:9-101:23 (July 17, 2007 (sic)), attached hereto as Exhibit A); (*see also* Morning Trial Transcript at pp. 33:8-43:22 (July 19, 2007), attached hereto as

---

[2] *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F. 3d 1368 (Fed. Cir. 1998) and *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335 (Fed. Cir. 2003) involved situations in which an accused infringer offered only its own oral testimony (or testimony of its associates) of its own use of the purported invention in attempt to support its position on invalidity. In *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999), the defendant's sole evidence of prior use was a third party's oral testimony that he allegedly used the purported invention prior to the filing of the patent application. These cases can easily be distinguished from the overwhelming corroborating evidence that has been offered in this matter.

Exhibit B). Larry Bouchard, another third party witness not associated with Defendants, corroborated Mr. Litle's testimony. (*See* Morning Trial Transcript at pp. 82:15-124:24 (July 17, 2007), attached hereto as Exhibit C); (*see also* Exhibit A at pp. 46:21-49:2 and 49:23-52:1). Jim Alexander further corroborated this testimony. (*See* Highlighted Portions of Defendants' Trial Exhibit ("DTX") 428, Submitted Deposition of Jim Alexander (March 9, 2007), attached hereto as Exhibit D). Allen Abbott further corroborated this testimony. (*See* Highlighted Portions of DTX 427, Submitted Deposition of Allen Abbott (January 11, 2007), attached hereto as Exhibit E). Under *Sandt*, this is more than enough to corroborate the evidence of prior art. But there is more:

- Plaintiff's Trial Exhibit ("PTX") 51 is a Litle & Company Member Agreement entered into in June 1992. This exhibit shows that the Litle & Company payment processing division, along with NPC and FNBL, were the merchant processor under the contract and shows the process flow from authorization, settlement, and payment to the merchant. (*See* Schedule A providing that all charge card transactions will be processed by "Litle's Payment Processing Division"). The Member Agreement also defines NET PROCEEDS.

- DTX 14 is a letter dated December 27, 1989, which amounts to Allen Abbott's proposal to participate in the Litle & Company postage advance program.

- DTX 15 is an interoffice memorandum dated January 24, 1990 discussing the postage advance program. Specifically, the memorandum notes: "We should include what percentage of the Visa/MasterCard sale deposits will be deducted from each payment to the member. Note that this is not net deposits. This percentage of sale deposits will be deducted from the amount of money that would otherwise be transferred to the member." (emphasis in original).

- DTX 16-19 are executed Litle & Company postage advance agreements with Exposures, Inc. These agreements show that postage advances were repaid out of NET PROCEEDS.

- DTX 20-23 are executed Litle & Company postage advance agreements with Museum Publications of America. These agreements show that postage advances were repaid out of NET PROCEEDS.

- DTX 13 is a June 8, 1992 Forbes, Inc. article discussing Litle & Company's postage advance. This article reveals – consistent with the testimony – that the Litle & Company postage advance program was not confidential.

- PTX 53 is a letter dated February 17, 1994 constituting Litle & Company's agreement with Boston Publishing and Hanover Finance. Hanover Finance was paid out of NET PROCEEDS by Litle & Company. FNBL forwarded payment to Litle & Company out of NET PROCEEDS for two outstanding postage advance obligations.

These documents, together with the testimony of four credible and knowledgeable witnesses, clearly corroborate the fact that Litle & Company was using the purported invention (via its postage advance program and its agreement with Hanover Finance) long before the patent application was filed. Moreover, Plaintiff has failed to offer any contradictory evidence, further supporting a finding that the evidence has been corroborated under the "rule of reason."

### Clever Ideas Prior Art

Lee Suckow, a third party witness with no relationship to Defendants, unequivocally testified that the purported invention at issue in this matter was publicly used by his company long before the patent application was filed. (*See* Afternoon Trial Transcript at pp. 3:4-43:3, 45:11-48:11, and 59:19-61:4 (July 17, 2007), attached hereto as Exhibit F). Edward "Skip" Landon, another third party witness with no relationship to Defendants, corroborated Mr. Suckow's testimony. (*See* Afternoon Trial Transcript at pp. 63:23-71:4 (July 17, 2007), attached hereto as Exhibit G). Tom McBrearty further corroborated the evidence of the Clever Ideas prior art. (*See* Highlighted Portions of DTX 430, Submitted Deposition of Tom McBrearty (January 11, 2007), attached hereto as Exhibit H).

6

Under *Sandt*, this is more than enough to corroborate the evidence of prior art.

But there is more:

- DTX 2 is a letter from Lee Suckow to LeCard merchants dated October 29, 1992 explaining the operation of the electronic draft capture for the LeCard program. It includes a letter authorizing Diners Club to pay Clever Ideas directly for the restaurant's LeCard charge. It also includes a letter of change showing how Diners Club informed the restaurant of the LeCard charges.

- DTX 3 is a letter from Lee Suckow to LeCard merchants dated July 23, 1992 announcing availability of electronic draft capture for LeCard transactions and noting that merchants are required to use Diners Club as their merchant processor.

- DTX 4 is an executed Clever Ideas Cash Advance Agreement with Bravo Cucina dated March 2, 1995 for $3,000 with terms and conditions requiring the restaurant to process with Diners Club.

- DTX 5 is an executed Clever Ideas Advertising Advance Agreement with Mangia, Inc. dated March 28, 1994 valued at $4,200.

- DTX 6 is a Club Lucky LeCard statement showing receipt of funds by Clever Ideas and application to outstanding advances in June 1996. This document shows that the processing fees were paid by Clever Ideas on behalf of the merchant in the LeCard program.

- PTX 327 is a CNNMoney.com article dated February 1, 1993 showing that Diners Club provided a 20% discount to card holders. Consistent with the Witnesses' testimony, this was publicly known.

These documents, together with the testimony of three third party witnesses not associated with Defendants - from both Diners Club and Clever Ideas - clearly corroborate the fact that the LeCard program was publicly known and used long before the patent application was filed. Moreover, Plaintiff has failed to offer any contradictory evidence, further supporting a finding that the evidence has been corroborated under the "rule of reason."

## **Conclusion**

Evidence that Clever Ideas and Litle & Company publicly used the purported invention (and that this use was publicly known) long before the patent application was filed is corroborated by the testimony of numerous third party witnesses not associated with Defendants (witnesses who claim no rights in their previous use of Plaintiff's purported invention) as well as by extensive contemporaneous documentation.   As a result, Plaintiff's unfounded attempt to persuade this Court that the prior art evidence has not been sufficiently corroborated should be rejected.   The "rule of reason" does not support Plaintiff's position.

July 19, 2007                          Respectfully submitted,

                                       By: /s/ Graham E. Sutliff
                                          William G. Schuurman (TX State Bar No. 17855200)
                                          bschuurman@velaw.com
                                          Brian K. Buss (TX State Bar No. 00798089)
                                          bbuss@velaw.com
                                          Joseph D. Gray (TX State Bar No. 24045970)
                                          jgray@velaw.com
                                          R. Floyd Walker (TX State Bar No. 24044751)
                                          fwalker@velaw.com
                                          Graham E. Sutliff (TX State Bar No. 24046935)
                                          gsutliff@velaw.com
                                          VINSON & ELKINS L.L.P.
                                          2801 Via Fortuna, Suite 100
                                          Austin, Texas 78746-7568
                                          Telephone: 512.542.8400
                                          Facsimile: 512.236.3476

                                          Hilary Preston
                                          VINSON & ELKINS L.L.P.
                                          666 Fifth Avenue
                                          26th Floor
                                          New York, NY 10103
                                          Tel: (212) 237-0000
                                          Fax: (212) 237-0100

                                          Douglas R. McSwane, Jr. (TX State Bar No. 13861300)
                                          J. Matt Rowan (TX State Bar No. 24033137)
                                          POTTER MINTON
                                          A Professional Corporation
                                          110 N. College
                                          500 Plaza Tower (75702)
                                          P.O. Box 359
                                          Tyler, Texas 75710
                                          Telephone: 903.597.8311
                                          Facsimile: 903.593.0846
                                          E-mail: dougmcswane@potterminton.com

                                          *Counsel for Defendants First Funds LLC, Merchant*
                                          *Money Tree, Inc., and Reach Financial, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 19th day of July, 2007.

/s/ Graham E. Sutliff
Graham E. Sutliff
